*Kim Svendsen @ 11:55am 7-17-13*

**STATE OF MINNESOTA**                    **DISTRICT COURT**

**COUNTY OF HENNEPIN**              **FOURTH JUDICIAL DISTRICT**
                                                    **CASE TYPE 14:  OTHER CIVIL**
                                                    **MORTGAGE FORECLOSURE**

---

M & T Bank,

        Plaintiff,

vs.                                                                **SUMMONS**

Kurtis K. Krueger,
Mattie M. Krueger,
Alternative Homes Investments, LLC,
Alternative Homes of Minneapolis, Inc.
Bank Cherokee,
David J. Bates,
Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota,
United States of America,
John Doe and Mary Roe,

        Defendant(s).

---

**THIS SUMMONS IS DIRECTED TO THE ABOVE NAMED DEFENDANTS:**

    **1.**    **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you.  The

Plaintiff's Complaint against you is attached to this Summons and is on file in the office of the

Court Administrator of the above-named Court. Do not throw these papers away. They are

official papers that affect your rights. You must respond to this lawsuit even though it may not

yet be filed with the Court and there may be no court file number on this Summons.

    **2.**    **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**

You must give or mail to the person who signed this summons **a written response** called an

Exhibit 1

Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

> Wendy Oien Sanchez, Esq.
> Shapiro & Zielke, LLP
> 12550 West Frontage Road, Suite 200
> Burnsville, MN 55337

   **3.    YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

   **4.    YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

   **5.    THE UNITED STATES OF AMERICA MUST REPLY WITHIN 60 DAYS TO PROTECT ITS RIGHTS.** That the United States of America is hereby summoned and required to serve upon the Petitioner's attorney, within 60 days after service of this Summons, exclusive of the date of service, an Answer to the attached Petition of the Petitioner.

   **6.    LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

7.    **ALTERNATIVE DISPUTE RESOLUTION.**  The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice.  You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

8.    **THIS LAWSUIT MAY AFFECT OR BRING INTO QUESTION TITLE TO REAL PROPERTY** located in the County of Hennepin, State of Minnesota, commonly known as 2444 Pillsbury Avenue, Minneapolis, MN 55404, legally described as follows:

> **Lots 12 and 13, Block 9, J.T. Blaisdell's Revised Addition to Minneapolis, Hennepin County, Minnesota.**

The object of this action is to judicially foreclose upon the Mortgage recorded as Document No. 9029604. If you fail to answer the Complaint within the time aforesaid, judgment by default will be taken against you for the relief demanded in said Complaint.  Notice is given that no personal monetary claim is made herein against any of the Defendants.

**SHAPIRO & ZIELKE, LLP**

Dated: 7/2/13

Wendy Oien Sanchez – #0391586
John G. Westrick - #206581 (of counsel)
Kalli L. Ostlie – #329678
*Attorneys for Plaintiff*
12550 West Frontage Road Suite 200
Burnsville, MN 55337
(952) 831-4060

**THIS MAY BE DEEMED A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**STATE OF MINNESOTA**                      **DISTRICT COURT**

**COUNTY OF HENNEPIN**                    **FOURTH JUDICIAL DISTRICT**
                                           **CASE TYPE 14: OTHER CIVIL**
                                           **MORTGAGE FORECLOSURE**

---

M & T Bank,                          Court File No. _____

                Plaintiff,

vs.                                            **COMPLAINT**

Kurtis K. Krueger,
Mattie M. Krueger,
Alternative Homes Investments, LLC,
Alternative Homes of Minneapolis, Inc.
Bank Cherokee,
David J. Bates,
Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota,
United States of America,
John Doe and Mary Roe,

                Defendant(s).

---

Plaintiff for its cause of action against the above-named Defendant(s) alleges:

### PARTIES.

1.    Plaintiff is the assignee of a Mortgage encumbering property in the State

of Minnesota.

2.    Upon information and belief, Defendant Mortgagors Kurtis K. Krueger

and Mattie M. Krueger, husband and wife, (the "Kruegers") are residents of Hennepin

County and reside at 8161 – 33rd Avenue South, #W1401, Minneapolis, MN 55425.

3.    Upon information and belief, Defendant Alternative Homes Investments,

LLC, is a limited liability company organized and existing under the laws of the State of

1

Exhibit 2

Minnesota with a last known business address of 2446 Portland Ave., Minneapolis, MN 55404.

4.    Upon information and belief, Defendant Alternative Homes of Minneapolis, Inc., is a lessee of the Property with a last known business address of 2446 Portland Ave., Minneapolis, MN 55404.

5.    Upon information and belief, Defendant BankCherokee, is a banking institution organized and existing under the laws of the United States of America with a last known business address of 607 South Smith Avenue, St. Paul, MN 55107.

6.    Upon information and belief, David J. Bates & Lorrie A. Bates, husband and wife, have a last known address of 10636 Juniper Street NW, Coon Rapids, MN 55448

7.    U.S. Small Business Administration has a last known business address of 210-C Butler Square, 100 North Sixth Street, Minneapolis, MN 55403.

8.    That the Minnesota Business Finance Corporation has a last known address of 616 Roosevelt Road, Ste. 200, St. Cloud, MN 56301.

9.    That upon information and belief, the State of Minnesota holds a State Tax Liens against Defendant Kurtis K. Krueger in the amount of $2,294.58. Said State Tax Lien has a lien number of: 387803, and was recorded against the property on March 13, 1995 as Document No. 2595065, herein attached as **Exhibit I**.

10.    That upon information and belief, the United States of America holds two Federal Tax Liens against Defendant Kurtis K. Krueger in the amounts of $8,867.57 and $178,905.43. Said Tax Liens have a serial number of: 419711606 and 883542112 respectively, and were recorded against the property on February 14, 1997 as Document

2

No. 6699899, and August 10, 2012 as Document No. A9825607, herein attached as Exhibits J-K.

11.     Defendants John Doe and Mary Roe are named as Defendants as they may also occupy or have an unrecorded interest in the Property.

12.     The real estate which is subject to this action is located in Hennepin County Minnesota, with a common address of 2444 Pillsbury Avenue, Minneapolis, MN 55404, and legally described as:

> **Lots 12 and 13, Block 9, J.T. Blaisdell's Revised Addition to Minneapolis, Hennepin County, Minnesota.**

(hereafter the "Property").

## VENUE.

13.     Pursuant to Minn. Stat. § 542.09, venue is proper in Hennepin County Minnesota, as the real estate subject to this mortgage is located in Hennepin County, Minnesota, as described above.

## FACTUAL ALLEGATIONS.

14.     In 2007, InterBay Funding, LLC, made a loan to the Kruegers in the original principal amount of $450,000.00, as evidenced by an Adjustable Rate Promissory Note (the "Note"), executed by Kurtis K. Krueger, herein attached as **Exhibit A**.

15.     The Note is secured by a Mortgage and Security Agreement (the "Mortgage") dated August 2, 2007, executed by Kurtis K. Krueger and Mattie M Krueger.

16.     Said Mortgage was recorded with the Hennepin County Recorder's Office on August 24, 2007 as Document No. 9029604, herein attached as **Exhibit B**.

3

17.     The Kruegers also executed an Assignment of Leases and Rents with an Amendment to Assignment of Leases and Rents in favor of InterBay Funding, LLC, recorded on August 24, 2007 as Document No. 9029605, herein attached as **Exhibit C**.

18.     InterBay Funding, LLC, assigned its interest in the Mortgage to Bayview Loan Servicing, LLC by Assignment of Mortgage recorded with the Hennepin County Recorder's Office on May 21, 2008, as Document No. 9136450, herein attached as **Exhibit D**, as well as its interest in its Assignment of Leases and Rents by Assignment of Assignment of Leases and Rents recorded on May 23, 2008 as Document No. 9137661, herein attached as **Exhibit E**.

19.     A UCC Statement was filed in favor of Bayview Loan Servicing, LLC on October 11, 2007 as Document No. 9051647, herein attached as **Exhibit F**.

20.     Bayview Loan Servicing, LLC subsequently assigned its interest in the Mortgage to Plaintiff. Said Assignment of Mortgage was recorded with the Hennepin County Recorder's Office on December 27, 2012 as Document No. A9886594, herein attached as **Exhibit G**.

21.     The Kruegers defaulted on the terms of the Mortgage and Note, thereby triggering the acceleration and power of sale clause found in Article 9 of the Mortgage.

22.     As provided in Articles 8 and 9 of the Mortgage, and upon occurrence of an Event of Default as defined under Article 9.1 of said Mortgage, Plaintiff has the right to "declare the entire unpaid Debt to be immediately due and payable".

23.     In Article 9.1(b), the Mortgage further contains the right to institute proceedings; judicial or otherwise, for the complete foreclosure of this Security

4

Instrument under any applicable state or federal law in which case the Property or any interest therein may be sold...."

## COUNT I.
## FORECLOSURE BY ACTION
(against Kurtis K. Krueger and Mattie M. Krueger)

24. Defendants Kurtis K. Krueger and Mattie M. Krueger have defaulted on the terms of the Mortgage recorded as Document No. 9029604 and the Note.

25. Defendants Kurtis K. Krueger and Mattie M. Krueger are indebted to Plaintiff in the principal amount of $422,198.75, together with interest in the amount of $66,664.93 as of June 6, 2013, fees in the amount of $307,041.63, late fees in the amount of $3,819.06, escrow advances in the amount of $18,437.76, a recoverable balance in the amount of $498.00, other costs in the amount of $30.00, and prior attorneys fees and costs in the amount of $4,607.06 for a total of $818,690.13 due through June 17, 2013.

26. Pursuant to the terms of the Mortgage and Note, Plaintiff is entitled to late charges, corporate advances, and attorneys' fees and costs in an amount to be determined at judgment and upon confirmation of this judicial foreclosure.

27. Plaintiff reserves its right to pursue a judgment against Defendant Kurtis K. Krueger for any deficiency following a foreclosure sale of the Property.

28. No other action or proceeding has been brought at law or otherwise for the recovery of the indebtedness secured by said Mortgage held by Plaintiff or any part thereof.

29. Plaintiff has retained the law firm of Shapiro & Zielke, LLP to prosecute this matter.

## THE OTHER INTERESTS IN THE PROPERTY

30.     Defendants Krueger transferred their interest in the Property by Warranty Deed on April 30, 2012 to Alternative Homes Investments, LLC.

31.     Alternative Homes Investments, LLC executed a mortgage in favor of BankCherokee on April 30, 2012 in the amount of $435,000.00 (the "Cherokee Mortgage"). Said Cherokee Mortgage was recorded on May 10, 2012 as Document No. A9786668.

32.     Alternative Homes Investments, LLC also executed an Assignment of Leases and Rents securing the debt of the Cherokee Mortgage in favor of BankCherokee on April 30, 2012.

33.     Alternative Homes Investments, LLC, along with David J. Bates and Lorrie A. Bates, husband and wife, executed a mortgage in favor of BankCherokee on April 30, 2012 in the amount of $625,000.00 (the "Second Cherokee Mortgage"). Said Second Cherokee Mortgage was recorded on May 10, 2012 as Document No. A9786674

34.     Alternative Homes Investments, LLC, David J. Bates and Lorrie A. Bates also executed an Assignment of Leases and Rents securing the debt for the Second Cherokee Mortgage in favor of BankCherokee on April 30, 2012.

35.     Alternative Homes Investments, LLC executed a Mortgage Security Agreement, Fixture Financing Statement and Assignment of Leases and Rents in favor of Minnesota Business Finance Corporation on June 21, 2012 in the amount of $318,000.00 (the "Minnesota Mortgage"). Said Minnesota Mortgage was recorded on July 24, 2012 as Document No. A9820387.

6

36.     That Minnesota Business Finance Corporation assigned its interest in the Minnesota Mortgage to U.S. Small Business Administration pursuant to an Assignment of Mortgage recorded on July 24, 2012 as Document No. A9820388.

37.     That a Request for Notice of foreclosure sale was recorded on July 24, 2012 as Document No. A9820389 directing notice to the U.S. Small Business Administration.

38.     That a Memorandum of Lease in favor of lessor, Alternative Homes Investments LLC, by lessee, Alternative Homes of Minneapolis, Inc. was recorded on July 24, 2012 as Document No. A9820390.

39.     That a Collateral Assignment of Lease was recorded on July 24, 2012 as Document No. A9820391.

40.     That a Third Party Lender Agreement between BankCherokee and the Minnesota Business Finance Corporation was recorded on July 24, 2012 as Document No. A9820392.

41.     That a Mortgage Subordination Agreement was recorded on July 24, 2012 as Document No. A9820393, subordinating the Second Cherokee Mortgage recorded as Document No. A9786674 to the Minnesota Mortgage recorded as Document No. A9820387.

42.     That a UCC Financing Statement Amendment (or Continuation) was filed in favor of Bayview Loan Servicing, LLC on August 31, 2012 as Document No. A9836801, herein attached as **Exhibit H.**

43.     That a State of Minnesota Tax Lien dated February 23, 1995 in the amount of $2,294.58, naming Kurtis K. Krueger and Rosalyn Krueger as debtors, was filed

7

against the Property March 13, 1995 as Document No. 2595065, herein attached as **Exhibit I**.

44.     That a Federal Tax Lien dated February 12, 1997 in the amount of $8,867.57, naming Kurtis & Rosalyn Krueger as debtors, was filed against the Property on February 14, 1997 as Document No. 6699899, herein attached as **Exhibit J**.

45.     That a Federal Tax Lien dated July 24, 2012 in the amount of $178,905.43, naming Kurtis Krueger as debtor, was filed against the Property on August 10, 2012 as Document No. A9825607, herein attached as **Exhibit K**.

46.     That the Mortgage recorded as Document No. 9029604 is prior and superior to all interests, judgments or encumbrances identified above in ¶¶ 30-42, 45.

**WHEREFORE,** Plaintiff prays for Judgment as follows:

1.     Finding that Defendants Kurtis K. Krueger and Mattie M. Krueger have defaulted under the terms of the Mortgage recorded as Document No. 9029604 and Note.

2.     Awarding judgment in favor of Plaintiff against Defendants Kurtis K. Krueger and Mattie M. Krueger for the principal amount of $422,198.75, together with interest in the amount of $66,664.93 as of June 6, 2013, fees in the amount of $307,041.63, late fees in the amount of $3,819.06, escrow advances in the amount of $18,437.76, a recoverable balance in the amount of $498.00, other costs in the amount of $30.00, and prior attorneys fees and costs in the amount of $4,607.06 for a total of $818,690.13 due through June 17, 2013, pursuant to the Note and Mortgage.

3.     Providing that the judgment award to Plaintiff may hereafter be amended to reflect the rate of interest provided under the Note at the time of sale, as well as the additional costs and fees associated with the sale of the Property.

8

4.      Directing the Sheriff of Hennepin County to sell said premises according to the provisions of law relating to the sale of real estate, and thereafter to make a report to the Court, applying the proceeds of such sale, after deducting the cost thereof, to the payment of the amount adjudged to be paid due with interest and costs and disbursements of this action.

5.      Adjudging and awarding a judgment against Defendant Kurtis K. Krueger for any deficiency from such foreclosure sale to Plaintiff in an amount to be determined at the time of such sale.

6.      Declaring that the Mortgage recorded as Document No. 9029604 is prior, paramount and superior to all of the liens or interests on, in or against the said Mortgaged premises, and barring and foreclosing Defendants and or any successors or assigns of Defendants from any equity of redemption, lien, or interest in said property, except the right to redeem from said sale in foreclosure as provided by statute.

7.      For such further relief that the Court may deem just and equitable.

Dated:  _7/2/13_                          **SHAPIRO & ZIELKE, LLP**

By: _____
Wendy Oien Sanchez – #0391586
Kalli L. Ostlie – #329678
*Attorneys for Plaintiff*
12550 West Frontage Road Suite 200
Burnsville, MN 55337
(952) 831-4060


John G. Westrick - #206581
*Attorney for Plaintiff*
Westrick & McDowall-Nix, PLLP
450 Degree of Honor Building
325 Cedar Street
St. Paul, MN 55101

**ACKNOWLEDGEMENT**

Pursuant to Minn. Stat. §549.211, Plaintiff acknowledges that sanctions may be imposed under this section in a civil action.

_____
Wendy Øjen Sanchez


**VERIFICATION**

STATE OF _Florida -_ )
                                        )SS.
COUNTY OF _Miami-dale_ -


_Alejandro Diaz_____, being first duly sworn, states that he/she is the

_Asst Vice Pres._ for Bayview Loan Servicing, LLC as attorney in fact for

M & T Bank, the Plaintiff in this action, that he/she has read the foregoing complaint and

that its contents are true of his own knowledge and to the best of his/her information.


_____

Printed Name: _Alejandro Diaz_____
                        _Asst Vice Pres._

Subscribed and sworn to me

This _July 3rd_, 2013

_____
Notary

LISETTE MARQUEZ
MY COMMISSION # EE 039147
EXPIRES: November 1, 2014
Bonded Thru Notary Public Underwriters

**THIS MAY BE DEEMED A COMMUNICATION FROM A DEBT COLLECTOR
ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.**

## ADJUSTABLE RATE PROMISSORY NOTE

### {MINNESOTA}

**$450,000.00**                          **DATE:  August 2, 2007**

                          **MATURES:  September 1, 2027**

**FOR VALUE RECEIVED,** Kurtis K. Krueger, as maker, whose address is 8161 33rd Avenue South #W1401, Minneapolis, MN 55425 (the "Borrower"), hereby unconditionally, jointly and severally (if more than one), promises to pay to the order of InterBay Funding, LLC, a Delaware Limited Liability Company as payee, having an address at 89 Forbes Blvd., Suite 1000, Mansfield, MA 02048 (the "Lender"), or at such other place as the holder hereof may from time to time designate in writing, the principal sum of Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00), in lawful money of the United States of America with interest thereon to be computed from the date of this Promissory Note ("Note") at the Applicable Interest Rate (defined below) in accordance with the terms of this Note.

1.  ADJUSTABLE INTEREST. Interest on the unpaid principal balance due hereunder shall accrue at an initial interest rate equal to Thirteen And Three Eighths Percent (13.375%) per annum (the "Applicable Interest Rate"). Thereafter the Applicable Interest Rate will be adjusted as follows: on a date which is one hundred twenty (120) months from the first day of the first calendar month preceding the initial Payment Date (defined below), and thereafter on a date six (6) months from the previous change date (each, a "Change Date"), the Applicable Interest Rate will adjust to reflect the then current "Prime Rate" plus Seven And Five Eighths Percent (7.625%). The Applicable Interest Rate will not be increased or decreased on the initial Change Date by more than two percent (2%), thereafter the Applicable Interest Rate will not be increased or decreased on any single Change Date by more than one percent (1%). During the term of this Note, the Applicable Interest Rate shall not be lower than the Applicable Interest Rate on the date hereof and shall, provided no Event of Default (defined below) has occurred (in such an event the "Default Rate", as hereinafter defined, will apply), not exceed the Applicable Interest Rate on the date hereof plus six percent (6%). For purposes hereof, the "Prime Rate" shall mean, at any time, the rate of interest quoted in the Wall Street Journal, Money Rates Section as the "Prime Rate" (currently defined as the base rate on corporate loans posted by at least 75% of the nation's thirty largest banks). In the event that the Wall Street Journal quotes more than one rate, or a range of rates as the Prime Rate, then the Prime Rate shall mean the average of the quoted rates. In the event that the Wall Street Journal ceases to publish the Prime Rate, then the Prime Rate shall be the average Prime Rate of the three largest U.S. money center commercial banks, as determined by Lender. Notwithstanding anything to the contrary herein, the Applicable Interest Rate on each Change Date shall be calculated by the Lender based upon the Prime Rate that was in effect on the date which is 45 days prior to said Change Date (or the next subsequent business day if the 45th prior day falls on a holiday or weekend. Interest shall be computed on the actual number of days elapsed and an assumed year of 360 days.

2.  PAYMENT TERMS. Borrower agrees to pay sums due under this Note in payments of principal and interest. The initial monthly payment shall be in the amount of Five Thousand Four Hundred Fifty-Five Dollars And Seventy-Seven Cents ($5,455.77). However, monthly payment amounts may change if there is a change in the Applicable Interest Rate. At the time of a change of the Applicable Interest Rate the new monthly payment shall be calculated based upon the principal



balance of this Note on the applicable Change Date through the remaining term of the original twenty (20) year amortization schedule, and the Applicable Interest Rate then in effect. The first installment of principal and interest shall be due on October 1, 2007, and additional payments shall be due on the 1st day of each calendar month thereafter (each, a "Payment Date"). The entire principal balance and all accrued and unpaid interest thereon shall be due and payable on September 1, 2027 (the "Maturity Date"). Each installment payment shall be applied as follows: (i) first, to the payment of late charges and interest computed at the Default Rate (defined below), if applicable; (ii) second, to the payment of interest at the Applicable Interest Rate; and (iii) third, the balance toward the reduction of the principal balance.

3.  SECURITY. This Note is secured by that certain Mortgage and Security Agreement, Deed of Trust and Security Agreement, or Deed to Secure Debt and Security Agreement, Assignment of Leases and Rents, and Security Agreement and Fixture Filing (the "Security Instrument") of even date herewith given by Borrower to Lender encumbering certain premises located in Hennepin County, Parish or Judicial District of the Commonwealth or State of MINNESOTA, (the "Real Property") and the Other Security Documents (as defined in the Security Instrument) encumbering other property ("Other Property"), as more particularly described therein (the Real Property and the Other Property are hereinafter collectively referred to as the "Property").

4.  DEFAULT AND ACCELERATION. If any payment required in this Note is not paid (a) prior to the fifth (5th) day after a Payment Date, (b) on the Maturity Date or (c) on the happening of any other default, after the expiration of any applicable notice and grace periods, herein or under the terms of the Security Instrument or any of the Other Security Documents (collectively, an "Event of Default"), and Lender declares an Event of Default, then, at the option of Lender (i) the whole of the principal sum of this Note; (ii) interest, default interest, late charges and other sums, as provided in this Note, the Security Instrument or the Other Security Documents; (iii) all other monies agreed or provided to be paid by Borrower in this Note, the Security Instrument or the Other Security Documents; (iv) all sums advanced pursuant to the Security Instrument to protect and preserve the Property and any lien and security interest created thereby; (v) all sums advanced and costs and expenses incurred by Lender in connection with the Debt (defined below) or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender; (vi) the Prepayment Consideration (defined below), if any; and (vii) any and all additional advances made by Lender to complete Improvements (as defined in the Security Instrument) or to preserve or protect the Property, or for taxes, assessments or insurance premiums, or for the performance of any of Borrower's obligations hereunder or under the Security Instrument and the Other Security Documents (all the sums referred to in (i) through (vii) above shall collectively be referred to as the "Debt") shall without notice become immediately due and payable.

5.  DEFAULT INTEREST. Borrower agrees that upon the occurrence (and Lender's declaration) of an Event of Default, Lender shall be entitled to receive and Borrower shall pay interest on the entire unpaid principal sum at a per annum rate equal to the lesser of (i) ten percent (10%) plus the Applicable Interest Rate, or (ii) the maximum interest rate which Borrower may by law pay (the "Default Rate"), and shall be due and payable ON DEMAND. The Default Rate shall be computed from the occurrence of the Event of Default. Interest calculated at the Default Rate shall be deemed secured by the Security Instrument and the Other Security Documents. Any judgment obtained by Lender against Borrower as to any amounts due under this Note shall also bear interest at the Default Rate. This clause, however, shall not be construed as an agreement or

privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

6.   LATE CHARGE. If any monthly installment payable under this Note is not paid prior to the fifth (5th) day after the applicable Payment Date, Borrower shall pay to Lender upon demand an amount equal to the lesser of (a) five percent (5%) of such unpaid sum or (b) the maximum amount permitted by applicable law to defray the expenses incurred by Lender in handling and processing the delinquent payment and to compensate Lender for the loss of the use of the delinquent payment; and this amount shall be secured by the Security Instrument and the Other Security Documents. This clause, however, shall not be construed as an agreement or privilege to extend the date of the payment of the Debt, nor as a waiver of any other right or remedy accruing to Lender by reason of the occurrence of any Event of Default.

7.   PREPAYMENT.

    a.   **Lockout Period : Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is one hundred twenty (120) months after the date of this Note (the "Lockout Period"). If, for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment"), Borrower shall, simultaneously therewith, be obligated to pay: (i) the aggregate amount of interest which would have accrued on the unpaid principal balance of this Note from the date of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in Section 7(b) below).**

    b.   **Prepayment Period: At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part, pursuant to the terms contained in this Section 7. If Borrower makes any Prepayment within the first ten years after the date of this Note (the "Prepayment Period"), the Borrower shall be obligated to pay to Lender the following amounts:**

        **(i)**    **an amount equal to five percent (5.00%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"); and**

        **(ii)**    **all accrued interest on the outstanding principal balance to and including date on which the Prepayment is made; and**

        **(iii)**    **all other sums due under this Note, the Security Instrument and all Other Security Documents.**

    c.   Prepayments Without Consideration: No Prepayment Consideration or Lockout Fee (if any) shall be due or payable with respect to any full or partial Prepayment made by Borrower after the expiration of the Prepayment Period.

    d.   Notice of Prepayment: Prior to making any Prepayment, Borrower must provide Lender with not less than sixty (60) days advance written notice of Borrower's intent to make such Prepayment. Such notice must specify: (i) the date on which Prepayment is to be made, and (ii) the principal amount of such Prepayment. Lender shall not be obligated to accept

any Prepayment unless it is accompanied by all other amounts due in connection therewith.

e. Permitted Prepayment Date : Borrower may only make a Prepayment on a regularly scheduled Payment Date (as defined in Section 2 of this Note). Lender shall not be required to accept any Prepayment made on a date other than a regularly scheduled Payment Date. If Borrower submits a Prepayment on any date other than a regularly scheduled Payment Date, then Borrower shall be required to pay all interest that would have accrued through the next scheduled Payment Date.

f. Insurance/Condemnation Prepayments: Notwithstanding anything to the contrary contained herein, and provided no Event of Default exists, no Prepayment Consideration shall be due in connection with any Prepayment resulting from the application of insurance proceeds or condemnation awards pursuant to the terms of the Security Instrument or changes in tax and debt credit pursuant to the terms of the Security Instrument.

For purposes of this Section 7, the terms "Lockout Prepayment" and "Prepayment" shall include, without limitation, any prepayment of principal that occurs as a result of any Event of Default in any of the Loan Documents or an acceleration of the Maturity Date under any circumstances, any prepayment of principal occurring in connection with foreclosure proceedings or exercise of any applicable power of sale, any statutory right of redemption exercised by Borrower or any other party having a statutory right to redeem or prevent foreclosure, any sale in foreclosure or under exercise of any applicable power of sale, deed in lieu of foreclosure or otherwise, and any other voluntary or involuntary prepayment of principal made by Borrower.

8. LOAN CHARGES. Borrower agrees to an effective rate of interest that is the rate stated in this Note, plus any additional rate of interest resulting from any other sums, amounts, and charges in the nature of interest paid or to be paid by or on behalf of Borrower, or any benefit or value received or to be received by the holder of this Note, in connection with this Note. Without limiting the foregoing, this Note, the Security Instrument and the Other Security Documents are subject to the express condition that at no time shall Borrower be obligated or required to pay interest on the principal balance due hereunder at a rate which could subject Lender to either civil or criminal liability as a result of being in excess of the maximum interest rate which Borrower is permitted by applicable law to contract or agree to pay. If by the terms of this Note, the Security Instrument and the Other Security Documents, Borrower is at any time required or obligated to pay interest on the principal balance due hereunder at a rate in excess of such maximum rate, the Applicable Interest Rate or the Default Rate, as the case may be, shall be deemed to be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder, and any excess remaining shall be refunded to Borrower. All sums paid or agreed to be paid to Lender for the use, forbearance, or detention of the Debt, shall, to the maximum extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated period until payment in full of the principal (including the period of any renewal or extension hereof) so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate of interest from time to time in effect and applicable to the Debt for so long as the Debt is outstanding. In determining whether or not the interest paid or payable hereunder exceeds the maximum lawful rate, the Lender may utilize any law, rule or regulation in effect from time to time and available to the Lender.

9. WAIVERS. Borrower and all others who may become liable for the payment of all or any part of

the Debt do hereby severally waive, to the extent allowed by law, (a) presentment and demand for payment, notice of dishonor, protest and notice of protest and non-payment and all other notices of any kind, except for notices expressly provided for in this Note, the Security Instrument or the Other Security Documents and (b) any defense of the statute of limitations in any action hereunder or for the collection of the Debt. No release of any security for the Debt or extension of time for payment of this Note or any installment hereof, and no alteration, amendment or waiver of any provision of this Note, the Security Instrument or the Other Security Documents made by agreement between Lender or any other person or party shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower, and any other person or entity who may become liable for the payment of all or any part of the Debt, under this Note, the Security Instrument or the Other Security Documents. No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Lender to take further action without further notice or demand as provided for in this Note, the Security Instrument or the Other Security Documents. If Borrower is a partnership, corporation or limited liability company, the agreements contained herein shall remain in full force and effect, notwithstanding any changes in the individuals or entities comprising the Borrower, and the term "Borrower," as used herein, shall include any alternate or successor entity, but any predecessor entity, and its partners or members, as the case may be, shall not thereby be released from any liability. (Nothing in the foregoing sentence shall be construed as a consent to, or a waiver of, any prohibition or restriction on transfers of interests in Borrower which may be set forth in the Security Instrument or any Other Security Document).

10. AUTHORITY. Borrower (and the undersigned representative of Borrower, if any) represents that Borrower has full power, authority and legal right to execute and deliver this Note, the Security Instrument and the Other Security Documents and that this Note, the Security Instrument and the Other Security Documents constitute legal, valid and binding obligations of Borrower, enforceable in accordance with their respective terms.

11. GOVERNING LAW. This Note shall be governed, construed, applied and enforced in accordance with the laws of the State in which the Real Property is located, without regard to principles of conflicts of law.

12. NOTICES. All notices required or permitted hereunder shall be given as provided in the Security Instrument.

13. INCORPORATION BY REFERENCE. All of the terms, covenants and conditions contained in the Security Instrument and the Other Security Documents are hereby made part of this Note to the same extent and with the same force as if they were fully set forth herein. In the event of any conflict in terms, the terms of the Note, Security Instrument and Other Security Documents (in that order) shall control.

14. MISCELLANEOUS.

    a.   To the extent permitted by law, wherever pursuant to this Note it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, reasonable legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement for the expenses of in-house staff, or otherwise. To the extent permitted by law, Borrower shall pay to Lender on demand any and all expenses, including legal expenses and reasonable attorneys fees (at all levels including appeals), incurred or paid by Lender in

enforcing this Note, whether or not any legal proceeding is commenced hereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

b. This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

c. If Borrower consists of more than one person or party, the obligations and liabilities of each person or party shall be joint and several.

d. Whenever used, the singular number shall include the plural, the plural number shall include the singular, and the words "Lender" and "Borrower" shall include their respective successors, assigns, heirs, personal representatives, executors and administrators.

e. The headings of this Note are for convenience only and are not to affect the construction of or to be taken into account in interpreting the substance of this Note.

f. Time is of the essence hereunder.

g. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and a determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

15. DOCUMENTARY STAMPS. All documentary stamps or taxes required to be affixed hereto have been paid in connection with this Note at the time of recordation of the Security Instrument.

16. FINAL AGREEMENT. This Note, the Security Instrument and the Other Security Documents, represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements. There are no unwritten oral agreements between the parties. All prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged into this Note, the Security Instrument and the Other Security Documents.

17. POWER OF ATTORNEY. To the extent permitted by applicable law, Borrower hereby irrevocably authorizes any attorney at law elected by Lender to appear for it in any action on this Note in any court of record in the State of MINNESOTA or any other state or territory of the United States, or at any time after the indebtedness evidenced by this Note, or any part thereof becomes due (by acceleration or otherwise), to waive the issuance and service of process, and confess a judgment in favor of Lender or any subsequent holder of this Note against Borrower, for the amount that may then be due, together with the costs of suit and interest, and to waive and release all errors and all rights to second trial, appeal, and stay of execution. The foregoing warrant of attorney shall survive any judgment, and if any judgment be vacated for any reason, the holder hereof nevertheless may thereafter use the foregoing warrant of attorney to obtain an additional judgment or judgments against Borrower.

18. WAIVER OF TRIAL BY JURY. BORROWER AND LENDER, BY ITS ACCEPTANCE HEREOF, EACH HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THIS NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THIS NOTE, THIS NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF ANY PARTY OR ANY OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF THE RIGHT TO TRIAL BY JURY IS A MATERIAL INDUCEMENT TO THE LENDER FOR THE LENDER TO MAKE THE LOAN.

READ ALL CREDIT AGREEMENTS BEFORE SIGNING. THE TERMS OF ALL CREDIT AGREEMENTS SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED OR SPECIFICALLY INCORPORATED BY WRITING IN THIS WRITTEN CREDIT AGREEMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS NOTE ONLY BY OTHER WRITTEN CREDIT AGREEMENTS.

[NO FURTHER TEXT - SIGNATURES APPEAR ON NEXT PAGE]

**IN WITNESS WHEREOF,** Borrower has duly executed this Note as of the day and date first above written.

Signed, sealed and delivered
in the presence of:

Borrower:

Print Name: _Nick Sash_

_Kurtis K. Krueger_
Kurtis K. Krueger

Print Name:_____

ACKNOWLEDGMENT

STATE OF MINNESOTA          )
                           ) ss:
COUNTY OF _____Hennepin_____ )

The foregoing instrument was acknowledged before me on August 2, 2007, by Kurtis K. Krueger, a married man.

He is personally known to me or has produced _____Driver's License_____ as identification, and did/did not take an oath.

[Official Notary Seal]

NICHOLAS J. SASH
Notary Public-State of Minnesota
My Commission Expires
January 31, 2012

Print Name: _____Nick Sash_____
Notary Public, State of Minnesota
My Commission Expires: _____1/3/12_____

# ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE
REFERRED TO BELOW:

BORROWER:                           Kurtis K. Krueger

LENDER:                             InterBay Funding, LLC, a Delaware Limited
                                    Liability Company

DATED:                              August 2, 2007

ORIGINAL PRINCIPAL BALANCE:         $450,000.00


PAY TO THE ORDER OF.


WITHOUT RECOURSE:

InterBay Funding, LLC, a Delaware Limited Liability Company

By: _____
Print Name:      Raymond J. Carvara
Title:           Vice President



**Doc No 9029604** 08/24/2007 01:52 PM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 337669

Deputy 53
Fees
$5.00 ConsFee
$35.50 DOC
$10.50 SUR
$51.00 Total



EXHIBIT

B

UPON RECORDING RETURN TO:

Bayview Loan Servicing, LLC
c/o Nationwide Title Clearing, Inc.
Attn: Final Docs Unit
2100 Alt 19 North
Palm Harbor, FL 33683
(800) 346-9152

Henn Co     MRT
RGS       # 49882
8/23/2007
Paid     $1,080.00

Box 160 Title Recording Services

# MORTGAGE AND SECURITY AGREEMENT

### { MINNESOTA }

**Kurtis K. Krueger, a married man**
and Mattie M Krueger, a married woman, married to
each other           **as Mortgagor**
                                   **(Borrower)**

**To**
**InterBay Funding, LLC, a Delaware Limited**
**Liability Company**

**as Mortgagee**
**(Lender)**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, ENFORCEMENT OF THIS SECURITY INSTRUMENT IN MINNESOTA IS LIMITED TO A DEBT AMOUNT OF $450,000.00 UNDER CHAPTER 287 OF MINNESOTA STATUTES, TOGETHER WITH INTEREST THEREON AND WITH SUCH ADDITIONAL AMOUNTS AS MAY BE ADVANCED.**



Title Recording Services, Inc.          533386
79 Western Ave N
St. Paul, MN 55102                       gt07424
HENNEPIN A                               GT&T BASIC

                                         MTG

**THIS MORTGAGE AND SECURITY AGREEMENT** (the "Security Instrument") is made as of August 2, 2007, by Kurtis K. Krueger, a married man, whose address is 8161 33rd Avenue South #W1401, Minneapolis, MN 55425, as mortgagor ("Borrower") to InterBay Funding, LLC, a Delaware Limited Liability Company, whose address is 89 Forbes Blvd., Suite 1000, Mansfield, MA 02048, as mortgagee ("Lender").

### RECITALS:

Borrower by its Promissory Note of even date herewith given to Lender is indebted to Lender in the principal sum of Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00) in lawful money of the United States of America (the Note together with all extensions, renewals, modifications, substitutions and amendments thereof shall collectively be referred to as the "Note"), with interest from the date thereof at the rates set forth in the Note, principal and interest to be payable in accordance with the terms and conditions provided in the Note and with a maturity date of September 1, 2027.

By its execution hereof, Borrower desires to secure the payment of the Debt (hereinafter defined) and the performance of all of its obligations under the Note and the Other Obligations (hereinafter defined) and any and all other indebtedness now or hereafter owing by Borrower to Lender.

### ARTICLE 1. - GRANTS OF SECURITY

Section 1.1.    PROPERTY MORTGAGED. Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender with mortgage covenants upon the Statutory Condition and, as provided and/or authorized by applicable law, with the STATUTORY POWER OF SALE, and grant a security interest to Lender in, the following property, rights, interests and estates now owned, or hereafter acquired by Borrower to the fullest extent permitted by applicable law (collectively, the "Property"):

(a)    Land. The real property described in *Exhibit "A"* attached hereto and made a part hereof (the "Land");

2444 Pillsbury Avenue South Minneapolis, MN 55404

(b)    Additional Land. All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise be expressly made subject to the lien of this Security Instrument;

(c)    Improvements. The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (the "Improvements");

(d)    Easements. All easements, servitudes rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)    Fixtures and Personal Property. All machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) trade fixtures and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, including without limitation, letter of credit rights, deposit accounts, payment intangibles, investment property, electronic chattel paper, timber to be cut and farm animals and, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Land and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Land and the

Improvements (collectively, the "Personal Property"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Security Instrument, and all proceeds and products of all of the above;

(f)      Leases and Rents. All leases, subleases and other agreements affecting the use, enjoyment or occupancy of the Land and/or the Improvements heretofore or hereafter entered into and all extensions, amendments and modifications thereto, whether before or after the filing by or against Borrower of any petition for relief under Creditors Rights Laws (hereinafter defined) (the "Leases") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, any guaranties of the lessees' obligations thereunder, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, room revenues, accounts, accounts receivable, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Creditors Rights Laws (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(g)      Insurance Proceeds. All proceeds of and any unearned premiums on any insurance policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property;

(h)      Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Property, whether from the exercise of the right of eminent domain (including, but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of the Property;

(i)      Tax Certiorari. All refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Property as a result of tax certiorari or any applications or proceedings for reduction;

(j)      Conversion. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims;

(k)      Rights. The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(l)      Agreements. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the occurrence and during the continuance of an Event of Default (hereinafter defined), to receive and collect any sums payable to Borrower thereunder;

(m)      Intangibles. All trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other intellectual property rights and general intangibles relating to or used in connection with the operation of the Property;

(n)      Cash and Accounts. Cash and Accounts. All cash funds, deposit accounts and other rights and evidence of rights to cash, all present and future funds, accounts, instruments, accounts receivable, documents, causes of action, or claims now or hereafter held, created or otherwise capable of credit to the Debtor/Borrower; and

(o)      Other Rights. Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (n) above.

Section 1.2.      ASSIGNMENT OF LEASES AND RENTS. Borrower hereby absolutely and unconditionally assigns to Lender Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Notwithstanding the foregoing, Lender grants to Borrower a revocable license to collect and receive the Rents. Borrower shall hold a portion of the Rents sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

Section 1.3.   SECURITY AGREEMENT. This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Personal Property as well as all other property and interests set forth in Section 1.1 herein to the full extent that the same may be subject to the Uniform Commercial Code.  If required by Lender, Borrower shall execute UCC-1 Financing Statements covering said property for filing with the appropriate county and/or state filing offices.  In any event, Lender is permitted to unilaterally file a UCC-1 Financing Statement covering all of the Property.

Section 1.4.   PLEDGE OF MONIES HELD.  Borrower hereby pledges to and grants a continuing security interest in favor of Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the Escrow Fund (hereinafter defined), Net Proceeds (hereinafter defined) and condemnation awards or payments (hereinafter described) as additional security for the Obligations until expended or applied as provided in this Security Instrument.

## CONDITIONS TO GRANT

TO HAVE AND TO HOLD the above granted and described Property to the use and benefit of Lender, and the successors and assigns of Lender, forever;

PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly pay to Lender the Debt at the time and in the manner provided in the Note and this Security Instrument, shall perform the Other Obligations as set forth in this Security Instrument and shall abide by and comply with each and every covenant and condition set forth herein and in the Note, these presents and the estate hereby granted shall cease, terminate and be void, except to the extent any provision herein provides that it shall survive the repayment of the obligations.

## ARTICLE 2. - DEBT AND OBLIGATIONS SECURED

Section 2.1.   DEBT. This Security Instrument and the grants, assignments and transfers made pursuant to the terms hereafter are given for the purpose of securing the payment of the following, in such order of priority as Lender may determine in its sole discretion (the "Debt"):

(a)   the indebtedness evidenced by the Note in lawful money of the United States of America;

(b)   interest, default interest, late charges and other sums, as provided in the Note, this Security Instrument or the Other Security Documents (hereinafter defined);

(c)   the Prepayment Consideration (defined in the Note), if any;

(d)   all other monies agreed or provided to be paid by Borrower in the Note, this Security Instrument or the Other Security Documents (hereinafter defined);

(e)   all sums advanced pursuant to this Security Instrument to protect and preserve the Property and the lien and the security interest created hereby; and

(f)   all sums advanced and costs and expenses incurred by Lender in connection with the Debt or any part thereof, any renewal, extension, or change of or substitution for the Debt or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Borrower or Lender; and

(g)   any and all additional advances made by Lender to complete Improvements or to preserve or protect the Property, or for taxes, assessments or insurance premiums, or for the performance of any of Borrower's obligations hereunder or under the Other Security Documents (hereinafter defined).

Section 2.2.   OTHER OBLIGATIONS. This Security Instrument and the grants, assignments and transfers made pursuant to the terms hereof are also given for the purpose of securing the performance of the following (the "Other Obligations"):

(a)   all other obligations of Borrower contained herein;

(b)     each obligation of Borrower contained in the Note and in the Other Security Documents; and

(c)     each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, this Security Instrument or the Other Security Documents.

(d)     any and all other indebtedness now or hereafter owing by Borrower to Lender.

Section 2.3.     DEBT AND OTHER OBLIGATIONS. Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively as the "Obligations."

Section 2.4.     PAYMENTS. Unless payments are made in the required amount in immediately available funds at the place where the Note is payable, remittances in payment of all or any part of the Debt shall not, regardless of any receipt or credit issued therefor, constitute payment until the required amount is actually received by Lender in funds immediately available at the place where the Note is payable (or any other place as Lender, in Lender's sole discretion, may have established by delivery of written notice thereof to Borrower) and shall be made and accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks; provided, however, Lender shall not be required to accept payment for any Obligation in cash. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and the failure to pay the entire amount then due shall be and continue to be an Event of Default.

### ARTICLE 3. - BORROWER COVENANTS

Borrower covenants and agrees that:

Section 3.1.     PAYMENT OF DEBT AND PERFORMANCE OF OBLIGATIONS. Borrower will pay the Debt at the time and in the manner provided in the Note and in this Security Instrument; without relief from valuation or appraisement laws, and shall promptly and fully perform all of the Obligations in this Security Agreement and the Other Security Documents (hereinafter defined).

Section 3.2.     INCORPORATION BY REFERENCE. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guaranty payment of the Note or are otherwise executed and delivered in connection with the Loan (the "Other Security Documents") are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

Section 3.3.     INSURANCE. Borrower shall maintain with respect to the Property at all times, insurance against loss or damage by fire and other casualties and hazards by insurance written on an "all risks" basis including specifically windstorm and/or hail damage, in an amount not less than the replacement cost thereof, naming Lender as loss payee and additional insured; (ii) if the Property is required to be insured pursuant to the National Flood Reform Act of 1994, and the regulations promulgated there under, flood insurance is required in the amount equal to the lesser of the loan amount or the maximum available under the National Flood Insurance Program, but in no event should the amount of coverage be less than the value of the improved structure, naming Lender as additional insured and loss payee; and (iii) liability insurance providing coverage in such amount as Lender may require but in no event less than $500,000.00 naming Lender as an additional insured; and (iv) such other insurances as Lender may reasonably require from time to time.

All casualty insurance policies shall contain an endorsement or agreement by the insurer in form satisfactory to Lender that any loss shall be payable in accordance with the terms of such policy notwithstanding any act of negligence of Borrower and the further agreement of the insurer waiving rights of subrogation against Lender, and rights of set-off, counterclaim or deductions against Borrower.

All insurance policies shall be in form, provide coverages, be issued by companies and be in amounts satisfactory to Lender. At least 30 days prior to the expiration of such policy, Borrower shall furnish Lender with evidence satisfactory to Lender that such policy has been renewed or replaced. All such policies shall provide that the policy will not be canceled or materially amended without at least 30 days prior written notice to Lender. In the event Borrower fails to provide, maintain, keep in force and furnish to Lender the policies of insurance in such amounts, at such premium, for such risks and by such means as Lender chooses, then Lender may procure such insurance at Borrower's sole cost and expense, provided Lender shall have no responsibility to obtain any insurance, but if Lender does obtain insurance, Lender shall have no responsibility to assure that the insurance obtained shall be adequate or provide any

protection to Borrower.

In the event of a foreclosure of the Security Instrument or other transfer of title to the Property in extinguishment in whole or in part of the Debt, all right, title and interest of Borrower in and to the Policies then in force concerning the Property, to the extent assignable, and all proceeds payable thereunder shall thereupon vest in Lender or the purchaser at such foreclosure or other transferee in the event of such other transfer of title.

Section 3.4.    PAYMENT OF TAXES, ETC.

(a)    Borrower shall promptly pay by the date same are initially payable all taxes, assessments, impact fees, levies, inspection and license fees, water rates, sewer rents and other governmental impositions, including, without limitation, vault and meter charges and license fees for the use of vaults, chutes and similar areas adjoining the Land, now or hereafter levied or assessed or imposed against the Property or any part thereof (the "Taxes") not paid from the Escrow Fund (hereinafter defined), all ground rents, maintenance charges and similar charges, now or hereafter levied or assessed or imposed against the Property or any part thereof (the "Other Charges"), and all charges for utility services provided to the Property as same become due and payable. Borrower will deliver to Lender, receipts or other, evidence satisfactory to Lender that the Taxes, Other Charges and utility service charges have been so paid or are not then delinquent. Borrower shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever, which may be or become a lien or charge against the Property, except to the extent sums sufficient to pay all Taxes and Other Charges have been deposited with Lender in accordance with the terms of this Security Instrument.

(b)    After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Taxes, provided that (i) no Event of Default has occurred and is continuing under the Note, this Security Instrument or any of the Other Security Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Taxes from Borrower and from the Property or Borrower shall have paid all of the Taxes under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost and (vi) Borrower shall have deposited with Lender adequate reserves (determined by Lender in its sole discretion) for the payment of the Taxes, together with all interest and penalties thereon, unless Borrower has paid all of the Taxes under protest, and Borrower shall have furnished such other security as may be required in the proceeding, or as may be reasonably requested by Lender to insure the payment of any contested Taxes, together with all interest and penalties thereon, taking into consideration the amount in the Escrow Fund available for payment of Taxes.

Section 3.5.    ESCROW FUND. In addition to the initial deposits with respect to Taxes and Insurance Premiums made by Borrower to Lender on the date hereof to be held by Lender in escrow, Borrower shall pay to Lender on the first day of each calendar month (a) one-twelfth of an amount which would be sufficient to cover the payment of the Taxes payable, or estimated by Lender to be payable, during the next ensuing twelve (12) months and (b) one-twelfth of an amount which would be sufficient to pay the Insurance Premiums due for the renewal of the coverage afforded by the Policies upon the expiration thereof (the amounts in (a) and (b) above shall be called the "Escrow Fund"). Borrower agrees to notify Lender immediately of any changes to the amounts, schedules and instructions for payment of any Taxes and Insurance Premiums of which it has or obtains knowledge and authorizes Lender or its agent to obtain the bills for Taxes directly from the appropriate taxing authority. The Escrow Fund and the payments of interest or principal or both, payable pursuant to the Note shall be added together and shall be paid as an aggregate sum by Borrower to Lender. Provided there are sufficient amounts in the Escrow Fund and no Event of Default exists, Lender shall be obligated to pay the Taxes and Insurance Premiums as they become due on their respective due dates on behalf of Borrower by applying the Escrow Fund to the payments of such Taxes and Insurance Premiums required to be made by Borrower. If the amount of the Escrow Fund shall exceed the amounts reasonably necessary for the payment of Taxes and Insurance Premiums, Lender shall, in its discretion, return any excess to Borrower or credit such excess against future payments to be made to the Escrow Fund. In allocating such excess, Lender may deal with the person shown on the records of Lender to be the owner of the Property. If the Escrow Fund is not sufficient to pay the items set forth in (a) and (b) above as and when they are due, Borrower shall promptly pay to Lender, upon demand, an amount which Lender shall reasonably estimate as sufficient to make up the deficiency. Unless otherwise required by applicable state or federal law, the Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Lender. Unless otherwise required by applicable state or federal law, no earnings or interest on the Escrow Fund shall be payable to Borrower.

Upon payment in full of the Debt, and full performance of the Obligations, the funds remaining in the Escrow Fund, if any, shall be paid to the record owner of the Land encumbered by the lien of this Security Instrument within a reasonable time following the date of such full payment and performance.

Section 3.6.   CONDEMNATION.  Borrower shall promptly give Lender notice of the actual or threatened commencement of any condemnation or eminent domain proceeding and shall deliver to Lender copies of any and all papers, documents, surveys and correspondence served or received in connection with such proceedings. Notwithstanding any taking by any public or quasi-public authority through eminent domain or otherwise (including, but not limited to any transfer made in lieu of or in anticipation of the exercise of such taking), Borrower shall continue to pay the Debt at the time and in the manner provided for its payment in the Note and in this Security Instrument and the Debt shall not be reduced until any award or payment therefor shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Debt.  Lender shall not be limited to the interest paid on the award by the condemning authority but shall be entitled to receive out of the award interest at the rate or rates provided in the Note.  Borrower hereby assigns and shall cause all awards and payments made in any condemnation or eminent domain proceeding, to be paid directly to Lender.  Lender may apply any award or payment to the reduction or discharge of the Debt whether or not then due and payable.  If the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the award or payment, Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive the award or payment, or a portion thereof sufficient to pay the Debt.  In addition, Borrower authorizes Lender, at Lender's option but without any obligation, as attorney-in-fact for Borrower to commence, appear in and prosecute, in Borrower's or Lender's name, any action or proceeding relating to any condemnation (which term for purposes hereunder shall mean any action regarding damage or taking by any governmental authority, quasi-governmental authority, any party having power of condemnation, or any transfer by private sale in lieu thereof) or other taking of the Property and to settle or compromise any claim in connection with such condemnation or other taking.  Notwithstanding any application of condemnation proceeds by Lender to the Debt, Borrower shall repair, restore and rebuild the Property affected by the condemnation to a condition as close to that existing prior to such condemnation as is reasonable practicable, and otherwise sufficient for the use and enjoyment thereof as determined by Lender.

Section 3.7.   RESTORATION AFTER CASUALTY.

(a)    In the event of loss, Borrower shall give immediate written notice to the insurance carrier and to Lender.  Borrower hereby authorizes and appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust and compromise any claims under policies of property damage insurance, to appear in and prosecute any action arising from such property damage insurance policies, to collect and receive the proceeds of property damage insurance, and to deduct from such proceeds Lender's expenses incurred in the collection of such proceeds.  This power of attorney is coupled with an interest and therefore is irrevocable.  However, nothing contained in this Section 3.7 shall require Lender to incur any expense or take any action.  Lender may, at Lender's option, (1) hold the balance of such proceeds to be used to reimburse Borrower for the cost of restoring and repairing the Property to the equivalent of its original condition or to a condition approved by Lender (the "Restoration"), or (2) apply the balance of such proceeds to the payment of the Debt, whether or not then due.  To the extent Lender determines to apply insurance proceeds to Restoration, Lender shall do so in accordance with Lender's then-current policies relating to the restoration of casualty damage on similar properties.

(b)    Lender shall not exercise its option to apply insurance proceeds to the payment of the Debt if all of the following conditions are met: (1) no Event of Default (or any event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default) has occurred and is continuing; (2) Lender determines, in its discretion, that there will be sufficient funds to complete the Restoration; (3) Lender determines, in its discretion, that the net cash flow from the Property after completion of the Restoration will be sufficient to meet all operating costs and other expenses, deposits to the Escrow Fund, deposits to reserves and loan repayment obligations relating to the Property; (4) Lender determines, in its discretion, that the Restoration will be completed before the earlier of (A) one year before the maturity date of the Note or (B) one year after the date of the loss or casualty; and (5) upon Lender's request, Borrower provides Lender evidence of the availability during and after the Restoration of the insurance required to be maintained by Borrower pursuant to Section 3.3.

Section 3.8.   LEASES AND RENTS.  Borrower shall maintain, enforce and cause to be performed all of the terms and conditions under any Lease or sublease, which may constitute a portion of the Property.  Borrower shall not, without the consent of Lender enter into any new Lease of all or any portion of the Property, agree to the cancellation or surrender under any Lease of all or any portion of the Property, agree to prepayment of Rents, issues or profits (other than Rent paid at the signing of a lease or sublease), modify any such Lease so as to shorten the term, decrease the Rent, accelerate the payment of Rent, or change the terms of any renewal option, provided that such action (taking into account, in the case of

a termination, reduction in rent, surrender of space or shortening of term, the planned alternative use of the affected space) does not have a materially adverse effect on the value of the Property taken as a whole, and provided that such Lease, as amended, modified or waived, is otherwise in compliance with the requirements of this Security Instrument and any subordination agreement binding upon Lender with respect to such Lease. Any such purported new Lease, cancellation surrender, prepayment or modification made without the written consent of Lender shall be void as against Lender.

Section 3.9.    MAINTENANCE AND USE OF PROPERTY. Borrower shall cause the Property to be maintained in a good and safe condition and repair. The Improvements and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Personal Property with replacement property of equal or greater value) without the consent of Lender. Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any casualty, or become damaged, worn or dilapidated or which may be affected by any condemnation or taking proceeding and shall complete and pay for any structure at any time in the process of construction or repair on the Land. Borrower shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting, defining or changing the uses which may be made of the Property or any part thereof. If under applicable zoning provisions the use of all or any portion of the Property is or shall become a nonconforming use, Borrower will not cause or permit the nonconforming use to be discontinued or the nonconforming Improvement to be abandoned without the express written consent of Lender, and Borrower shall take such other steps as Lender may require to establish the legality of such non-conforming use.

Section 3.10.    WASTE. Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or give cause for cancellation of any Policy, or substantially increase the rates thereunder, or do or permit to be done thereon anything that may in any way impair the value of the Property or the security of this Security Instrument. Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

Section 3.11.    COMPLIANCE WITH LAWS.

(a)    Borrower shall promptly comply with all existing and future federal, state and local laws, orders, ordinances, governmental rules and regulations or court orders affecting the Property, and the use thereof, including any Environmental Law (hereinafter defined) ("Applicable Laws").

(b)    Borrower shall from time to time, upon Lender's request, provide Lender with evidence reasonably satisfactory to Lender that the Property complies with all Applicable Laws or is exempt from compliance with Applicable Laws.

(c)    Notwithstanding any provisions set forth herein or in any document regarding Lender's approval of alterations of the Property, Borrower shall not alter the Property in any manner which would materially increase Borrower's responsibilities for compliance with Applicable Laws without the prior written approval of Lender. Lender's approval of the plans, specifications, or working drawings for alterations of the Property shall create no responsibility or liability on behalf of Lender for their completeness, design, sufficiency or their compliance with Applicable Laws. The foregoing shall apply to tenant improvements constructed by Borrower or by any of its tenants. Lender may condition any such approval upon receipt of a certificate of compliance with Applicable Laws from an independent architect, engineer, or other person acceptable to Lender.

(d)    Borrower shall give prompt notice to Lender of the receipt by Borrower of any notice related to a violation or threatened violation of any Applicable Laws and of the commencement or threatened commencement of any proceedings or investigations which relate to compliance with Applicable Laws.

(e)    After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceedings, promptly initiated and conducted in good faith and with due diligence, the Applicable Laws affecting the Property, provided that (i) no Event of Default has occurred and is continuing under the Note, this Security Instrument or any of the Other Security Documents; (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property; (iii) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower or the Property is subject and shall not constitute a default thereunder; (iv) neither the Property, any part thereof or interest therein, any of the tenants or occupants thereof, Borrower, nor Lender shall be affected in any material adverse way as a result of such proceeding; (v)

non-compliance with the Applicable Laws shall not impose civil or criminal liability on Borrower or Lender; and (vi) Borrower shall have furnished to Lender all other items reasonably requested by Lender.

Section 3.12.     BOOKS AND RECORDS

(a)     Borrower shall keep and maintain at all times at the Property or the management agent's offices, and upon Lender's request shall make available at the Property, complete and accurate books of account and records (including copies of supporting bills and invoices) adequate to reflect correctly the operation of the Property, and copies of all written contracts, Leases, and other instruments which affect the Property. Following a default by Borrower, the books, records, contracts, Leases and other instruments shall be subject to examination and inspection at any reasonable time by Lender.

(b)     Following a default by Borrower, Borrower shall furnish to Lender all of the following:

(1)     within ten (10) days following Lender's written request and thereafter annually within 120 days after the end of each fiscal year of Borrower, a statement of income and expenses for Borrower's operation of the Property for that fiscal year, a statement of changes in financial position of Borrower relating to the Property for that fiscal year and, when requested by Lender, a balance sheet showing all assets and liabilities of Borrower relating to the Property as of the end of that fiscal year;

(2)     within ten (10) days following Lender's written request and thereafter annually within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a rent schedule for the Property showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, and any related information requested by Lender;

(3)     within ten (10) days following Lender's written request and thereafter annually within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, an accounting of all security deposits held pursuant to all Leases, including the name of the institution (if any) and the names and identification numbers of the accounts (if any) in which such security deposits are held and the name of the person to contact at such financial institution, along with any authority or release necessary for Lender to access information regarding such accounts;

(4)     within ten (10) days following Lender's written request and thereafter annually within 120 days after the end of each fiscal year of Borrower, and at any other time upon Lender's request, a statement that identifies all owners of any interest in Borrower and the interest held by each, if Borrower is a corporation, all officers and directors of Borrower, and if Borrower is a limited liability company, all managers who are not members;

(5)     within ten (10) days following Lender's written request and thereafter monthly a property management report for the Property, showing the number of inquiries made and rental applications received from tenants or prospective tenants and deposits received from tenants and any other information requested by Lender;

(6)     within ten (10) days following Lender's written request and thereafter monthly a balance sheet, a statement of income and expenses for Borrower and a statement of changes in financial position of Borrower for Borrower's most recent fiscal year; and

(7)     within ten (10) days following Lender's written request and thereafter monthly a statement of income and expense for the Property for the prior month or quarter.

(c)     Each of the statements, schedules and reports required hereunder shall be certified to be complete and accurate by an individual having authority to bind Borrower, and shall be in such form and contain such detail as Lender may reasonably require; provided that Lender, in Lender's sole discretion, may require that any statements, schedules or reports be audited at Borrower's expense by independent certified public accountants acceptable to Lender.

(d)     If Borrower fails to provide in a timely manner the statements, schedules and reports required hereunder, Lender shall have the right to have Borrower's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such statements, schedules and reports, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Debt.

(e)     If an Event of Default has occurred and is continuing, Borrower shall deliver to Lender upon written demand all books and records relating to the Property or its operation.

(f)        Borrower authorizes Lender to obtain a credit report on Borrower at any time.

(g)        Borrower, any Guarantor and any Indemnitor shall furnish Lender with such other additional financial or management information (including State and Federal tax returns) as may, from time to time, be reasonably required by Lender in form and substance satisfactory to Lender.

(h)        Borrower, any Guarantor and any Indemnitor shall furnish to Lender and its agents convenient facilities for the examination and audit of any such books and records.

Section 3.13.        PAYMENT FOR LABOR AND MATERIALS.  Borrower will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials incurred in connection with the Property and never permit to exist in respect of the Property or any part thereof any lien or security interest, even though inferior to the liens and the security interests hereof, and in any event never permit to be created or exist in respect of the Property or any part thereof any other or additional lien or security interest other than the liens or security interests hereof, except for the Permitted Exceptions (defined below).

Section 3.14.        PERFORMANCE OF OTHER AGREEMENTS.  Borrower shall observe and perform each and every term to be observed or performed by Borrower pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Property, or given by Borrower to Lender for the purpose of further securing an Obligation and any amendments, modifications or changes thereto.

Section 3.15.        CHANGE OF NAME, IDENTITY OR STRUCTURE.  Borrower shall not change Borrower's name, identity (including its trade name or names) or, if not an individual, Borrower's corporate, partnership or other structure or jurisdiction where the Borrower is organized without notifying the Lender of such change in writing at least thirty (30) days prior to the effective date of such change and, in the case of a change in Borrower's structure or the jurisdiction where Borrower is organized, without first obtaining the prior written consent of the Lender.

Section 3.16.        EXISTENCE.  Borrower will continuously maintain (a) its existence and shall not dissolve or permit its dissolution, (b) its rights to do business in the state where the Property is located and (c) its franchises and trade names.

Section 3.17.        MANAGEMENT.  The Property shall be managed by either: (a) Borrower or an entity affiliated with Borrower and approved by Lender for so long as Borrower or said affiliated entity is managing the Property in a first class manner; or (b) a professional property management company approved by Lender.  Management by an affiliated entity or a professional property management company shall be pursuant to a written agreement approved by Lender which shall be in all respects subordinate to this Security Instrument. Following a default by Borrower, no manager shall be removed or replaced or the terms of any management agreement modified or amended without the prior written consent of Lender. In the event (x) of default hereunder or under any management contract then in effect, which default is not cured within any applicable grace or cure period or (y) of the bankruptcy or insolvency of the manager, Lender shall have the right to immediately terminate, or to direct Borrower to immediately terminate, such management contract and to retain, or to direct Borrower to retain, a new management agent approved by Lender. All Rents generated by or derived from the Property shall first be utilized solely for current expenses directly attributable to the ownership and operation of the Property, including, without limitation, current expenses relating to Borrower's liabilities and obligations with respect to the Note, this Security Instrument and the Other Security Documents, and none of the Rents generated by or derived from the Property shall be diverted by Borrower and utilized for any other purpose unless all such current expenses attributable to the ownership and operation of the Property have been fully paid and satisfied.

Section 3.18.        PRINCIPAL PLACE OF BUSINESS.  In the event that Borrower shall change the principal place of business or chief executive office, or, in the event Borrower is one or more natural persons, the location of its permanent residence, all as set forth in Subsection 4.18 below, Borrower shall immediately notify Lender in writing.  Borrower shall execute and deliver such additional financing statements, security agreements and other instruments which may be necessary to effectively evidence or perfect Lender's security interest in the Property as a result of such change of principal place of business or residence.

### ARTICLE 4. - REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Lender that:

Section 4.1.        WARRANTY OF TITLE.  Borrower has good and marketable title to the Property and has the right to

mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey the same and that Borrower possesses an unencumbered fee simple absolute estate in the Land and the Improvements and that it owns the Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Security Instrument (the "Permitted Exceptions"). Borrower shall forever warrant, defend and preserve the title and the validity and priority of the lien of this Security Instrument and shall forever warrant and defend the same to Lender against the claims of all persons whomsoever, and shall make such further assurances to perfect fee simple title to the Property as Lender may reasonably require.

**Section 4.2.      LEGAL STATUS AND AUTHORITY.**  Borrower (a) is duly organized, validly existing and in good standing under the laws of its state of organization or incorporation; (b) is duly qualified to transact business and is in good standing in the state where the Property is located; and (c) has all necessary approvals, governmental and otherwise, and full power and authority to own, operate and lease the Property. Borrower (and the undersigned representative of Borrower, if any) has full power, authority and legal right to execute this Security Instrument, and to mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey the Property pursuant to the terms hereof and to keep and observe all of the terms of this Security Instrument on Borrower's part to be performed.

**Section 4.3.      VALIDITY OF DOCUMENTS.**  (a) The execution, delivery and performance of the Note, this Security Instrument and the Other Security Documents and the borrowing evidenced by the Note (i) are within the power and authority of Borrower; (ii) have been authorized by all requisite organizational action; (iii) have received all necessary approvals and consents, corporate, governmental or otherwise; (iv) will not violate, conflict with, result in a breach of or constitute (with notice or lapse of time, or both) a default under any provision of law, any order or judgment of any court or governmental authority, the articles of incorporation, by-laws, partnership or trust agreement, articles of organization, operating agreement, or other governing instrument of Borrower, or any indenture, agreement or other instrument to which Borrower is a party or by which it or any of its assets or the Property is or may be bound or affected; (v) will not result in the creation or imposition of any lien, charge or encumbrance whatsoever upon any of its assets, except the lien and security interest created hereby; and (vi) will not require any authorization or license from, or any filing with, any governmental or other body (except for the recordation of this Security Instrument in appropriate land records in the State where the Property is located and except for Uniform Commercial Code filings relating to the security interest created hereby), and (b) the Note, this Security Instrument and the Other Security Documents constitute the legal, valid and binding obligations of Borrower, enforceable in accordance with their terms.

**Section 4.4.      LITIGATION.**  There is no action, suit or proceeding, judicial, administrative or otherwise (including any condemnation or similar proceeding), pending or, to the best of Borrower's knowledge, threatened or contemplated against Borrower, a Guarantor, if any, an Indemnitor, if any, or against or affecting the Property that has not been disclosed to Lender by Borrower in writing.

**Section 4.5.      STATUS OF PROPERTY.**

       (a)      Borrower has obtained all necessary certificates, licenses and other approvals, governmental and otherwise, necessary for the operation of the Property and the conduct of its business and all required zoning, building code, land use, environmental and other similar permits or approvals, all of which are in full force and effect as of the date hereof and not subject to revocation, suspension, forfeiture or modification.

       (b)      The Property and the present and contemplated use and occupancy thereof are in full compliance with all applicable zoning ordinances, building codes, land use laws, Environmental Laws and other similar laws.

       (c)      The Property is served by all utilities required for the current or contemplated use thereof. All utility service is provided by public utilities and the Property has accepted or is equipped to accept such utility service.

       (d)      All public roads and streets necessary for service of and access to the Property for the current or contemplated use thereof have been completed, are serviceable and all-weather and are physically and legally open for use by the public, and have been dedicated to and accepted for public maintenance by the applicable municipal or county authorities.

       (e)      The Property is served by public water and sewer systems.

       (f)      The Property is free from damage caused by fire or other casualty.

       (g)      All costs and expenses of any and all labor, materials, supplies and equipment used in the

construction of the Improvements have been paid in full.

(h)     Borrower has paid in full for, and is the owner of, all furnishings, fixtures and equipment (other than tenants" property) used in connection with the operation of the Property, free and clear of any and all security interests, liens or encumbrances, except the lien and security interest created hereby.

(i)     All liquid and solid waste disposal, septic and sewer systems located on the Property are in a good and safe condition and repair and in compliance with all Applicable Laws.

(j)     No portion of the Improvements is located in an area identified by the Federal Emergency Management Agency or any successor thereto as an area having special flood hazards pursuant to the Flood Insurance Acts or, if any portion of the Improvements is located within such area, Borrower has obtained and will maintain the insurance required pursuant to the terms hereof.

(k)     All the Improvements lie within the boundaries of the Land.

Section 4.6.     NO FOREIGN PERSON. Borrower is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations.

Section 4.7.     SEPARATE TAX LOT. The Property is assessed for real estate tax purposes as one or more wholly independent tax lot or lots, separate from any adjoining land or improvements not constituting a part of such lot or lots, and no other land or improvements is assessed and taxed together with the Property or any portion thereof.

Section 4.8.     LEASES. Except as disclosed in the rent roll for the Property delivered to and approved by Lender, (a) Borrower is the sole owner of the entire lessor's interest in the Leases; (b) the Leases are valid and enforceable and in full force and effect; (c) all of the Leases are arms-length agreements with bona fide, independent third parties; (d) no party under any Lease is in default; (e) all Rents due have been paid in full; (f) the terms of all alterations, modifications and amendments to the Leases are reflected in the certified occupancy statement delivered to and approved by Lender; (g) none of the Rents reserved in the Leases have been assigned or otherwise pledged or hypothecated; (h) none of the Rents have been collected for more than one (1) month in advance (except a security deposit shall not be deemed rent collected in advance); (i) the premises demised under the Leases have been completed in accordance with the Leases, and the tenants under the Leases have accepted the same and have taken possession of the same on a rent-paying basis; (j) there exist no offsets or defenses to the payment of any portion of the Rents and Borrower has no monetary obligation to any tenant under any Lease; (k) Borrower has received no notice from any tenant challenging the validity or enforceability of any Lease; (1) there are no agreements with the tenants under the Leases other than expressly set forth in each Lease; (m) the Leases are valid and enforceable against Borrower and the tenants set forth therein; (n) no Lease contains an option to purchase, right of first refusal to purchase, right of first refusal to relet, or any other similar provision; (o) no person or entity has any possessory interest in, or right to occupy, the Property except under and pursuant to a Lease; (p) each Lease is subordinate to this Security Instrument, either pursuant to its terms or a recordable subordination agreement; (q) no Lease has the benefit of a non-disturbance agreement that would be considered unacceptable to prudent institutional lenders; (r) all security deposits relating to the Leases reflected on the certified rent roll delivered to Lender have been collected by Borrower; and (s) no brokerage commissions or finders fees are due and payable regarding any Lease.

Section 4.9.     FINANCIAL CONDITION.

(a)     (i) Borrower is solvent and no proceeding under Creditors Rights Laws (hereinafter defined) with respect to Borrower has been initiated, and (ii) Borrower has received reasonably equivalent value for the granting of this Security Instrument.

(b)     No petition in bankruptcy has been filed by or against Borrower, any Guarantor, any Indemnitor or any related entity, or any principal, general partner or member thereof, in the last seven (7) years, and neither Borrower, any Guarantor, any Indemnitor nor any related entity, or any principal, general partner or member thereof, in the last seven (7) years has ever made any assignment for the benefit of creditors or taken advantage of any Creditors Rights Laws.

Section 4.10.     BUSINESS PURPOSES. The loan evidenced by the Note secured by the Security Instrument and the Other Security Documents (the "Loan") is solely for the business purpose of Borrower, and is not for personal, family, household, or agricultural purposes.

Section 4.11.     TAXES. Borrower, any Guarantor and any Indemnitor have filed all federal, state, county, municipal,

and city income, personal property and other tax returns required to have been filed by them and have paid all taxes and related liabilities which have become due pursuant to such returns or pursuant to any assessments received by them. Neither Borrower, any Guarantor nor any Indemnitor knows of any basis for any additional assessment in respect of any such taxes and related liabilities for prior years.

Section 4.12.     MAILING ADDRESS.  Borrower's mailing address, as set forth in the opening paragraph hereof or as changed in accordance with the provisions hereof, is true and correct.

Section 4.13.     NO CHANGE IN FACTS OR CIRCUMSTANCES.  All information in the application for the Loan submitted to Lender and in all financial statements, rent rolls, reports, certificates and other documents submitted in connection with the application or in satisfaction of the terms thereof, are accurate, complete and correct in all respects. There has been no adverse change in any condition, fact, circumstance or event that would make any such information inaccurate, incomplete or otherwise misleading.

Section 4.14.     DISCLOSURE.  Borrower has disclosed to Lender all material facts and has not failed to disclose any material fact that could cause any representation or warranty made herein to be materially misleading.

Section 4.15.     THIRD PARTY REPRESENTATIONS.  Each of the representations and the warranties made by each Guarantor and Indemnitor in any Other Security Document(s) is true and correct in all material respects.

Section 4.16.     ILLEGAL ACTIVITY.  No portion of the Property has been or will be purchased, improved, equipped or furnished with proceeds of any illegal activity and to the best of Borrower's knowledge, there are no illegal activities or activities relating to controlled substances at the Property.

Section 4.17.     PERMITTED EXCEPTIONS.  None of the Permitted Exceptions, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Security Instrument, the Note, and the Other Security Documents, materially and adversely affect the value of the Property, impair the use or the operation of the Property or impair Borrower's ability to pay its obligations in a timely manner.

Section 4.18.     PRINCIPAL PLACE OF BUSINESS.  Borrower's principal place of business is as set forth in the opening paragraph to this Security Instrument.

Section 4.19.     PROPERTY USE.  The Property shall continue to be used in accordance with its present use, and for no other use without the prior written consent of Lender.

### ARTICLE 5. - OBLIGATIONS AND RELIANCE

Section 5.1.     RELATIONSHIP OF BORROWER AND LENDER.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the Other Security Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

Section 5.2.     NO RELIANCE.  The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise in connection with the ownership and operation of the Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

Section 5.3.     NO LENDER OBLIGATIONS.  Notwithstanding anything to the contrary contained herein, Lender is not undertaking the performance of (a) any obligations under the Leases; or (b) any obligations with respect to such agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses and other documents.  By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the Other Security Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

Section 5.4.     RELIANCE.  Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the Other Security Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth herein without any obligation to investigate the Property and notwithstanding any

investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the Other Security Documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein.

## ARTICLE 6. - FURTHER ASSURANCES

Section 6.1.                    RECORDING OF SECURITY INSTRUMENT, ETC. Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the Other Security Documents creating a lien or security interest or evidencing the lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the Other Security Documents, any note or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Section 6.2.                    FURTHER ACTS, ETC. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the Property and rights hereby mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all applicable state or federal law. Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence or perfect more effectively the security interest of Lender in the Property. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender hereunder.

Section 6.3.                    CHANGES IN TAX, DEBT CREDIT AND DOCUMENTARY STAMP LAWS.

        (a)             If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the Debt immediately due and payable.

        (b)             Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof.

        (c)             If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the Other Security Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

Section 6.4.                    ESTOPPEL CERTIFICATES.

        (a)             After request by Lender, Borrower, within ten (10) days, shall furnish Lender or any proposed assignee with a statement, duly acknowledged and certified, setting forth (i) the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the terms of payment and maturity date of the Note, (v) the date installments of interest and/or principal were last paid, (vi) that, except as provided in such statement, there are no defaults or events which with the passage of time or the giving of notice or both, would constitute

an event of default under the Note or the Security Instrument, (vii) that the Note and this Security Instrument are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification, (viii) whether any offsets or defenses exist against the obligations secured hereby and, if any are alleged to exist, a detailed description thereof, (ix) that all Leases are in full force and effect and (provided the Property is not a residential multifamily property) have not been modified (or if modified, setting forth all modifications), (x) the date to which the Rents thereunder have been paid pursuant to the Leases, (xi) whether or not, to the best knowledge of Borrower, any of the lessees under the Leases are in default under the Leases, and, if any of the lessees are in default, setting forth the specific nature of all such defaults, (xii) the amount of security deposits held by Borrower under each Lease and that such amounts are consistent with the amounts required under each Lease, and (xiii) as to any other matters reasonably requested by Lender and reasonably related to the Leases, the obligations secured hereby, the Property or this Security Instrument.

(b)       Borrower shall use its best efforts to deliver to Lender, promptly upon request, duly executed estoppel certificates from any one or more lessees as required by Lender attesting to such facts regarding the Lease as Lender may require, including, but not limited to attestations that each Lease covered thereby is in full force and effect with no defaults thereunder on the part of any party, that none of the Rents have been paid more than one month in advance, except as security, and that the lessee claims no defense or offset against the full and timely performance of its obligations under the Lease.

(c)       Upon any transfer or proposed transfer of the Property at Lender's request, Borrower, any Guarantors and any Indemnitor(s) shall provide an estoppel certificate in such form, substance and detail as Lender may require.

Section 6.5.       FLOOD INSURANCE. After Lender's request, Borrower shall deliver evidence satisfactory to Lender that no portion of the Improvements is situated in a federally designated "special flood hazard area" or, if it is, that Borrower has obtained insurance meeting the requirements hereof.

Section 6.6.       REPLACEMENT DOCUMENTS. Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any Other Security Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or Other Security Document, Borrower will issue, in lieu thereof, a replacement Note or Other Security Document, dated the date of such lost, stolen, destroyed or mutilated Note or Other Security Document in the same principal amount thereof and otherwise of like tenor.

## ARTICLE 7. - DUE ON SALE/ENCUMBRANCE

Section 7.1.       TRANSFER DEFINITIONS. For purposes of this Article, an "Affiliated Manager" shall mean any managing agent in which Borrower, any Guarantor or Indemnitor has, directly or indirectly, any legal, beneficial or economic interest; a "Restricted Party" shall mean Borrower, any Guarantor, any Indemnitor, or any Affiliated Manager or any shareholder, partner, member or non-member manager, or any direct or indirect legal or beneficial owner of Borrower, any Guarantor, any Indemnitor, any Affiliated Manager or any non-member manager; and a "Sale" shall mean a voluntary or involuntary sale, conveyance, transfer or pledge of a legal or beneficial interest.

Section 7.2.       NO SALE/ENCUMBRANCE

(a)       Borrower shall not sell, convey, mortgage, grant, bargain, encumber, pledge, assign, grant options with respect to, or otherwise transfer or dispose of (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration or of record) the Property or any part thereof or any legal or beneficial interest therein (collectively a "Transfer"), other than pursuant to Leases of space in the Improvements to tenants in accordance with the provisions hereof without the prior written consent of Lender.

(b)       A Transfer shall include, but not be limited to, (i) an installment sales agreement wherein Borrower agrees to sell the Property or any part thereof for a price to be paid in installments; (ii) an agreement by Borrower leasing all or a substantial part of the Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Borrower's right, title and interest in and to any Leases or any Rents; (iii) if a Restricted Party is a corporation, any merger, consolidation or Sale or Pledge of such corporation's stock or the creation or issuance of new stock in one or a series of transactions, by which such corporation's stock shall be vested in a party or parties who are not now shareholders; (iv) if a Restricted Party is a limited or general partnership or joint venture, any merger or consolidation or the change, removal, resignation or addition of a general partner or the Sale or Pledge of the partnership interest of any general partner or any profits or proceeds relating to such

partnership interest, or the Sale or Pledge of limited partnership interests or the creation or issuance of new limited partnership interests in one or a series of transactions, by which such limited partnership interests shall be vested in a party or parties who are not now limited partners; (v) if a Restricted Party is a limited liability company, any merger or consolidation or the change, removal, resignation or addition of a managing member or non-member manager (or if no managing member, any member) or the Sale or Pledge of the membership interest of a managing member (or if no managing member, any member) or any profits or proceeds relating to such membership interest, or the Sale or Pledge of non-managing membership interests or the creation or issuance of new non-managing membership interests in one or a series of transactions, by which such non-managing membership interests shall be vested in a party or parties who are not now non-managing members; (vi) if a Restricted Party is a trust or nominee trust, any merger, consolidation or the Sale or Pledge of the legal or beneficial interest in a Restricted Party or the creation or issuance of new legal or beneficial interests in one or a series of transactions, by which such beneficial or legal interests shall be vested in a party or parties who are not now legal or beneficial owners; or (vii) the removal or the resignation of the managing agent (including, without limitation, an Affiliated Manager) other than in accordance herewith.

Section 7.3.          PERMITTED TRANSFERS. Notwithstanding anything to the contrary contained herein, the following transfers shall not be deemed to be a Transfer: (a) a transfer by devise or descent or by operation of law upon the death of a member, partner or shareholder of a Restricted Party; and (b) the Sale or Pledge of stock or limited partnership or non-managing membership interests in a Restricted Party by which, in one or a series of transactions, in the aggregate, not more than forty-nine percent (49%) of the stock, limited partnership interests or non-managing membership interests (as the case may be) in a Restricted Party, shall be vested in parties not now having an ownership interest; provided, however, no such transfer shall result in the change of voting control in the Restricted Party, and as a condition to each such transfer, Lender shall receive not less than ten (10) days prior written notice of such proposed transfer.

Section 7.4          ASSIGNMENT/ASSUMPTION. Notwithstanding anything to the contrary contained in this Article 7, and in addition to the transfers permitted hereunder, Lender may, in Lender's sole and absolute discretion, permit a sale, assignment, or other transfer of the Property, provided that: (i) Lender receives sixty (60) days prior written notice of the proposed transfer hereunder; (ii) no Event of Default has occurred and is continuing; and (iii) all underwriting requirements deemed necessary by Lender (in its sole and absolute discretion) are satisfied, including but not limited to the following:

(a)  Borrower shall pay any and all fees and out-of-pocket costs incurred in connection with the transfer of the Property (including, without limitation, Lender's counsel fees and disbursements and all recording fees, title insurance premiums and mortgage and intangible taxes);

(b)  The proposed transferee (the "Transferee") or Transferee's principals must have demonstrated expertise in owning and operating properties similar in location, size and operation to the Property, which expertise shall be determined by Lender, in Lender's sole discretion;

(c)  Transferee and Transferee's principals shall, as of the date of such transfer, have an aggregate net worth and liquidity acceptable to Lender, in Lender's sole discretion;

(d)  Transferee shall assume all of the obligations of Borrower under the Loan Documents in all respects, including, without limitation, by entering into an assumption agreement in form and substance satisfactory to Lender (in Lender's sole discretion) and one or more Transferee's principals shall execute in favor of Lender a Guaranty and an Affidavit and Indemnity of Borrower and Guarantor Regarding Hazardous and Toxic Materials;

(e)  No Event of Default or event which, with the giving of notice, passage of time or both, shall constitute an Event of Default, shall otherwise occur as a result of such transfer, and Transferee and Transferee's principals shall deliver (A) all organization documentation requested by Lender, which shall be satisfactory to Lender (in Lender's sole discretion), and (B) all certificates, agreements and covenants required by Lender; and

(f)  Borrower shall deliver, at its sole cost and expense, an endorsement to the existing title policy insuring the Security Instrument, as modified by the assumption agreement, as a valid first lien on the Property and naming the Transferee as owner of the Property, which endorsement shall insure that, as of the date of the recording of the assumption agreement, the Property shall not be subject to any additional exceptions or liens other than those contained in the title policy issued on the date hereof.

If all Lender requirements have been satisfied (including but not limited to those listed hereinabove) and Lender approves

the proposed transfer to the Transferee, then Borrower shall be released from all liability under this Security Instrument, the Note and the Other Loan Documents immediately upon the transfer of the Property to the Transferee.

## ARTICLE 8. - DEFAULT

Section 8.1.          EVENTS OF DEFAULT. The occurrence of any one or more of the following events shall constitute an "Event of Default":

(a)        if any portion of the Debt is not paid on or prior to the date the same is due or if the entire Debt is not paid on or before the Maturity Date;

(b)   if Borrower fails to repay any sum paid or advanced by Lender under the terms of this Security Instrument or any Other Loan Document;

(c)   if Borrower fails to repay any sum owed to Lender or its successor or assignee under the terms of any other Security Instrument, promissory note or other loan document in connection with any other loan; provided that such failure to repay shall constitute an Event of Default hereunder only if the person or entity to which payment is owed under such other Security Instrument, promissory note or other loan document is the holder of the Note;

(d)        if any of the Taxes or Other Charges is not paid when the same is due and payable except to the extent sums sufficient to pay such Taxes and Other Charges have been deposited with Lender in accordance with the terms of this Security Instrument;

(e)        if the Policies are not kept in full force and effect, or if the Policies are not delivered to Lender as provided herein;

(f)        if Borrower violates or does not comply with any of the provisions of this Security Instrument or any Other Loan Document;

(g)        if any representation or warranty of Borrower, any Indemnitor or any person guaranteeing payment of the Debt or any portion thereof or performance by Borrower of any of the terms of this Security Instrument (a "Guarantor"), or any member, general partner, principal or beneficial owner of any of the foregoing, made herein or in any guaranty, or in any certificate, report, financial statement or other instrument or document furnished to Lender shall have been false or misleading in any material respect when made;

(h)        if (i) Borrower or any managing member or general partner of Borrower, or any Guarantor or Indemnitor shall commence any case, proceeding or other action (A) under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization, conservatorship, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to its debts or debtors ("Creditors Rights Laws"), seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, or (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or the Borrower or any managing member or general partner of Borrower, or any Guarantor or Indemnitor shall make a general assignment for the benefit of its creditors; or (ii) there shall be commenced against Borrower or any managing member or general partner of Borrower or any Guarantor or Indemnitor any case, proceeding or other action of a nature referred to in clause (i) above which (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed, undischarged or unbonded for a period of sixty (60) days; or (iii) there shall be commenced against the Borrower or any managing member or general partner of Borrower, or any Guarantor or Indemnitor any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of its assets which results in the entry of any order for any such relief which shall not have been vacated, discharged, or stayed or bonded pending appeal within sixty (60) days from the entry thereof; or (iv) the Borrower or any managing member or general partner of Borrower or any Guarantor or Indemnitor shall take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in clause (i), (ii), or (iii) above; or (v) the Borrower or any managing member or general partner of Borrower, or any Guarantor or Indemnitor shall generally not, or shall be unable to, or shall admit in writing its inability to, pay its debts as they become due;

(i)        if Borrower shall be in default beyond applicable notice and grace periods under any other mortgage, deed of trust, deed to secure debt or other security agreement covering any part of the Property whether it be superior or junior in lien to this Security Instrument;

(j) if the Property becomes subject to any mechanic's, materialman's or other lien other than a lien for any Taxes not then due and payable and the lien shall remain undischarged of record (by payment, bonding or otherwise) for a period of thirty (30) days;

(k) if any federal or state tax lien is filed against Borrower, any member or general partner of Borrower, any Guarantor, any Indemnitor or the Property and same is not discharged of record within thirty (30) days after same is filed;

(l) if any default occurs under any guaranty or indemnity executed in connection herewith, and such default continues after the expiration of applicable grace periods, if any; or

(m) if Borrower files of record, without the prior written consent of Lender which Lender may grant or withhold for any reason in its sole and absolute discretion, any notice limiting the maximum principal amount that may be secured hereunder; or

(n) if Borrower sells, transfers (whether voluntary or by operation of law), pledges, hypothecates or further encumbers all or any part of the Property or any interest therein or any interest in the Borrower (except as otherwise expressly provided herein), or additionally assigns all or any part of the rents, income or profits arising therefrom, in either case without the prior written consent of Lender, which may be withheld for any reason in Lender's sole and absolute discretion; or

(o) if Borrower or any Guarantor or Indemnitor is dissolved, merges into another entity, or otherwise terminates its existence (other than as specifically allowed pursuant to the terms hereof) or if the person(s) controlling such entity shall take any action authorizing or leading to the same; or

(p) if for more than ten (10) days after notice from Lender, Borrower shall continue to be in default under any other term, covenant or condition of the Note, this Security Instrument or the Other Security Documents in the case of any default which can be cured by the payment of a sum of money or for thirty (30) days after notice from Lender in the case of any other default, provided that if such default cannot reasonably be cured within such thirty (30) day period and Borrower shall have commenced to cure such default within such thirty (30) day period and thereafter diligently and expeditiously proceeds to cure the same, such thirty (30) day period shall be extended for so long as it shall require Borrower in the exercise of due diligence to cure such default, it being agreed that no such extension shall be for a period in excess of sixty (60) days.

## ARTICLE 9. - RIGHTS AND REMEDIES

**Section 9.1** REMEDIES.  Upon the occurrence of any Event of Default, to the extent permitted by applicable law, Borrower agrees that Lender may take any action available at law, in equity, and as otherwise provided in this Security Instrument, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower in and to the Property, including, but not limited to the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(a) declare the entire unpaid Debt to be immediately due and payable;

(b) institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable state or federal law in which case the Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

(c) with or without entry, to the extent permitted and pursuant to the procedures provided by applicable state or federal law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing lien and security interest of this Security Instrument for the balance of the Debt not then due, unimpaired and without loss of priority;

(d) sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, in one or more parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(e)        institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note or in the Other Security Documents;

(f)        recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the Other Security Documents;

(g)        apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any Guarantor, Indemnitor or of any person, firm or other entity liable for the payment of the Debt;

(h)        subject to any applicable state or federal law, the license granted to Borrower to collect and receive rents hereunder shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise and exclude Borrower and its agents or servants wholly therefrom, and take possession of all rent rolls, leases (including the form lease) and amendments and exhibits, subleases (including the form sublease) and amendments and exhibits and rental and license agreements with the tenants, subtenants and licensees in possession of the Property or any part or parts thereof; tenants', subtenants' and licensees' money deposits or other property (including, without limitation, any letter of credit) given to secure tenants', subtenants' and licensees' obligations under leases, subleases or licenses, together with a list of the foregoing; all lists pertaining to current rent and license fee arrears; any and all architects' plans and specifications, licenses and permits, documents, books, records, accounts, surveys and property which relate to the management, leasing, operation, occupancy, ownership, insurance, maintenance, or service of or construction upon the Property and Borrower agrees to surrender possession thereof and of the Property to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat; (ii) complete any construction on the Property in such manner and form as Lender deems advisable; (iii) make alterations, additions, renewals, replacements and improvements to or on the Property; (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof; (v) either require Borrower (A) to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower, or (B) to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise; and (vi) apply the receipts from the Property to the payment of the Debt, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)        exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Personal Property, and (ii) request Borrower at its expense to assemble the Personal Property and make it available to Lender at a convenient place acceptable to Lender. Any notice of sale, disposition or other intended action by Lender with respect to the Personal Property sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)        apply any sums then deposited in the Escrow Fund and any other sums held in escrow or otherwise by Lender in accordance with the terms of this Security Instrument or any Other Security Document to the payment of the following items in any order in its sole discretion: (i) Taxes and Other Charges; (ii) Insurance Premiums; (iii) interest on the unpaid principal balance of the Note; (iv) amortization of the unpaid principal balance of the Note; and (v) all other sums payable pursuant to the Note, this Security Instrument and the Other Security Documents, including, without limitation, advances made by Lender pursuant to the terms of this Security Instrument;

(k)        surrender the Policies maintained pursuant hereto, collect the unearned Insurance Premiums and apply such sums as a credit on the Debt in such priority and proportion as Lender in its discretion shall deem proper, and in connection therewith, Borrower hereby appoints Lender as agent and attorney-in-fact (which is coupled with an interest and is therefore irrevocable) for Borrower to collect such unearned Insurance Premiums;

(l)        apply the undisbursed balance of any net proceeds deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its

discretion; or

(m)      pursue such other remedies as Lender may have under applicable state or federal law.

In the event of a sale, by foreclosure, to the extent permitted by applicable law, power of sale, or otherwise, of less than all of the Property, this Security Instrument shall continue as a lien and security interest on the remaining portion of the Property unimpaired and without loss of priority. Notwithstanding the provisions of this Section to the contrary, if any Event of Default shall occur, and the Lender elects to declare the entire unpaid Debt to be automatically due and payable, such remedy may be pursued without any further notice, demand or other action by Lender.

**Section 9.2.**      APPLICATION OF PROCEEDS. The purchase money, proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the Other Security Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper and which are in accordance with applicable law or as shall be required by a court of competent jurisdiction.

**Section 9.3.**      RIGHT TO CURE DEFAULTS. Upon the occurrence of any Event of Default or if Borrower fails to make any payment or to do any act as herein provided, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any obligation hereunder, make or do the same in such manner and to such extent as Lender may deem necessary to protect the security hereof. Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or collect the Debt. The cost and expense of any cure hereunder (including reasonable attorneys' fees to the extent permitted by law), with interest at the Default Rate (defined in the Note), shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All costs and expenses incurred by Lender in remedying any Event of Default or failed payment or act or in appearing in, defending, or bringing any such action or proceeding shall bear interest at the Default Rate defined in the Note, for the period after notice from Lender that such cost or expense was incurred to the date of payment to Lender. All such costs and expenses incurred by Lender together with interest thereon calculated at the Default Rate shall be deemed to constitute a portion of the Debt and be secured by this Security Instrument and the Other Security Documents and shall be immediately due and payable upon demand by Lender therefor.

**Section 9.4.**      ACTIONS AND PROCEEDINGS. At any time, Lender has the right to appear in and defend, compromise or settle any action or proceeding brought with respect to the Property, and after the occurrence and during the continuance of an Event of Default, to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its discretion, decides should be brought to protect its interest in the Property.

**Section 9.5.**      RECOVERY OF SUMS REQUIRED TO BE PAID. Lender shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Borrower existing at the time such earlier action was commenced.

**Section 9.6.**      EXAMINATION OF BOOKS AND RECORDS. Lender, its agents, accountants and attorneys shall have the right upon prior written notice to Borrower (unless an Event of Default exists, in which case no notice shall be required), to examine and audit, during reasonable business hours, the records, books, management and other papers of Borrower and its affiliates or of any Guarantor or Indemnitor which pertain to their financial condition or the income, expenses and operation of the Property, at the Property or at any office regularly maintained by Borrower, its affiliates or any Guarantor or Indemnitor where the books and records are located. Lender and its agents shall have the right upon notice to make copies and extracts from the foregoing records and other papers at no cost to Lender.

**Section 9.7.**      OTHER RIGHTS. ETC.

(a)      The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower, any Guarantor or any Indemnitor to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the Other Security Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any person liable for the Debt or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment, changing the rate of interest, or otherwise modifying or supplementing the terms of the Note, this Security

Instrument or the Other Security Documents.

(b)        It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Property or collateral not in Lender's possession.

(c)        Lender may resort for the payment of the Debt to any other security held by or guaranties given to Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 9.8.**        **RIGHT TO RELEASE ANY PORTION OF THE PROPERTY.** Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the obligations hereunder shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a lien and security interest in the remaining portion of the Property.

**Section 9.9.**        **VIOLATION OF LAWS.** If the Property is not in compliance with Applicable Laws, Lender may impose additional requirements upon Borrower in connection herewith including, without limitation, monetary reserves or financial equivalents.

**Section 9.10.**        **RIGHT OF ENTRY.** Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

**Section 9.11.**        **SUBROGATION.** If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the repayment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Note and the Other Security Documents and the performance and discharge of the Other Obligations.

## ARTICLE 10. - ENVIRONMENTAL HAZARDS

**Section 10.1.**        **ENVIRONMENTAL DEFINITIONS.** For the purpose of this Section, "Environmental Law" means any present and future federal, state and local laws, statutes, ordinances, rules, regulations, standards, policies and other government directives or requirements, as well as common law, including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act and the Resource Conservation and Recovery Act, that apply to Borrower or the Property and relate to Hazardous Materials. "Environmental Liens" means all Liens and other encumbrances imposed pursuant to any Environmental Law, whether due to any act or omission of Borrower or any other person or entity. "Environmental Report" means the written reports resulting from the environmental site assessments of the Property delivered to Lender. "Hazardous Materials" shall mean petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives, flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; asbestos or asbestos-containing materials in any form that is or could become friable; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "contaminant," or "pollutant" within the meaning of any Environmental Law. "Release" of any Hazardous Materials includes but is not limited to any release, deposit, discharge, emission, leaking, spilling, seeping, migrating,

injecting, pumping, pouring, emptying, escaping, dumping, disposing or other movement of Hazardous Materials.

Section 10.2.                    ENVIRONMENTAL REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants that: (a) there are no Hazardous Materials or underground storage tanks in, on, or under the Property, except those that are both (i) in compliance with Environmental Laws and with permits issued pursuant thereto (if such permits are required), if any, and (ii) either (A) in amounts not in excess of that necessary to operate the Property or (B) fully disclosed to and approved by Lender in writing pursuant to an Environmental Report; (b) there are no past, present or threatened (defined below) Release of Hazardous Materials in violation of any Environmental Law and which would require remediation by a governmental authority in, on, under or from the Property except as described in the Environmental Report; (c) there is no threat of any Release of Hazardous Materials migrating to the Property except as described in the Environmental Report; (d) there is no past or present non-compliance with Environmental Laws, or with permits issued pursuant thereto, in connection with the Property except as described in the Environmental Report; (e) Borrower does not know of, and has not received, any written or oral notice or other communication from any person or entity (including but not limited to a governmental entity) relating to Hazardous Materials in, on, under or from the Property; and (f) Borrower has truthfully and fully provided to Lender, in writing, any and all information relating to environmental conditions in, on, under or from the Property known to Borrower or contained in Borrower's files and records, including but not limited to any reports relating to Hazardous Materials in, on, under or migrating to or from the Property and/or to the environmental condition of the Property.

Section 10.3.                    ENVIRONMENTAL COVENANTS. Borrower covenants and agrees that so long as Borrower owns, manages, is in possession of, or otherwise controls the operation of the Property: (a) all uses and operations on or of the Property, whether by Borrower or any other person or entity, shall be in compliance with all Environmental Laws and permits issued pursuant thereto; (b) there shall be no Releases of Hazardous Materials in, on, under or from the Property; (c) there shall be no Hazardous Materials in, on, or under the Property, except those that are both (i) in compliance with all Environmental Laws and with permits issued pursuant thereto, if and to the extent required, and (ii) (A) in amounts not in excess of that necessary to operate the Property or (B) fully disclosed to and approved by Lender in writing; (d) Borrower shall keep the Property free and clear of all Environmental Liens; (e) Borrower shall, at its sole cost and expense, fully and expeditiously cooperate in all activities pursuant to this Section, including but not limited to providing all relevant information and making knowledgeable persons available for interviews; (f) Borrower shall, at its sole cost and expense, perform any environmental site assessment or other investigation of environmental conditions in connection with the Property, pursuant to any reasonable written request of Lender, upon Lender's reasonable belief that the Property is not in full compliance with all Environmental Laws, and share with Lender the reports and other results thereof, and Lender and other Indemnified Parties (hereinafter defined) shall be entitled to rely on such reports and other results thereof; (g) Borrower shall, at its sole cost and expense, comply with all reasonable written requests of Lender to (i) reasonably effectuate remediation of any Hazardous Materials in, on, under or from the Property; and (ii) comply with any Environmental Law; (h) Borrower shall not allow any tenant or other user of the Property to violate any Environmental Law; and (i) Borrower shall immediately notify Lender in writing after it has become aware of (A) any presence or Release or threatened Releases of Hazardous Materials in, on, under, from or migrating towards the Property; (B) any non-compliance with any Environmental Laws related in any way to the Property; (C) any actual or potential Environmental Lien; (D) any required or proposed remediation of environmental conditions relating to the Property; or (E) any written or oral notice or other communication of which Borrower becomes aware from any source whatsoever (including but not limited to a governmental entity) relating in any way to Hazardous Materials. Any failure of Borrower to perform its obligations pursuant to this Section 10.3 shall constitute bad faith waste with respect to the Property.

Section 10.4.                    LENDER'S RIGHTS. Lender and any other person or entity designated by Lender, including but not limited to any representative of a governmental entity, and any environmental consultant, and any receiver appointed by any court of competent jurisdiction, shall have the right, but not the obligation, to enter upon the Property at all reasonable times to assess any and all aspects of the environmental condition of the Property and its use, including but not limited to conducting any environmental assessment or audit at Borrower's expense (the scope of which shall be determined in Lender's sole discretion) and taking samples of soil, groundwater or other water, air, or building materials, and conducting other invasive testing. Borrower shall cooperate with and provide access to Lender and any such person or entity designated by Lender.

Section 10.5.                    OPERATIONS AND MAINTENANCE PROGRAMS. If recommended by the Environmental Report or any other environmental assessment or audit of the Property, Borrower shall establish and comply with an operations and maintenance program with respect to the Property, in form and substance reasonably acceptable to Lender, prepared by an environmental consultant reasonably acceptable to Lender, which program shall address any asbestos containing material or lead based paint that may now or in the future be detected at or on the Property. Without limiting the generality of the preceding sentence, Lender may require (a) periodic notices or reports to

Lender in form, substance and at such intervals as Lender may specify, (b) an amendment to such operations and maintenance program to address changing circumstances, laws or other matters, (c) at Borrower's sole expense, supplemental examination of the Property by consultants specified by Lender, (d) access to the Property by Lender, its agents or services, to review and assess the environmental condition of the Property and Borrower's compliance with any operations and maintenance program, and (e) variation of the operations and maintenance program in response to the reports provided by any such consultants.

## ARTICLE 11. - INDEMNIFICATION

Section 11.1.                    GENERAL INDEMNIFICATION.  Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b)any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Laws; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; (f) Borrower's breach of any term, covenant, condition, representation or warranty contained herein; or (g) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note and secured by this Security Instrument.  Any amounts payable to Lender by reason of the application of this Section shall become immediately due and payable and shall bear interest at the Default Rate from the date loss or damage is sustained by Lender until paid.  The term "Losses" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, judgments, awards, amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense).  The term "Indemnified Parties" shall mean (a) Lender, (b) any prior owner or holder of the Note, (c) any servicer or prior servicer of the Loan, (d) any Investor (defined below) or any prior Investor in any Participations (defined below), (e) any trustees, custodians or other fiduciaries who hold or who have held a full or partial interest in the Loan for the benefit of any Investor or other third party, (f) any receiver or other fiduciary appointed in a foreclosure or other Creditors Rights Laws proceeding, (g) any officers, directors, shareholders, partners, members, employees, agents, servants, representatives, contractors, subcontractors, affiliates or subsidiaries of any and all of the foregoing, and (h) the heirs, legal representatives, successors and assigns of any and all of the foregoing (including, without limitation, any successors by merger, consolidation or acquisition of all or a substantial portion of the Indemnified Parties' assets and business), in all cases whether during the term of the Loan or as part of or following a foreclosure of the Loan.

Section 11.2.                    MORTGAGE, DOCUMENTARY STAMPS AND/OR INTANGIBLE TAX.  Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax or fee on the making and/or recording of this Security Instrument, the Note or any of the Other Security Documents.

Section 11.3.                    DUTY TO DEFEND: ATTORNEYS' FEES AND OTHER FEES AND EXPENSES.  Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories, surveyors, title searches and other professionals in connection therewith, which any Indemnified Parties may engage as a result of any Losses.

Section 11.4.                    ENVIRONMENTAL INDEMNITY.  As between Borrower and Lender, all risk of loss associated with non-compliance with Environmental Laws, or with the presence of any Hazardous Material at, upon, within, contiguous to or otherwise affecting the Property, shall lie solely with Borrower. Accordingly, Borrower shall bear all risks and costs associated with any loss (including any loss in value attributable to Hazardous Materials), damage or liability therefrom, including all costs of removal of Hazardous Materials or other remediation required by Lender or by law. Borrower shall indemnify, defend and hold Lender harmless from and against all loss, liabilities, damages, claims, costs and expenses (including reasonable costs of defense) arising out of or associated, in any way, with the non-

compliance with Environmental Laws, or the existence of Hazardous Materials in, on, or about the Property, or a breach of any representation, warranty or covenant contained in Article 10 hereof, whether based in contract, tort, implied or express warranty, strict liability, criminal or civil statute or common law, including those arising from the joint, concurrent, or comparative negligence of Lender; however, Borrower shall not be liable under such indemnification to the extent such loss, liability, damage, claim, cost or expense results solely from Lender's gross negligence or willful misconduct. Borrower's obligations hereunder shall arise upon the discovery of the presence of any Hazardous Material, whether or not any governmental authority has taken or threatened any action in connection with the presence of any Hazardous Material, and whether or not the existence of any such Hazardous Material or potential liability on account thereof is disclosed in any site assessment and shall continue notwithstanding the repayment of the Note or any transfer or sale of any right, title and interest in the Property (by foreclosure, deed in lieu of foreclosure or otherwise). Of even date herewith, Borrower and other persons or entities (collectively, Borrower and such other parties, the "Indemnitors") may as circumstances require execute and deliver a certain environmental indemnity agreement in favor of the Lender incorporating the environmental indemnities set forth herein as well as additional provisions and requirements with respect to environmental matters (the "Environmental Indemnity"). In the event an Environmental Indemnity is executed, it shall be included in the definition of "Other Security Documents".

## ARTICLE 12. - WAIVERS

**Section 12.1.**       WAIVER OF COUNTERCLAIM. Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the Other Security Documents, or the Obligations.

**Section 12.2.**       MARSHALLING AND OTHER MATTERS. Borrower hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein. Further, Borrower hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all persons to the extent permitted by applicable state or federal law.

**Section 12.3.**       WAIVER OF NOTICE. Borrower shall not be entitled to any notices of any nature whatsoever from Lender except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender to Borrower and (b) with respect to matters for which Lender is required by applicable state or federal law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

**Section 12.4.**       WAIVER OF STATUTE OF LIMITATIONS. Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Debt or performance of its Other Obligations.

**Section 12.5.**       SOLE DISCRETION OF LENDER. Wherever pursuant to this Security Instrument (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision to approve or disapprove all decisions that arrangements or terms are satisfactory or not satisfactory, and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

**Section 12.6.**       WAIVER OF FORECLOSURE DEFENSE. Borrower hereby waives any defense Borrower might assert or have by reason of Lender's failure to make any tenant or lessee of the Property a party defendant in any foreclosure proceeding or action instituted by Lender.

**Section 12.7**     WAIVER REGARDING FEES. The Borrower hereby expressly waives and releases, to the fullest extent it may lawfully do so, all benefit of any present or future moratorium law, the merger doctrine, and other present or future law, regulation or judicial decision that may be necessary for Lender to protect and enforce its claims against Borrower for or relating to the collection of the full amount of attorneys' fees, costs, insurance premiums, taxes and other similar advances and claims, whether arising or asserted prior to or subsequent to the entry of judgment by Lender against Borrower.

## ARTICLE 13. - NOTICES

Section 13.1.          NOTICES. All notices or other written communications hereunder shall be deemed to have been properly given (a) upon delivery, if delivered in person with receipt acknowledged by the recipient thereof, (b) one (1) Business Day (defined below) after having been deposited for overnight delivery with any reputable overnight courier service, or (c) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to Borrower or Lender, as the case may be, at the addresses set forth on the first page of this Security Instrument or addressed as such party may from time to time designate by written notice to the other parties.

Either party by notice to the other may designate additional or different addresses for subsequent notices or communications. For purposes of this Subsection, "Business Day" shall mean a day on which commercial banks are not authorized or required by law to close in New York, New York.

## ARTICLE 14. - CHOICE OF LAW

Section 14.1.          CHOICE OF LAW. This Security Instrument and any determination of deficiency judgments shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located and applicable federal law.

Section 14.2.          PROVISIONS SUBJECT TO LAW. All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable state or federal law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under any applicable state or federal law.

## ARTICLE 15. - SECONDARY MARKET

Section 15.1.          TRANSFER OF LOAN. Lender may, at any time, sell, transfer or assign the Note, this Security Instrument and the Other Security Documents, and any or all servicing rights with respect thereto, or grant participations therein (the "Participations") or issue mortgage passthrough certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"). Lender may forward to each purchaser, transferee, assignee, servicer, participant, or investor in such Participations or Securities (collectively, the "Investor") or any Rating Agency rating such Securities, each prospective Investor, and any organization maintaining databases on the underwriting and performance of commercial mortgage loans, all documents and information which Lender now has or may hereafter acquire relating to the Debt and to Borrower, any Guarantor, any Indemnitor(s) and the Property, whether furnished by Borrower, any Guarantor, any Indemnitor(s) or otherwise, as Lender determines necessary or desirable. Borrower irrevocably waives any and all rights it may have under applicable state or federal law to prohibit such disclosure, including but not limited to any right of privacy.

Section 15.2.          COOPERATION. Borrower, any Guarantor and any Indemnitor agree to cooperate with Lender in connection with any transfer made pursuant to this Section, including, without limitation, the delivery of an estoppel certificate required pursuant to the terms hereof and such other documents as may be reasonably requested by Lender. Borrower shall also furnish and Borrower, any Guarantor and any Indemnitor consent to Lender furnishing to such Investors or such prospective Investors or such Rating Agency any and all information concerning the Property, the Leases, the financial condition of Borrower, any Guarantor and any Indemnitor as may be requested by Lender, any Investor or any prospective Investor or any Rating Agency in connection with any sale, transfer or Participations or Securities.

## ARTICLE 16. - COSTS

Section 16.1.          PERFORMANCE AT BORROWER'S EXPENSE. Borrower acknowledges and confirms that Lender shall impose certain administrative processing and/or commitment fees in connection with (a) the extension, renewal, modification, amendment and termination of the Loan, (b) the release or substitution of collateral therefor, (c) obtaining certain consents, waivers and approvals with respect to the Property, or (d) the review of any Lease or proposed Lease or the preparation or review of any subordination, non-disturbance agreement (the occurrence of any of the above

shall be called an "Event"). Borrower further acknowledges and confirms that it shall be responsible for the payment of all costs of reappraisal of the Property or any part thereof, whether required by law, regulation, Lender or any governmental or quasi-governmental authority. Borrower hereby acknowledges and agrees to pay, immediately, with or without demand, all such fees (as the same may be increased or decreased from time to time), and any additional fees of a similar type or nature which may be imposed by Lender from time to time, upon the occurrence of any Event or otherwise. Wherever it is provided herein that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, all reasonable counsel fees of Lender.

Section 16.2.          COUNSEL FEES FOR ENFORCEMENT. (a) Borrower shall pay all reasonable counsel fees incurred by Lender in connection with (i) the preparation of the Note, this Security Instrument and the Other Security Documents; and (ii) the items set forth in this Article, and (b) Borrower shall pay to Lender on demand any and all expenses, including legal fees incurred or paid by Lender in protecting its interest in the Property or in collecting any amount payable under the Note, this Security Instrument or the Other Security Documents, or in enforcing its rights hereunder with respect to the Property, whether or not any legal proceeding is commenced hereunder or thereunder, together with interest thereon at the Default Rate from the date paid or incurred by Lender until such expenses are paid by Borrower.

## · ARTICLE 17. - DEFINITIONS

Section 17.1.          GENERAL DEFINITIONS. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "person" shall include an individual, corporation, limited liability company, partnership, trust, unincorporated association, government, governmental authority, and any other entity; the word "Property" shall include any portion of the Property and any interest therein, and the phrases "counsel fees" shall include any and all attorneys", paralegal and law clerk fees and disbursements, including, but not limited to fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, whether with respect to retained firms, the reimbursement for the expenses of in-house staff or otherwise.

Section 17.2.          HEADINGS, ETC. The headings and captions of various Articles and Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

## ARTICLE 18. - MISCELLANEOUS PROVISIONS

Section 18.1.          NO ORAL CHANGE. This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 18.2.          LIABILITY. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors, assigns, heirs, personal representatives, executors and administrators forever.

Section 18.3.          INAPPLICABLE PROVISIONS. If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

Section 18.4.          DUPLICATE ORIGINALS; COUNTERPARTS. This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this

Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

Section 18.5.           NUMBER AND GENDER.  Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 18.6.           LEGAL DESCRIPTION.  Borrower represents to Lender that it has reviewed and delivered to Lender a copy of the legal description set forth in Exhibit "A"; that such legal description is the accurate and proper legal description of the Land; and Borrower further acknowledges that neither Lender nor Lender's counsel prepared or reviewed such legal description.  Borrower shall indemnify, defend and hold Lender harmless from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever, including the reasonable fees and actual expenses of Lender's counsel, in connection with any claim that title to the Property is impaired due to or based upon an inaccurate or improper legal description set forth herein.

Section 18.7.           INCONSISTENCIES.  In the event of any inconsistencies between the terms and conditions of this Article and the other provisions of this Security Instrument, the terms and conditions of this Article shall control and be binding.

Section 18.8.           WAIVER OF TRIAL BY JURY.  BORROWER BY ACCEPTANCE OF THIS SECURITY INSTRUMENT, HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN, THE APPLICATION FOR THE LOAN, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER OR BORROWER.

[NO FURTHER TEXT - SIGNATURES APPEAR ON NEXT PAGE]

**IN WITNESS WHEREOF,** this Security Instrument has been executed by borrower the day and year first above written.

Signed, sealed and delivered
in the presence of:

Borrower:

Print Name: *Nick Sash*

Kurtis K. Krueger

Print Name: *Nick Sash*

MATTIE M KRUEGER

This Instrument prepared by:
Upon recording return to:
Antonio Chimienti, Esq.
Bayview Loan Servicing, LLC
c/o Nationwide Title Clearing, Inc.
Attn: Final Docs Unit
2100 Alt 19 North
Palm Harbor, FL 33683
(800) 346-9152

**ACKNOWLEDGMENT**

STATE OF MINNESOTA                    )
                                     ) ss:
COUNTY OF _Hennepin_                  )

The foregoing instrument was acknowledged before me on August 2, 2007, by Kurtis K. Krueger, a
married man. , and Mattie M Krueger, a married woman , married to each other

He is personally known to me or has produced _Driver's License_ as
identification, and did/did not take an oath.

[Official Notary Seal]

NICHOLAS J. SASH
Notary Public-State of Minnesota
My Commission Expires
January 31, 2012

Print Name: _Nick Sash_
Notary Public, State of Minnesota
My Commission Expires: _1/31/12_

EXHIBIT "A"

**LEGAL DESCRIPTION**
(To be attached)

## RIDER TO MORTGAGE AND SECURITY AGREEMENT
## { MINNESOTA }

THIS RIDER is made as of August 2, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage and Security Agreement (the "Security Instrument") of the same date hereof, given by Kurtis K. Krueger, a married man (the "Borrower") to secure that certain Promissory Note in the amount of Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00) (the "Note") given to InterBay Funding, LLC, a Delaware Limited Liability Company (the "Lender"), on the same date hereof and covering the Property described in the Security Instrument and located at 2444 Pillsbury Avenue South, Minneapolis, MN 55404 (the "Property Address").

\*and MATTIE M KRUEGER, MARRIED TO EACH OTHER
In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1.   Section 1.1 (i) of the Security Instrument is hereby deleted in its entirety and replaced as follows:

(i) Tax Reduction. All refunds, rebates or credits in connection with a reduction is real estate taxes and assessments charged against the Property as a result of tax abatements or any applications or proceedings for reduction;

2.   Section 18.9 is hereby added to the Security Instrument and reads as follows:

Section 18.9. SPECIAL MINNESOTA PROVISIONS.

(a) Assignment of Rents and Leases, Receiver. The Mortgagee's rights and remedies hereunder upon the occurrence of an Event of Default shall include, without limitation, the fullest range and benefit of the rights and remedies made available to a mortgagee pursuant to Minn. Stat. 576.01 and Minn. Stat. 559.17, as said statutes may be amended from time to time. In the event that Mortgagee elects to exercise its remedies under said statutes, or any of said remedies, the terms and provisions of said statutes, as amended, governing the exercise of said remedies shall govern, control and take precedence over any contrary terms contained in this Mortgage. The exercise by Mortgagee of the statutory remedies referenced in this paragraph shall not constitute Mortgagee a "mortgagee-in-possession" Minnesota law, or give rise to any liability which might otherwise attach to Mortgagee as a Mortgagee-in-possession.

(b) Remedies of Mortgagee, Mortgage Foreclosure. Mortgagor does heregy grant and confer upon Mortgagee the fullest rights and remedies available for foreclosure of this Mortgage by action or by advertisement pursuant to Minn. Stat. Chapters 580, 581 and 582, as said statutes may be amended from time to time, and pursuant to other applicable Minnesota laws and statutes, as amended, governing and authorizing mortgage foreclosures by action and by advertisement; and the power of sale required to permit, as Mortgagee's option, lawful foreclosures of this Mortgage by advertisement in accordance with the statutes then made and procured.

(c) Maturity Date. The Liabilities secured hereby shall mature no later than

September 1, 2027.

(d) Mortgage Registry Tax. Mortgagor agrees to pay upon demand, or upon demand to promptly reimburse Mortgagee for the payment of, the amount of the Mortgage Registry Tax payable with

respect to and upon the recording of this Mortgage in accordance with Minn. Stat. 287.05.

(e) Fixture Financing Statement. This Mortgage covers goods which are or are to become fixtures. The name address of the Mortgagor (debtor) is:

Kurtis K. Krueger, a married man  and Mattie M Krueger, a married woman, Married to each other
8161 33rd Avenue South #W1401, Minneapolis, MN 55425

The name and address of the Mortgagee (secured party) is:

InterBay Funding, LLC, a Delaware Limited Liability Company

89 Forbes Blvd., Suite 1000, Mansfield, MA 02048

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider to Minnesota Mortgage and Security Agreement and agrees that the terms hereof are hereby incorporated into and with the terms of the Security Instrument as if both the Security Instrument and this instrument are one and the same document. Nothing contained herein shall invalidate or change any terms of the Security Instrument except to the extent as maybe explicitly set forth herein.

Signed, sealed and delivered
in the presence of:                                    Borrower:

Print Name: _Nick Sash_

Kurtis K. Krueger

Print Name: _Nick Sash_

MATTIE M. KRUEGER

ACKNOWLEDGMENT

STATE OF MINNESOTA          )
                           ) ss:
COUNTY OF _Hennepin_        )

The foregoing instrument was acknowledged before me on August 2, 2007, by Kurtis K. Krueger, a married man, and Mattie M Krueger, a married woman, married to each other

He is personally known to me or has produced __Driver's License__ as identification, and did/did not take an oath.

[Official Notary Seal]

Print Name: _Nick Sash_
Notary Public, State of Minnesota
My Commission Expires: _1/31/12_

NICHOLAS J. SASH
Notary Public-State of Minnesota
My Commission Expires
January 31, 2012

Lots 12 and 13, Block 9, J.T. Blaisdell's Revised Addition to Minneapolis, Hennepin County, Minnesota.

Property is Abstract

Property Address:
2444 Pillsbury Avenue
Minneapolis, MN 55404

(GT07424.PFD/GT07424/27)



**Doc No 9029605** 08/24/2007 01:52 PM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 337669

Deputy 53
Fees
$35.50 DOC
$10.50 SUR
$46.00 Total



EXHIBIT

C

UPON RECORDING RETURN TO:
Bayview Loan Servicing, LLC
c/o Nationwide Title Clearing, Inc.
Attn: Final Docs Unit
2100 Alt 19 North
Palm Harbor, FL 33683
(800) 346-9152

Henn Co    MRT
RGS    # 49883
8/23/2007
EXEMPT

Box 160 Title Recording Services

### ASSIGNMENT OF LEASES AND RENTS
### { MINNESOTA }

**Kurtis K. Krueger, a married man,**
**Mattie M. Krueger, a married woman, married to**
each other          **as Mortgagor**
                    **(Borrower)**

**To**

**InterBay Funding, LLC, a Delaware Limited**
**Liability Company,**

**as Mortgagee**
**(Lender)**

Title Recording Services, Inc.        533386
79 Western Ave N
St. Paul, MN 55102                    gt07424
HENNEPIN A                          GT&T BASIC
                                    ASN RNTS

THIS ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of August 2, 2007, by Kurtis K. Krueger, a married man, having an address at 8161 33rd Avenue South #W1401, Minneapolis, MN 55425, as assignor ("Borrower") to InterBay Funding, LLC, a Delaware Limited Liability Company, having an address at 89 Forbes Blvd., Suite 1000, Mansfield, MA 02048, as assignee ("Lender").

## RECITALS:

Borrower by its promissory note of even date herewith given to Lender is indebted to Lender in the principal sum of Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00) in lawful money of the United States of America (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"), with interest from the date thereof at the rates set forth in the Note, principal and interest to be payable in accordance with the terms and conditions provided in the Note.

Borrower desires to secure the payment of the Debt (defined below) and the performance of all of its obligations under the Note and the Other Obligations as defined in Article 2 of the Security Instrument (defined below).

In consideration of the credit represented by the Note, and other good and valuable consideration, and intending to be legally bound, the parties agree as follows:

## CONSIDERATION

CONSIDERATION. This Assignment is made in consideration of that certain loan made by Lender to Borrower evidenced by the Note and secured by that certain Mortgage and Security Agreement, Deed of Trust and Security Agreement, Deed to Secure Debt and Security Agreement and Fixture Filing or similar real estate security instrument given by Borrower for the benefit of Lender, dated the date hereof, in the principal sum of Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00), covering the Property, (the "Property"), described therein and legally described on *Exhibit A* attached hereto and intended to be duly recorded (the "Security Instrument"). The principal sum, interest and all other sums due and payable under the Note, the Security Instrument, this Assignment and the Other Security Documents (defined below) are collectively referred to as the "Debt." The documents other than this Assignment, the Note or the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender which wholly or partially secure or guarantee payment of the Debt are referred to herein as the "Other Security Documents."

## ARTICLE 1. - ASSIGNMENT

Section 1.1.          PROPERTY ASSIGNED. Borrower hereby irrevocably, absolutely and unconditionally assigns, transfers, conveys and grants to Lender the right, title and interest of Borrower, in and to all of the following property, rights, interests and estates, whether now owned, or hereafter acquired (the "Assigned Property"):

(a)          Leases and Other Agreements. All existing and future leases and all other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of the Property or any portion thereof now or hereafter made, whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. § 101 et seq., as the same may be amended from time to time (the "Bankruptcy Code") together with any extension, renewal or replacement of the same (collectively the "Leases"); this Assignment of all such other present and future leases and present and future agreements being effective without further or supplemental assignment.

(b)   Rents. All rents, additional rents, revenues, income, issues and profits (including all oil and gas or other mineral royalties and bonuses), deposits, accounts and other benefits arising from the Leases and renewals and replacements thereof or otherwise from the use, enjoyment and occupancy of the Property and any cash or security deposited in connection therewith, whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "Rents").

(c)   Bankruptcy Claims. All claims and rights (the "Bankruptcy Claims") to the payment of damages and other claims arising from any rejection by a lessee of any Lease under the Bankruptcy Code.

(d)   Lease Guaranties. All claims and rights under any and all lease guaranties, letters of credit and any other credit support given to Borrower by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor," and collectively, the "Lease Guarantors").

(e)   Proceeds. All proceeds from any sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

(f)   Other Rights. All rights, powers, privileges, options and other benefits of Borrower as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and apply all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Borrower or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

(g)   Entry. The right, at Lender's option, upon revocation of the license granted herein, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents and enforce the Leases.

(h)   Power of Attorney. Borrower's irrevocable power of attorney and power of substitution, coupled with an interest, to take any and all of the actions set forth in Section 3.1 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

(i)   Other Rights and Agreements. Any and all other rights of Borrower in and to the items set forth in subsections (a) through (h) above, and all amendments, modifications, replacements, renewals, extensions, supplements, restatements and substitutions thereof.

Section 1.2.   TERMINATION OF ASSIGNMENT. Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of the Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

## ARTICLE 2. - TERMS OF ASSIGNMENT

Section 2.1.   PRESENT ASSIGNMENT AND LICENSE BACK. It is intended by Borrower that this Assignment constitute a present, irrevocable, absolute and unconditional assignment of the Assigned Property, and not an assignment for additional security only. Nevertheless, subject to the terms of this Assignment and the Security Instrument, Lender grants to Borrower a revocable license to collect and receive the Rents and other sums payable with respect to the Assigned Property unless and until an Event of Default (as defined in the Security Instrument) shall occur. Borrower shall hold

the Rents and all sums received pursuant to any Assigned Property, or a portion thereof sufficient to discharge all current sums due on the Debt, and all taxes, assessments, insurance, maintenance and repairs on the Property, in trust for the benefit of Lender for use in the payment of such sums.

Section 2.2.       NOTICE TO LESSEES. Borrower hereby agrees to authorize and direct the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of the Security Instrument and that an Event of Default exists, and to continue so to do until otherwise notified by Lender.

Section 2.3.       INCORPORATION BY REFERENCE. All representations, warranties, covenants, conditions and agreements contained in the Security Instrument as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

### ARTICLE 3. - REMEDIES

Section 3.1.       REMEDIES OF LENDER.

(a)       Upon or at any time after the occurrence of an Event of Default, the license granted to Borrower in Section 2.1 of this Assignment shall automatically be revoked, and Lender shall immediately be entitled to possession of all Rents and sums due and payable pursuant to any of the Assigned Property, whether or not Lender enters upon or takes control of the Property. In addition, upon or at any time after an Event of Default, without waiving such Event of Default, to the extent permitted by law, without notice and without regard to the adequacy of the security for the Debt, with or without bringing any action or proceeding, either in person or by agent, nominee or attorney, or a receiver appointed by a court, Lender, at its option, may dispossess Borrower and its agents and servants from the Property, and exclude Borrower and its agents or servants wholly therefrom and take possession of the Property and all books, records and accounts relating thereto without liability for trespass, damages or otherwise. Thereafter, Lender may have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and other sums payable pursuant to any of the Assigned Property, including those past due and unpaid with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender. Lender may apply the Rents and sums received pursuant to any of the Assigned Property to the payment of the following in such order and proportion as Lender in its sole discretion may determine: (i) all expenses of managing and securing the Property, including, without limitation, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable; (ii) all expenses of operating and maintaining the Property, including, without limitation, all utility charges, Taxes, and Other Charges (as such terms are defined in the Security Instrument) and any other liens, charges and expenses which Lender may deem necessary or desirable; (iii) the cost of all alterations, renovations, repairs or replacements; (iv) all expenses incident to taking and retaining possession of the Property; and (v) the Debt, together with all costs and reasonable attorneys' fees.

(b)       In addition, upon the occurrence of an Event of Default, Lender, at its option, may (i) complete any construction on the Property in such manner and form as Lender deems advisable; (ii) exercise all rights and powers of Borrower, including, without limitation, the right to

make, negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents from the Property and all sums payable under the Assigned Property; (iii) either require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Borrower or (iv) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise as provided by law.

Section 3.2.    OTHER REMEDIES. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Borrower hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower under this Assignment, the Note, the Security Instrument, the Other Security Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Note, the Security Instrument, or any of the Other Security Documents (provided, however, that the foregoing shall not be deemed a waiver of Borrower's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Borrower's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

Section 3.3.    OTHER SECURITY. Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

Section 3.4.    NON-WAIVER. The exercise by Lender of the option granted it in Section 3.1 of this Assignment and the collection of the Rents and other sums payable pursuant to the Assigned Property and the application thereof as herein provided shall not be considered a waiver of any default by Borrower under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Borrower or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the Other Security Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents. Lender may resort for the payment of the Debt to any other security held by or guaranties given to Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment to the extent allowed by law. The rights of Lender under this Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed

under any one provision herein to the exclusion of any other provision.

Section 3.5.     BANKRUPTCY.

(a)     Upon or at any time after the occurrence of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Borrower in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Borrower, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

(b)     If there shall be filed by or against Borrower a petition under the Bankruptcy Code, and Borrower, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Borrower shall give Lender not less than ten (10) days' prior notice of the date on which Borrower shall apply to the bankruptcy court for authority to reject the Lease. Lender shall have the right, but not the obligation, to serve upon Borrower within such ten-day period a notice stating that (i) Lender demands that Borrower assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease. If Lender serves upon Borrower the notice described in the preceding sentence, Borrower shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

## ARTICLE 4. NO LIABILITY, FURTHER ASSURANCES

Section 4.1.     NO LIABILITY OF LENDER. This Assignment shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or Lease Guaranty or otherwise impose any obligation upon Lender. Lender shall not be liable for any loss sustained by Borrower resulting from Lender's failure to let the Property after an Event of Default or from any other act or omission of Lender in managing the Property after an Event of Default unless such loss is caused by the willful misconduct and bad faith or gross negligence of Lender. Lender shall not be obligated to perform or discharge any obligation, duty or liability under the Leases or any Lease Guaranties or under or by reason of this Assignment and Borrower shall, and hereby agrees, to indemnify Lender for, and to hold Lender harmless from, any and all liability, loss or damage which may or might be incurred under the Assigned Property or under or by reason of this Assignment and from any and all claims and demands whatsoever, including the defense of any such claims or demands which may be asserted against Lender by reason of any alleged obligations and undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases or any Lease Guaranties. Should Lender incur any such liability, the amount thereof, including costs, expenses and reasonable attorneys' fees, shall be secured by this Assignment and by the Security Instrument and the Other Security Documents and Borrower shall reimburse Lender therefor immediately upon demand and upon the failure of Borrower so to do Lender may, at its option, declare all sums secured by this Assignment and by the Security Instrument and the Other Security Documents immediately due and payable. This Assignment shall not operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor for the carrying out of any of the terms and conditions of the Leases or any Lease Guaranties; nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other parties, or for any dangerous or defective condition of the Property, including without limitation the presence of any Hazardous Materials (as defined in the Security Instrument), or for any

negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.

Section 4.2.　　NO MORTGAGEE IN POSSESSION. Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender. In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Borrower.

Section 4.3.　　FURTHER ASSURANCES. Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Borrower to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

## ARTICLE - 5. - DEFINITIONS

Section 5.1.　　CERTAIN DEFINITIONS. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Assignment may be used interchangeably in singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by the Security Instrument," the word "person" shall include an individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, and any other entity, the word "Property" shall include any portion of the Property and any interest therein, the phrases "attorneys' fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, and the word "Debt" shall mean the principal balance of the Note with interest thereon as provided in the Note and the Security Instrument and all other sums due pursuant to the Note, the Security Instrument, this Assignment and the Other Security Documents; whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

## ARTICLE 6. - APPLICABLE LAW

Section 6.1.　　CHOICE OF LAW. This Assignment shall be governed, construed, applied and enforced in accordance with the laws of the state in which the Property is located, without regard to principles of conflicts of law.

Section 6.2.　　PROVISIONS SUBJECT TO APPLICABLE LAW. All rights, powers and remedies provided in this Assignment may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent

necessary so that they will not render this Assignment invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable laws.

## ARTICLE 7. - MISCELLANEOUS PROVISIONS

Section 7.1.      CONFLICT OF TERMS. In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

Section 7.2.      NO ORAL CHANGE. This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

Section 7.3.      AUTHORITY. Borrower represents and warrants that it has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Borrower or the Property.

Section 7.4.      DUPLICATE ORIGINALS; COUNTERPARTS. This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original. This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

Section 7.5.      NOTICES. All notices required or permitted hereunder shall be given as provided in the Security Instrument.

Section 7.6.      LIABILITY. If Borrower consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Assignment shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

Section 7.7.      HEADINGS, ETC. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

Section 7.8.      NUMBER AND GENDER. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

Section 7.9.      SOLE DISCRETION OF LENDER. Wherever pursuant to this Assignment (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

Section 7.10.      COSTS AND EXPENSES OF BORROWER. To the extent permitted by

applicable law, wherever pursuant to this Assignment it is provided that Borrower pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees and disbursements of Lender, whether with respect to retained firms, the reimbursement of the expenses for in-house staff or otherwise.

Section 7.11.       SEVERABILITY. If any term, covenant or condition of this Assignment is held to be invalid, illegal or unenforceable in any respect, this Assignment shall be construed without such provision.

Section 7.12.       WAIVER OF TRIAL BY JURY. BORROWER AND LENDER, BY ITS ACCEPTANCE HEREOF, EACH HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THIS ASSIGNMENT, THE NOTE, THE SECURITY INSTRUMENT OR THE OTHER SECURITY DOCUMENTS OR ANY ACTS OR OMISSIONS OF ANY PARTY OR ANY OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. THIS WAIVER OF THE RIGHT TO TRIAL BY JURY IS A MATERIAL INDUCEMENT TO THE LENDER FOR THE LENDER TO MAKE THE LOAN.

THIS ASSIGNMENT, together with the covenants and warranties therein contained, shall inure to the benefit of Lender and any subsequent holder of the Security Instrument and shall be binding upon Borrower, its heirs, personal representatives, executors, administrators, successors and assigns and any subsequent owner of the Property.

READ ALL CREDIT AGREEMENTS BEFORE SIGNING. THE TERMS OF ALL CREDIT AGREEMENTS SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED OR SPECIFICALLY INCORPORATED BY WRITING IN THIS WRITTEN CREDIT AGREEMENT MAY BE LEGALLY ENFORCED. YOU MAY CHANGE THE TERMS OF THIS CREDIT AGREEMENT ONLY BY OTHER WRITTEN CREDIT AGREEMENTS.

[NO FURTHER TEXT - SIGNATURES APPEAR ON NEXT PAGE]

**THIS INSTRUMENT INCLUDES A RIDER, THE TERMS OF WHICH ARE ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF**

**IN WITNESS WHEREOF,** Borrower has executed this instrument as of the day and year first above written.

Signed, sealed and delivered
in the presence of:                                     Borrower:

Print Name: _Nicole Sash_

Print Name: _Nick Sash_

Kurtis K. Krueger

MATTIE M. KRUEGER

This Instrument Prepared by:   Antonio Chimienti, Esq.

Upon recording return to:   Bayview Loan Servicing, LLC
c/o Nationwide Title Clearing, Inc.
Attn: Final Docs Unit
2100 Alt 19 North
Palm Harbor, FL 33683
(800) 346-9152

ACKNOWLEDGMENT

STATE OF MINNESOTA )
                                  ) ss:
COUNTY OF ___Hennepin___ )

The foregoing instrument was acknowledged before me on August 2, 2007, by Kurtis K. Krueger, a married man.

He is personally known to me or has produced ___Driver's License___ as identification, and did/did not take an oath.

[Official Notary Seal]

NICHOLAS J. SASH
Notary Public-State of Minnesota
My Commission Expires
January 31, 2012

Print Name: ___Nick Sash___
Notary Public, State of Minnesota
My Commission Expires: ___1/2/12___

# EXHIBIT "A"

**LEGAL DESCRIPTION**
**(To be attached)**

## AMENDMENT TO ASSIGNMENT OF LEASES AND RENTS
### { MINNESOTA }

STATE OF MINNESOTA                    DATE:August 2, 2007

COUNTY OF ___Hennepin___ )

THIS AMENDMENT TO MINNESOTA ASSIGNMENT OF LEASES AND RENTS ("Amendment") modifies and amends that Assignment of Leases and Rents ("Assignment") dated August 2, 2007 in connection with that certain loan in the amount of Four Hundred Fifty Thousand and No/100 Dollars ($450,000.00) from InterBay Funding, LLC, a Delaware Limited Liability Company toKurtis K. Krueger, a married man.  and Mattie M Krueger, a married woman, married to each other

Section 7.12 is hereby inserted in the Assignment directly following Section 7.11 and reads as follows:

Section 7.12. SPECIAL MINNESOTA PROVISIONS. The Assignee's rights and remedies hereunder upon the occurrence of an Event of Default shall include, without limitation, the fullest range and benefit of the rights and remedies made available to a mortgagee pursuant to Minn. Stat. 576.01 and Minn. Stat. 559.17, as said statutes may be amended from time to time. In the event that Assignee elects to exercise its remedies under said statutes, or any of said remedies, the terms and provisions of said statutes, as amended, governing the exercise of sais remedies shall govern, control and take precedence over any contrary terms contained in this Assignment. The exercise by Assignee of the statutory remedies referenced in this paragraph shall not constitute Assignee a "mortgagee-in-possession" under Minnesota law, or give rise to any liability which might otherwise attached to Assignee as a mortgagee-in-possession.

Except as is set forth herein, the Assignment is unchanged and in full force and effect.

Signed, sealed and delivered
in the presence of:                    Borrower:

Print Name: _Nick Sash_

Print Name: _Nick Sash_                _Kurtis K. Krueger_
                                        Kurtis K. Krueger

                                        _Mattie M Krueger_
                                        MATTIE M. KRUEGER

ACKNOWLEDGMENT

STATE OF MINNESOTA          )
                           ) ss:
COUNTY OF _Hennepin_       )

The foregoing instrument was acknowledged before me on August 2, 2007, by Kurtis K. Krueger, a married man, and Mattie M Krueger, a married woman, married to each other

He is personally known to me or has produced _Drivers License_ as identification, and did/did not take an oath.

[Official Notary Seal]

Print Name: _Nick Sash_
Notary Public, State of Minnesota
My Commission Expires: _1/31/12_

NICHOLAS J. SASH
Notary Public-State of Minnesota
My Commission Expires
January 31, 2012

Lots 12 and 13, Block 9, J.T. Blaisdell's Revised Addition to Minneapolis, Hennepin County, Minnesota.

Property is Abstract

Property Address:
2444 Pillsbury Avenue
Minneapolis, MN 55404



**Doc No 9136450** 05/21/2008 11:27 AM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 400866

Deputy 53
Fees
$35.50 DOC
$10.50 SUR
$46.00 Total



EXHIBIT
D

**ASSIGNMENT OF MORTGAGE**

Loan #: ▮▮▮▮▮▮▮

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, INTERBAY FUNDING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD., 4TH FL , CORAL GABLES, FL 33146, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD., 5TH FL , CORAL GABLES, FL 33146, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said mortgage dated 08/02/2007 , by: KURTIS K KRUEGER A MARRIED MAN AND MATTIE M KRUEGER A MARRIED WOMAN to INTERBAY FUNDING, L.L.C. and filed for record on 08/24/2007 as Doc No. 9029604 (or Book , Page ), in the office of the County recorder of HENNEPIN , MN.

Dated: 04/16/2008
INTERBAY FUNDING, LLC

BY: _____
ROBERT G. HALL   VICE PRESIDENT

STATE OF FLORIDA        COUNTY OF Dade
I HEREBY CERTIFY that on 04/16/2008 , before me, an officer duly authorized in the State and County aforesaid to take acknowledgements personally appeared ROBERT G. HALL personally known, who, being duly sworn by me did say that she/he is the VICE PRESIDENT of INTERBAY FUNDING, LLC the corporation named in the foregoing instrument, and that said instrument was signed on behalf of said corporation by authority of its board of directors and said ROBERT G. HALL acknowledge said instrument to be the free act and deed of said corporation.

_____
Rogelio A. Portal   Notary Public
My commission expires: 08/25/2008

ROGELIO A. PORTAL
NOTARY PUBLIC - STATE OF FLORIDA
Commission #DD350149
Expires: AUG. 25, 2008

Drafted by: J. Lesinski/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To:   BayView Financial, L.P.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683
BVASN 7976815   PWO1795135   form59XMMMV



**Doc No 9137661 05/23/2008 09:12 AM**
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 402483

Deputy 52
Fees
$35.50 DOC
$10.50 SUR
$46.00 Total



When recorded return to:
BayView Financial, L.P.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

### ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

Loan: ▮▮▮▮▮

KNOW BY ALL MEN BY THESE PRESENTS, THAT   INTERBAY FUNDING, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD., 4TH FL ,
CORAL GABLES, FL 33146, (ASSIGNOR),
For a valuable consideration paid by:   BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED
LIABILITY COMPANY, WHOSE ADDRESS IS 4425 PONCE DE LEON BLVD., 5TH FL , CORAL
GABLES, FL 33146, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).
At or before the ensealing and delivery of these presents, the receipt of whereof is hereby acknowledged, has
granted, bargained, sold assigned, transferred and set over unto the said Assignee and its successors and assigns all
that certain assignment of rents bearing the:

| | |
|---|---|
| Note Dated: | 08/02/2007 |
| Mortgage Amount: | $450,000.00 |
| Mortgagor/Borrower: | KURTIS K KRUEGER A MARRIED MAN AND MATTIE M KRUEGER A MARRIED WOMAN MARRIED TO EACH OTHER |
| Mortgagee/Beneficiary: | INTERBAY FUNDING, L.L.C. |

Recorded on 08/24/2007  in Book   Page   Instrument # 9029605  and recorded in the Office of the recorder of
HENNEPIN county, Minnesota.

| | |
|---|---|
| Property Subject to lien: | 2444 PILLSBURY AVENUE SOUTH |
| | MINNEAPOLIS, MN 55404 |

Together with the hereditaments and premises in and by said assignment of rents particularly described and granted
or mentioned and thereby intended to be secured and all incidental or supplemental documents or instruments if any
secured or intended to be secured thereby and all monies due and to grow due thereon and all its estate, right , title,
interest, property, claim and demand in and to the same.
To have and to hold the same unto the said assignee and its successors and assigns to its proper use, benefit and
behoove forever, subject nevertheless to the equity of redemption of said mortgagor in said assignment of rents
named and the heirs, executors, administrators, successors and assigns of said mortgagor therein.
Date: 04/16/2008
INTERBAY FUNDING, LLC


ROBERT G. HALL         VICE PRESIDENT

County of Dade        State of FLORIDA
On 04/16/2008  before me Rogelio A. Portal  appeared ROBERT G. HALL  to me personally known, who being to
me duly sworn, did say that  he/she is the VICE PRESIDENT  of INTERBAY FUNDING, LLC  and that said
instrument was signed on behalf of said corporation. In witness whereof I have subscribed my name and my official
seal.


Rogelio A. Portal

ROGELIO A. PORTAL
NOTARY PUBLIC - STATE OF FLORIDA
Commission #DD350149
Expires: AUG. 25, 2008

Notary Public / Commission expires  08/25/2008
Prepared by: J. Lesinski/ NTC, 2100 Alt. 19 N, Palm Harbor, FL 34683, (800) 346-9152

▮▮▮▮▮▮▮▮▮▮▮  BVALR 7977205   PWO1795123 FORMS/ALRMN21



**Doc No 9051647** 10/11/2007 03:32 PM
Certified filed and or recorded on above date:
Office of the County Recorder
Hennepin County, Minnesota
Michael H. Cunniff, County Recorder
TransID 348461

Deputy 18
Fees
$35.50 DOC
$10.50 SUR
$2.00 COPY
$2.00 COPY
$50.00 Total

**EXHIBIT**

tabbies

F

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

15785 BAYVIEW SERVIC

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

12354248

MNMN
FIXTURE

File with: CC MN Hennepin, MN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| KRUEGER | KURTIS | K | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 8161 33RD AVENUE SOUTH #W1401 | MINNEAPOLIS | MN | 55425 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Bayview Loan Servicing, LLC | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 4425 PONCE DE LEON BLVD., 5TH FLOOR | CORAL GABLES | FL | 33146 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All of Debtor's interest in the property, buildings, improvements, appurtenances, tangible property, rents, contract rights, other intangibles and secondary financing in any way belonging, relating or appertaining to a parcel of land described and set forth in Exhibit "A" attached hereto and made a part hereof (the "Land"), to wit:    (a)  Additional Land. All additional lands, estates and development rights hereafter acquired by Debtor for use in connection with the Land and the development of the Land;    (b)  Improvements. The buildings, structures, fixtures, additions, enlarge-ments, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (the "Improvements");    (c)  Easements. All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, courtesy and rights of courtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Debtor of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;    (d)  Fixtures and Personal Property. All machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, including without limitation, letter of credit rights, deposit accounts, payment intangibles, investment property, electronic chattel paper, timber to be cut and farm animals and, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, and usable in connection Continued on addendum.

| 5. ALTERNATIVE DESIGNATION [if applicable] | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
12354248

90516047

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91208-6871 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| KRUEGER | KURTIS | K |

10. MISCELLANEOUS

12354248-MN-53

15795 BAYVIEW SERVIC

File with: CC MN Hennepin, MN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)**

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☒ fixture filing.

**14.** Description of real estate:

Description: SEE ATTACHED

**16.** Additional collateral description:

with the present or future operation and occupancy of the Land and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Borrower, or in which Borrower has or shall have an interest, now or hereafter located upon the Land and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Land and the Improvements (collectively, the "Personal Property"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (the "Uniform Commercial Code"), superior in lien to the lien of this Security Instrument, and all proceeds and products of all of the above; (e) Leases and Rents. All leases, subleases and other agreements effecting the use, enjoyment or occupancy of the Land and/or the Improvements heretofore or hereafter entered into and all extensions, amendments and modifications thereto, whether before or after the filing by or against Debtor of any petition for relief under creditors rights laws (the "Leases") and all right, title and interest of Debtor, its successors and assigns therein and thereunder, including, without

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction -- effective 30 years
☐ Filed in connection with a Public-Finance Transaction -- effective 30 years

9051647

Prepared by UCC-Direct Services, Inc., P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| KRUEGER | KURTIS | K |

**10. MISCELLANEOUS**

12354248-MN-53

15795 BAYVIEW SERVIC

File with: CC MN Hennepin, MN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12.** ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b).

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**16.** Additional collateral description:

limitation, any guaranties of the lessees' obligations thereunder, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, additional rents, revenues, room revenues, accounts, accounts receivable, issues and profits (including all oil and gas or other mineral royalties and bonuses) from the Land and the Improvements whether paid or accruing before or after the filing by or against Debtor of any petition for relief under the creditors rights laws (the "Rents") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents; (f) Insurance Proceeds. All proceeds of and any unearned premiums on any insurance policies covering the Land, Improvements and/or Personal Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage thereto; (g) Condemnation Awards. All awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to the Land or Improvements, whether from the exercise of the right of eminent domain (including, but not limited to any transfer made in lieu of or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in the value of

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

Prepared by UCC-Direct Services, Inc., P.O. Box 29071 Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| KRUEGER, | KURTIS | K |

10. MISCELLANEOUS

12354248-MN-53

15795 BAYVIEW SERVIC

File with: CC MN Hennepin, MN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|---|

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P's NAME - insert only one name (12a or 12b)**

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

13. This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

14. Description of real estate:

15. Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

16. Additional collateral description:

Land or Improvements; (h) Tax Certiorari. All refunds, rebates or credits in connection with a reduction in real estate taxes and assessments charged against the Land or Improvements as a result of tax certiorari or any applications or proceedings for reduction; (i) Conversion. All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, proceeds of insurance and condemnation awards, into cash or liquidation claims; (j) Rights. The right, in the name and on behalf of Debtor, to appear in and defend any action or proceeding brought with respect to the Land, Improvements, Personal Property, Leases or Rents and to commence any action or proceeding to protect the interest of Secured Party therein; (k) Agreements. All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof and any Improvements or respecting any business or activity conducted on the Land and any part thereof and all right, title and interest of Debtor therein and thereunder; (l) Intangibles. All trade names,

17. Check only if applicable and check only one box.
Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

18. Check only if applicable and check only one box.
☐ Debtor is a TRANSMITTING UTILITY
☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years
☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

Prepared by UCC-Direct Services, Inc., P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

# FINANCING STATEMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

9a. ORGANIZATION'S NAME

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
|---|---|---|
| KRUEGER, | KURTIS | K |

10. MISCELLANEOUS

12354248-MN-53

15795 BAYVIEW SERVIC

File with: CC MN Hennepin, MN

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - Insert only one name (11a or 11b) - do not abbreviate or combine names**

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

**12. ☐ ADDITIONAL SECURED PARTY'S  or  ☐ ASSIGNOR S/P's  NAME - Insert only one name (12a or 12b)**

12a. ORGANIZATION'S NAME

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**16.** Additional collateral description:

trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Land and Improvements; (m) Cash and Accounts. All cash funds, deposit accounts and other rights and evidence of rights to cash, all present and future funds, accounts, instruments, accounts receivable, documents, causes of action, or claims now or hereafter held, created or otherwise capable of credit to the Debtor/Borrower; and (n)  Other Rights. Any and all other rights of Debtor in and to the items set forth in Subsections (a) through (m) above.

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)

Prepared by UCC-Direct Services, Inc., P.O. Box 29071
Glendale, CA 91209-0071 Tel (800) 331-3282



LEGAL DESCRIPTION:


Lots 12 and 13, Block 9, J.T. Blaisdell's Revised Addition to Minneapolis, Hennepin County, Minnesota.

Property is Abstract

Property Address:
2444 Pillsbury Avenue
Minneapolis, MN 55404



Doc No A9886594

Certified, filed and/or recorded on
12/27/12 9:21 AM
Office of the County Recorder
Hennepin County, Minnesota
Rachel Smith, Acting County Recorder
Mark V. Chapin, County Auditor and Treasurer

Deputy 77                                        Pkg ID 901603C

**Doc Name: Assignment of Mortgage**

Document Recording Fee                              $46.00

Attested Copy or Duplicate                           $2.00
Original

*Document Total*                                    $48.00

This cover sheet is now a permanent part of the recorded document.



EXHIBIT

**6**

## CORPORATE ASSIGNMENT OF MORTGAGE

Hennepin, Minnesota
SELLER'S SERVICING ▓▓▓▓▓ "KRUEGER"

Date of Assignment: December 18th, 2012
Assignor: BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY at 4425 PONCE DE
LEON BLVD., 5TH FLOOR, CORAL GABLES,
Assignee: M & T BANK at 1100 WEHRLE DR., AMHERST, NY  14221

Executed By: KURTIS K KRUEGER A MARRIED MAN AND MATTIE M KRUEGER, A MARRIED WOMAN,
MARRIED TO EACH OTHER  To: INTERBAY FUNDING, LLC
Date of Mortgage: 08/02/2007 Recorded: 08/24/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
9029804 in the County of Hennepin, State of Minnesota.

Property Address: 2444 PILLSBURY AVENUE SOUTH, MINNEAPOLIS, MN  55404

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $450,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY
On December 18th, 2012

By: _____
ROBERT G. HALL, Vice-President

STATE OF Florida
COUNTY OF Miami-Dade

On December 18th, 2012, before me, ADELINE QUINTERO, a Notary Public in and for Miami-Dade in the State of
Florida, personally appeared ROBERT G. HALL, Vice-President of BAYVIEW LOAN SERVICING, LLC, A
DELAWARE LIMITED LIABILITY COMPANY, 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
ADELINE QUINTERO
Notary Expires: 09/03/2016  #EE831859

ADELINE QUINTERO
NOTARY PUBLIC
STATE OF FLORIDA
Comm# EE831859
Expires 9/3/2016

(This area for notarial seal)

Prepared By: Mariaruiz, BAYVIEW LOAN SERVICING, LLC, 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL
33146 (305) 646-3942

RECORD & RETURN TO
C'LIEN SOLUTIONS          15799     ▓ CAREAGA  BAYVIEW LOAN SERVICING, LLC 4425 PONCE DE LEON
P.O. BOX 29071
Glendale CA 91209-9071                46
38285962-MN-Hennepin

▓R▓MRBAYV▓13/162012 02:42:55 PS▓ BAYV/01BAYV▓▓▓▓▓▓▓▓▓▓▓▓▓▓* MNHENN▓▓▓▓▓▓▓▓▓▓0USTATE_MORT_ASSIGN_ASSN ▓MRBAYV▓

ACCOUNT #76
BOX ▓▓▓/LTL▓65
MICS73265



Doc No **A9836801**

Certified, filed and/or recorded on
8/31/12 4:30 PM
Office of the County Recorder
Hennepin County, Minnesota
Rachel Smith, Acting County Recorder
Mark V. Chapin, County Auditor and Treasurer

Deputy 8                                    Pkg ID 849615D

**Doc Name: Continuation**

| Document Recording Fee | $46.00 |
|---|---|
| *Document Total* | $46.00 |

This cover sheet is now a permanent part of the recorded document.



# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

Phone (800) 331-3282     Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)   15795 BAYVIEW SERVIC

CT Lien Solutions       34580462
P.O. Box 29071
Glendale, CA 91209-9071    MNMN
FIXTURE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # <br> 9051647  10/11/07   CC MN Hennepin | 1b. ☒ This FINANCING STATEMENT AMENDMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

**2. ☐ TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3. ☒ CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4. ☐ ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable)

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| KRUEGER | KURTIS | K | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTION | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |  ☐ NONE |
|---|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE): check only one box.**

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME <br> Bayview Loan Servicing, LLC | | | |
|---|---|---|---|
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
   0462 Debtor Name: KRUEGER, KURTIS K

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3)  (REV. 05/22/02)     Prepared by CT Lien Solutions, P.O. Box 29071 Glendale, CA 91209-9071 Tel (800) 331-3282

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

9051647   10/11/07   CC MN Hennepin

12. NAME of PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| | 12a. ORGANIZATION'S NAME<br>Bayview Loan Servicing, LLC | | |
|---|---|---|---|
| OR | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| | | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Debtor Name and Address :
KRUEGER, KURTIS K
- 8161 33RD AVENUE SOUTH #W1401 , MINNEAPOLIS, MN  55425
Secured Party Name and Address :
Bayview Loan Servicing, LLC - 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL  33146

Description:  SEE ATTACHED

Prepared by CT Lien Solutions, P.O. Box 29071
Glendale, CA 91209-9071 Tel (800) 331-3282

LEGAL DESCRIPTION:


Lots 12 and 13, Block 9, J.T. Blaisdell's Revised Addition to Minneapolis, Hennepin County, Minnesota.

Property is Abstract

Property Address:
2444 Pillsbury Avenue
Minneapolis, MN 55404

-6553          State of Minnesota - Department of Revenue        Lien
Legal Documents             NOTICE OF STATE TAX LIEN               Number
   Section                    **2595065**                    000000000387803

| Filing Place: | Pursuant to Minnesota Statute Sec- | Recording Office |
|---|---|---|
| HENNEPIN | tion 270.69, notice is given that the amount of unpaid taxes, plus penalties and interest, is a lien | Use (Optional): Date: |
| County Codes: | in favor of the State of Minnesota upon all property and property | Time: |
| 053 | rights belonging to the taxpayer. | County: |
| Identification No. | Lien fees have been added to the amount due pursuant to Minnesota Statutes, Section 270.69, Subd. 2. | Doc.No/Vol-Page: |

Taxpayer's Name and Address:

KURTIS K KRUEGER
ROSALYN KRUEGER
8433 VIRGINIA RD
BLOOMINGTON , MN 55438-1349

Description of Property(if applicable):

| Tax Type | Period Ending | Assessment Date | Unpaid Balance |
|---|---|---|---|
| IND IT | 12/89 | 08/06/93 | 848.58 |
| IND IT | 12/90 | 04/15/91 | 1,446.00 |

| | Date Signed: | Int. Assessed To: |
|---|---|---|
| COMMISSIONER OF REVENUE | 02/23/95 | 02/22/95 |
| By: _Lori Pucel_ | | Total Due: |
| LORI K PUCEL , COLLECTION OFFICER | | 2,294.58 |
| COLLECTION DIVISION | | |
| 10 RIVER PARK PLAZA | | |
| ST. PAUL, MN  55146-6553 | | |
| CONTACT: LORI K PUCEL (800)779-5963 | | |

                                          0000357294              0100

Receipt and Return to the Dept. of Revenue at Address of Signer

**EXHIBIT**
**I**

2595065

REGISTERED VOL 2413 PAGE 7/9359

2413
719359

OFFICE OF THE REGISTRAR
OF TITLES
HENNEPIN COUNTY, MINNESOTA
CERTIFIED FILED ON

MAR 13 1995 6 PM

By

REGISTRAR OF TITLES
DEPUTY

NO FEE REQUIRED.



**6699899**
RECORDING DATA

```
---------------------------------------------------
     INTERNAL REVENUE SERVICE      | Lien Recorded     :
FACSIMILE FEDERAL TAX LIEN DOCUMENT | Recording Number  :
                                    | UCC Number        :
                                    | Liber/Page        :
                                    |
---------------------------------------------------
District: NORTH CENTRAL             | IRS Serial Number: 419711606
---------------------------------------------------
```

14FEB97 8:29 C6699899     SCD    $4 50
14FEB97 8:29 C6699899     ODC    $15 00

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

OFFICE OF COUNTY RECORDER
HENNEPIN COUNTY, MINNESOTA

Name of Taxpayer:
KURTIS & ROSALYN KRUEGER

CERTIFIED FILED AND OR
RECORDED ON

**97 FEB 14 AM 8: 31**

Residence;
8433 VIRGINIA RD
BLOOMINGTON, MN 55438

AS DOCUMENT # **6699899**
CO. RECORDER
DEPUTY

With respect to each assessment below, unless notice of lien
is refiled by the date in column(e), this notice shall constitute
the certificate of release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|----------|-----------|---------------|--------------|---------------------|--------------------|
| 1040 | 12/31/92 | ▬▬▬ | 06/07/93 | 07/07/03 | 447.10 |
| 1040 | 12/31/93 | ▬▬▬ | 10/17/94 | 11/16/04 | 2703.00 |
| 1040 | 12/31/95 | ▬▬▬ | 12/23/96 | 01/22/07 | 5717.47 |

```
---------------------------------------------------
Filed at: COUNTY RECORDER                    |
          HENNEPIN E               Total |$    8867.57
                                             |
---------------------------------------------------
This notice was prepared and executed at St. Paul, MN
on FEBRUARY 12, 1997
---------------------------------------------------
Authorizing Official:        | Title:
   C BIRD                    |        Revenue Officer
---------------------------------------------------
```

**EXHIBIT**

**J**



Doc No A9825607

Certified, filed and/or recorded on
8/10/12 4:30 PM
Office of the County Recorder
Hennepin County, Minnesota
Rachel Smith, Acting County Recorder
Mark V. Chapin, County Auditor and Treasurer

Deputy 7                                    Pkg ID 839175M

**Doc Name: Federal Tax Lien**

Document Recording Fee                      $46.00

*Document Total*                            $46.00

This cover sheet is now a permanent part of the recorded document.



RECORDING DATA

| INTERNAL REVENUE SERVICE<br>FACSIMILE FEDERAL TAX LIEN DOCUMENT | Lien Recorded   :<br>Recording Number:<br>UCC Number     :<br>Liber          :<br>Page           : |
|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED AREA #4<br>Lien Unit Phone: (800) 913-6050 | IRS Serial Number: 883542112 |

This Lien Has Been Filed in Accordance with
Internal Revenue Regulation 301.6323(f)-1.

Name of Taxpayer :
    KURTIS KRUEGER

Residence :
    2430 PILLSBURY AVE S
    MINNEAPOLIS, MN 55404-3220

With respect to each assessment below, unless notice of lien is refiled by
the date in column (e), this notice shall constitute the certificate of
release of lien as defined in IRC 6325(a).

| Form (a) | Period (b) | ID Number (c) | Assessed (d) | Refile Deadline (e) | Unpaid Balance (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/08 | ████████ | 07/09/12 | 08/08/22 | 82485.30 |
| 1040 | 12/31/10 | ████████ | 06/11/12 | 07/11/22 | 96420.13 |

| Filed at:<br>COUNTY RECORDER<br>HENNEPIN E | Total | $ | 178,905.43 |
|---|---|---|---|

This notice was prepared and executed at CHICAGO, IL
on this, 24th day of July 2012.

| Authorizing Official:<br>MATTHEW A FOX | Title:<br>REVENUE OFFICER |
|---|---|

# Foreclosure: Advice to Tenants

You are renting in a property that is in foreclosure. Minnesota law requires that we send you this notice about the foreclosure process. Please read it carefully.

The mortgage foreclosure does not change the terms of your lease. You and your landlord must continue to follow the terms of your lease, including the rights and responsibilities of you and your landlord. You must keep paying rent unless you have a legal reason to withhold it. Your landlord must keep the property repaired. Utilities must be paid under the terms of your lease or under state law.

Moving out of the property early might be a violation of your lease. The date of the sheriff's foreclosure sale is in the attached foreclosure notice. In most cases you do not need to move from the property before the sheriff's foreclosure sale. Read your lease to see if it says anything about foreclosure and about the rights you may have if the property is in foreclosure. If you have a month-to-month lease, the foreclosure notice does not change the rules for ending your lease. You and your landlord must still give legal notice to end your lease.

In most cases, your landlord has six months after the date of the sheriff's foreclosure sale to pay off the mortgage. This is called the "redemption period." Read the attached foreclosure notice to determine the length of the redemption period. You cannot be asked to move during the redemption period except for lease violations or if your lease expires during the redemption period. If your landlord stops the foreclosure, you may not have to move from the property. If your landlord does not stop the foreclosure, there will be a new owner of the property at the end of the redemption period.

The new owner may have the legal right to ask you to move even if your lease is not over. But, the new owner must still give you a written notice stating that the new owner wants you to move.

Do not wait to get information about foreclosure. Mortgage foreclosure is a complicated process. It is important you learn about your rights as a renter when there is a mortgage foreclosure. You may have fewer options if

Exhibit 3

# Foreclosure: Advice to Tenants

You are renting in a property that is in foreclosure. Minnesota law requires that we send you this notice about the foreclosure process. Please read it carefully.

The mortgage foreclosure does not change the terms of your lease. You and your landlord must continue to follow the terms of your lease, including the rights and responsibilities of you and your landlord. You must keep paying rent unless you have a legal reason to withhold it. Your landlord must keep the property repaired. Utilities must be paid under the terms of your lease or under state law.

Moving out of the property early might be a violation of your lease. The date of the sheriff's foreclosure sale is in the attached foreclosure notice. In most cases you do not need to move from the property before the sheriff's foreclosure sale. Read your lease to see if it says anything about foreclosure and about the rights you may have if the property is in foreclosure. If you have a month-to-month lease, the foreclosure notice does not change the rules for ending your lease. You and your landlord must still give legal notice to end your lease.

In most cases, your landlord has six months after the date of the sheriff's foreclosure sale to pay off the mortgage. This is called the "redemption period." Read the attached foreclosure notice to determine the length of the redemption period. You cannot be asked to move during the redemption period except for lease violations or if your lease expires during the redemption period. If your landlord stops the foreclosure, you may not have to move from the property. If your landlord does not stop the foreclosure, there will be a new owner of the property at the end of the redemption period.

The new owner may have the legal right to ask you to move even if your lease is not over. But, the new owner must still give you a written notice stating that the new owner wants you to move.

Do not wait to get information about foreclosure. Mortgage foreclosure is a complicated process. It is important you learn about your rights as a renter when there is a mortgage foreclosure. You may have fewer options if

you wait too long.     There are government agencies and nonprofit organizations that you may contact for helpful information about the foreclosure process.  For the name and telephone number of an organization near you, please call the legal aid office or bar association office in your county. You also can find information on tenant rights at HOME Line at (866) 866-3546 and Law Help Minnesota at http://www.LawHelpMN.org.  The state of Minnesota does not guarantee the advice of these agencies and organizations.

you wait too long. There are government agencies and nonprofit organizations that you may contact for helpful information about the foreclosure process. For the name and telephone number of an organization near you, please call the legal aid office or bar association office in your county. You also can find information on tenant rights at HOME Line at (866) 866-3546 and Law Help Minnesota at http://www.LawHelpMN.org. The state of Minnesota does not guarantee the advice of these agencies and organizations.

**STATE OF MINNESOTA**                                      **DISTRICT COURT**

**COUNTY OF HENNEPIN**                        **FOURTH JUDICIAL DISTRICT**
                                                          **CASE TYPE 14:  OTHER CIVIL**

---

M & T Bank,

       Plaintiff,

vs.                                                      **CERTIFICATE OF REPRESENTATION**

Kurtis K. Krueger, Mattie M. Krueger,
Alternative Homes Investments, LLC,
Alternative Homes of Minneapolis, Inc.,
Bank Cherokee,
David J. Bates, Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota,
United States of America,
John Doe and Mary Roe,

       Defendants.

---

This Certificate must be filed pursuant to Rule 104 of the General Rules of Practice for the District Courts, which states:  "A party filing a civil case shall, at the time of filing, notify the Court Administrator in writing of the name, address and telephone number of all counsel and unrepresented parties, if known (see form 104 appended to these rules).  **If that information is not then known to the filing party, it shall be provided to the Court Administrator in writing within seven (7) days of learning the information.**  Any party impleading additional parties shall provide the same information to the Court Administrator.  The Court Administrator shall, upon receipt of the completed certificate, notify all parties or their lawyers, if represented by counsel, of the date of filing the action and the file number assigned."

<u>**LAWYERS FOR PLAINTIFF**</u>
Wendy Oien Sanchez, #0391586
Kalli L. Ostlie, #329678
Shapiro & Zielke, L.L.P.
12550 West Frontage Road, Suite 200
Burnsville, MN 55337

John G. Westrick, #206581
Westrick & McDowall-Nix, PLLP
325 Cedar Street
St. Paul, MN 55101

1

Exhibit 4

## LAWYERS FOR DEFENDANTS

Kurtis Krueger, *Pro-Se*
8161 33rd Avenue South, #W1401
Minneapolis, MN 55425

Mattie Krueger, *Pro-Se*
8161 33rd Avenue South, #W1401
Minneapolis, MN 55425

Alternative Homes Investments, LLC, *Pro-Se*
2446 Portland Ave.
Minneapolis, MN 55404

Alternative Homes of Minneapolis, Inc.,
*Pro-Se*
2446 Portland Ave.
Minneapolis, MN 55404

BankCherokee, *Pro-Se*
607 South Smith Avenue
St. Paul, MN 55107

David J. Bates, *Pro-Se*
10636 Juniper Street NW
Coon Rapids, MN 55448

Lorrie A. Bates, *Pro-Se*
10636 Juniper Street NW
Coon Rapids, MN 55448

U.S. Small Business Administration, *Pro-Se*
210-C Butler Square
100 North Sixth Street
Minneapolis, MN 55403

Minnesota Business Finance Corporation,
*Pro-Se*
616 Roosevelt Road, Ste. 200
St. Cloud, MN 56301

State of Minnesota
Office of the Attorney General
445 Minnesota Street
St. Paul, MN 55101

Minnesota Department of Revenue
Attn:  Seizure Program
P.O. Box 64447
St. Paul, MN 55164-0447

United States Attorney
District of Minnesota
600 United States Courthouse
300 South 4th Street, Suite 600
Minneapolis, MN 55415

John Doe, *Pro-Se*
2444 Pillsbury Avenue
Minneapolis, MN 55404

Mary Roe, *Pro-Se*
2444 Pillsbury Avenue
Minneapolis, MN 55404

**STATE OF MINNESOTA**  **DISTRICT COURT**

**COUNTY OF HENNEPIN**  **FOURTH JUDICIAL DISTRICT**
**CASE TYPE 14: OTHER CIVIL**

M & T Bank,

Plaintiff,  **PLAINTIFF'S**
**INFORMATIONAL**
vs.  **STATEMENT**

Kurtis K. Krueger,
Mattie M. Krueger,
Alternative Homes Investments, LLC,
Alternative Homes of Minneapolis, Inc.,
Bank Cherokee,
David J. Bates,
Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota,
United States of America,
John Doe and Mary Roe,

Defendant.

1.   All parties have not been served with process.

2.   All parties have not joined in the filing of this form.

3.   Brief description of the case:

The Plaintiff has commenced this action to judicially foreclose on the Mortgage recorded in Hennepin County as Document No. 9029604.

4.   It is estimated that the discovery specified below can be completed within 6 months from the date of this form.

a.   Factual Depositions    No ___ Yes _X_ ,
estimated number: 1

b.   Medical Evaluations No _X_ Yes___,
estimated number:

1

Exhibit 5

      c.      Experts Subject to Discovery No___ Yes _X_ , estimated number: 1

5.      Assignment as an __ expedited _X_ standard __ complex case is requested.

6.      The dates and deadlines specified below are suggested.

a. 09/27/2013 Deadline for joining additional parties, whether by amendment or third party practice.

b. 02/07/2014 Deadline for bringing non-dispositive motions.
c. 03/28/2014 Deadline for bringing dispositive motions.

d. N/A      Date for formal discovery conference pursuant to Minn. R. Civ. P. 26.06.

e. 07/03/2014 Date for pretrial conference pursuant to Minn. R. Civ. P. 16.

f. N/A      Date for scheduling conference.

g. 06/19/2014 Date for submission of Joint Statement of the Case pursuant to Minn. Gen. R. Proc. 112

h. 08/04/2014 Trial Date.

i. 06/19/2014 Deadline for filing findings of facts, witness list, and exhibit list.

j. 12/23/2013 Deadline to complete discovery.

7.      Estimated trial time: _1_ day

8.      A bench trial has been requested by Plaintiff.

9.      a.      MEETING: Counsel for the parties did not meet on  to discuss Management issues.

      b.      ADR PROCESS:
              Plaintiff believes ADR is appropriate and choose the following:

              X Mediation

      c.      PROVIDER

              The parties agreed to select an ADR neutral on or before: 03/31/2014.

      d.      DEADLINE The parties recommend that the ADR process be completed by 05/22/2014.

2

10.   Please list any additional information which might be helpful to the court when scheduling this matter.

Date: ___7/2/13___

**SHAPIRO & ZIELKE, LLP**

Signed: _____
Wendy Oten Sánchez – #0391586
Kalli L. Ostlie – #329678
*Attorneys for Plaintiff*
12550 West Frontage Road Suite 200
Burnsville, MN 55337
(952) 831-4060

John G. Westrick - #206581
*Attorney for Plaintiff*
Westrick & McDowall-Nix, PLLP
450 Degree of Honor Building
325 Cedar Street
St. Paul, MN 55101

CASE TYPE: 14: OTHER CIVIL

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF HENNEPIN

FOURTH JUDICIAL DISTRICT
MORTGAGE FORECLOSURE

M & T Bank,

File No.: _____

Plaintiff,

vs.

Kurtis K. Krueger, Mattie M. Krueger,
Alternative Homes Investments, LLC,
Alternative Homes of Minneaolis, Inc., Bank
Cherokee, David J. Bates, Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota, United States of
America, John Doe and Mary Roe,

Defendants.

**JOINT ANSWER AND JURY
DEMAND OF ALTERNATIVE
HOMES INVESTMENTS, LLC,
ALTERNATIVE HOMES OF
MINNEAPOLIS, INC.,
DAVID J. BATES, LORRIE A.
BATES, MINNESOTA
BUSINESS FINANCE
CORPORATION AND BANK
CHEROKEE**

Defendants Alternative Homes Investments, LLC, ("AHI"), Alternative Homes of
Minneapolis, Inc., ("AHM"), David J. Bates ("Mr. Bates"), Lorrie A. Bates ("Ms. Bates"),
Minnesota Business Finance Corporation ("MBFC") and Bank Cherokee (the "Bank" and,
together with AHI, AHM, Mr. Bates, Ms. Bates and MBFC, collectively, the "Answering
Defendants"), as and for their Joint Answer to the Complaint, state and allege as follows:

Except as specifically admitted or qualified herein, the Answering Defendants deny each
and every allegation, statement and thing set forth in the Complaint.

1.      In response to Paragraph 1 of the Complaint, the Answering Defendants state that
they lack sufficient knowledge or information to form a belief as to the truth of the allegations
contained therein and therefore deny the same.

Exhibit 6

2. In response to Paragraph 2 of the Complaint, the Answering Defendants admit that Kurtis K. Krueger and Mattie M. Krueger are husband and wife. The Answering Defendants deny the remaining allegations in Paragraph 2 of the Complaint.

3. The Answering Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4. The Answering Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5. The Answering Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6. The Answering Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7. The Answering Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8. The Answering Defendants admit the allegations contained in Paragraph 8 of the Complaint.

9. The Answering Defendants deny the allegations contained in Paragraph 9 of the Complaint.

10. The Answering Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11. In response to Paragraph 11 of the Complaint, the Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and therefore deny the same.

12.     The Answering Defendants admit the allegations contained in Paragraph 12 of the Complaint.

13.     The Answering Defendants admit the allegations contained in Paragraph 13 of the Complaint.

14.     The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and therefore deny the same.

15.     The Answering Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.     In response to Paragraph 16 of the Complaint, the Answering Defendants admit that the mortgage identified in Paragraph 16 was recorded with the Hennepin County Recorder's Office on August 24, 2007 as Document No. 9029604.

17.     The Answering Defendants have insufficient information to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and therefore deny the same.

18.     The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and therefore deny the same.

19.     The Answering Defendants admit the allegations contained in Paragraph 19 of the Complaint.

20.     In response to the first sentence of Paragraph 20 of the Complaint, the Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained therein and therefore deny the same. The Answering Defendants admit the allegations contained in the second sentence of Paragraph 20 of the Complaint.

3

21.     The Answering Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     The Answering Defendants deny the allegations contained in Paragraph 22 of the Complaint.

23.     In response to the allegations contained in Paragraph 23 of the Complaint, the Answering Defendants state that the mortgage identified therein speaks for itself.   The Answering Defendants specifically deny any assertion that the Plaintiff is entitled to foreclose such Mortgage.

24.     The Answering Defendants deny the allegation contained in Paragraph 24 of the Complaint.

25.     The Answering Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26.     The Answering Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     No response is required to the reservation of rights contained in Paragraph 27 of the Complaint. To the extent a response is required, the Answering Defendants deny any allegations contained in Paragraph 27 of the Complaint.

28.     In response to Paragraph 28 of the Compliant, the Answering Defendants deny that there is any indebtedness secured by the Mortgage identified in such Paragraph.   The Answering Defendants admit the remaining allegations contained in Paragraph 28 of the Complaint.

29.     The Answering Defendants admit the allegations contained in Paragraph 29 of the Complaint.

4

30.     The Answering Defendants admit the allegations contained in Paragraph 30 of the Complaint.

31.     The Answering Defendants admit the allegations contained in Paragraph 31 of the Complaint.

32.     The Answering Defendants admit the allegations contained in Paragraph 32 of the Complaint.

33.     The Answering Defendants admit the allegations contained in Paragraph 33 of the Complaint.

34.     The Answering Defendants admit the allegations contained in Paragraph 34 of the Complaint.

35.     The Answering Defendants admit the allegations contained in Paragraph 35 of the Complaint.

36.     The Answering Defendants admit the allegations contained in Paragraph 36 of the Complaint.

37.     The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 37 of the Complaint and therefore deny the same.

38.     The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the the allegations contained in Paragraph 38 of the Complaint and therefore deny the same.

39.     The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 39 of the Complaint and therefore deny the same.

40.     The Answering Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint and therefore deny the same.

41.     The Answering Defendants admit the allegations contained in Paragraph 41 of the Complaint.

42.     The Answering Defendants admit the allegations contained in Paragraph 42 of the Complaint.

43.     The Answering Defendants admit the allegations contained in Paragraph 43 of the Complaint.

44.     The Answering Defendants admit the allegations contained in Paragraph 44 of the Complaint.

45.     The Answering Defendants admit the allegations contained in Paragraph 45 of the Complaint.

46.     The Answering Defendants deny the allegations contained in Paragraph 46 of the Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

As and for their defenses and affirmative defenses, the Answering Defendants state and allege as follows:

1.      The Plaintiff's claims are barred because all of indebtedness owed from Defendants Mattie and Kurtis Krueger to Plaintiff M & T Bank has been paid and satisfied in full.

2.      The Plaintiff's claims are barred because the Plaintiff received payment in full in accordance with pay-off statements prepared by Plaintiff M & T.

6

3.      The Plaintiff's claims are barred because the Plaintiff agreed to release all liens and security interests against the property which is the subject of this action pursuant to Pay-off statements prepared by Plaintiff M & T Bank.

4.      The Plaintiff's claims are barred because the mortgage which is the subject of this action may be released and discharged pursuant to Minnesota Statute Section 507.401 et. seq.

5.      The Plaintiff's claims are barred because the mortgage the Plaintiff seeks to foreclose is void or voidable.

6.      The Plaintiff's claims are barred because the Plaintiff released its claims.

7.      The Plaintiff's claims are barred because the Plaintiff waived its claims.

8.      The Plaintiff's claims are barred by its negligence and contributory negligence.

9.      The interests of the Answering Defendants in the subject property is prior and superior to any interest held or asserted by the Plaintiff.

10.     The Plaintiff's claims are barred by the doctrine of accord and satisfaction.

11.     The Plaintiff's claims are barred by the Plaintiff's own conduct.

12.     The Plaintiff's claims are barred by the doctrine of equitable estoppel.

13.     The Plaintiff's claims are barred by the doctrine of promissory estoppel.

14.     The Plaintiff's claims are barred by the  doctrines of laches, waiver and release.

15.     The Plaintiff's claims are barred by its unclean hands.

16.     The Plaintiff's claims are barred by the Plaintiff's negligent misrepresentations.

17.     The Plaintiff's claims are barred by fraud and by the Plaintiff's fraudulent conduct and fraudulent misrepresentations.

18.     The Plaintiff's claims are barred by the usury statutes.

19.    The Plaintiff's claims are barred by its predatory lending practices.

## JURY DEMAND

The Answering Defendants hereby make a demand for a jury trial with respect to all issues so triable.

WHEREFORE, having fully answered the Plaintiff's Complaint, the Answering Defendants demand that judgment be entered in favor of the Answering Defendants against the Plaintiff:

A.    Dismissing the Plaintiff's Complaint in its entirety with prejudice, and adjudicating that the Plaintiff take nothing thereby;

B.    Awarding the Answering Defendants reasonable attorneys' fees and costs incurred herein, together with interest thereon; and

C.    Granting such other and further relief as the Court deems just and proper under the circumstances.

Dated: August ____, 2013                    WINTHROP & WEINSTINE, P.A.


                                            By:   _s/Daniel C. Beck_____
                                                  Daniel C. Beck, #192053
                                                  Jacob B. Sellers, #348879

                                            225 South Sixth Street
                                            Suite 3500
                                            Minneapolis, Minnesota 55402
                                            612-604-6400

                                            Attorneys for Alternative Homes Investments, LLC,
                                            Alternative Homes of Minneaoplis, Inc., David J.
                                            Bates, Lorrie A. Bates, Minnesota Business Finance
                                            Corporation and Bank Cherokee

8

## Acknowledgment

The undersigned hereby acknowledges that pursuant to Minn. Stat. § 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find that the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the Court.

Dated: August ____, 2013                    WINTHROP & WEINSTINE, P.A.


                                             By:   _s/Daniel C. Beck_____
                                                   Daniel C. Beck, #192053
                                                   Jacob B. Sellers, #348879

                                             225 South Sixth Street
                                             Suite 3500
                                             Minneapolis, Minnesota 55402
                                             612-604-6400

                                             Attorneys for Alternative Homes Investments, LLC,
                                             Alternative Homes of Minneapolis, Inc., David J.
                                             Bates, Lorrie A. Bates, Minnesota Business Finance
                                             Corporation and Bank Cherokee

8163629v1

# SHAPIRO & ZIELKE, LLP
## MINNESOTA LAW FIRM

Gerald M. Shapiro*
David Kreisman**
Lawrence P. Zielke***
Diane F. Mach
Melissa L. B. Porter
Kalli L. Ostlie****
Randolph W. Dawdy****
Thomas J. Hainje
Ronald W. Spencer
Stephanie O. Nelson
Amanda M. Govze
Wendy Olen Sanchez
Gary J. Evers

www.zielkeattorneys.com

PHONE: (952) 831-4060
FAX: (847) 954-4800

12550 West Frontage Road, Suite 200
Burnsville, MN, 55337

*Admitted in Illinois and Florida only
**Admitted in Illinois only
***Also admitted in Wisconsin
****Certified Real Property Law Specialist in Minnesota
*****Also admitted in Wisconsin and Florida
Of Counsel
Kristine M. Spiegelberg Nelson

August 8, 2013

Honorable Laurie J. Miller,
Judge of District Court
Hennepin County Courthouse
350 South Fifth Street
Minneapolis, MN 55415

RE:     M & T Bank v. Kurtis K. Krueger, et. al.
        Court File No. 27-CV-13-13086 / SZ File No. 13-092027

Dear Honorable Judge:

Plaintiff's counsel hereby submits this request for a telephone conference pursuant to Minn. R. Gen. Prac. 115.04(d) for an expedited, informal non-dispositive motion.

Pursuant to Minnesota law, the occupants of the subject property in a foreclosure by action "shall be served in like manner as a summons in a civil action in the district court upon the person in possession of the mortgage premises, if the same are actually occupied" with a copy of the notice of sale, and as Defendants in a civil action (herein named as "John Doe and Mary Roe"), must be personally served with the summons. Minn. Stat. §580.03 (2012) and Minn. R. Civ. P. 4 (2013).

The Plaintiff, through its agent, attempted service of process upon the occupants of the property located at 2444 Pillsbury Avenue, Minneapolis, MN (the "subject property") to no avail. David & Lorrie Bates, the caretakers of the subject property and officers of Alternative Home Investments, LLC and Alternative Homes of Minneapolis, Inc., refused to allow access to the subject property thereby preventing service of process upon the individual occupants. Attached please find the Affidavit of Non Service for occupants of 2444 Pillsbury Avenue.

It is my understanding that the subject property is used as a halfway house and the caretakers have an interest in protecting the identity of its occupants. Plaintiff therefore asks the Court to validate service of process upon Alternative Home Investments, LLC and Alternative Homes of Minneapolis, Inc., by and through their officers or registered agents David and Lorrie Bates, as the sole occupants of the subject property to satisfy any service of process requirements

Exhibit 7

Pg. 2 – letter to Court
27-CV-13-13086
M & T Bank v. Kurtis K. Krueger, et al.

(both jurisdictional and otherwise) for the summons and the notice of sale in this foreclosure by action.

Additionally, Plaintiff asserts that any notices required under Minn. Stat. §§ 580.021, 580.041 and 580.042 are not applicable as the subject property does not consist of one to four family dwelling units and said notices are therefore not required for this judicial foreclosure. Minn. Stat. §§ 580.021, 580.041 and 580.042 (2012).

Respectfully submitted,

Wendy Ojen Sanchez
Attorney at Law

Cc:    Daniel C. Beck, Esq.;
       Kurtis Krueger & Mattie Krueger;
       U.S. Small Business Administration;
       Tamar N. Gronvall, Assistant Attorney General, State of Minnesota;
       Roylene Champeaux, United States Attorney;
       John Doe and Mary Roe.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**STATE OF MINNESOTA**

**AFFIDAVIT OF NON SERVICE**

**COUNTY OF HENNEPIN**

**METRO LEGAL SERVICES**

Rick Sinner, agent for Metro Legal Services, Inc., being first duly sworn on oath, deposes and states on July 17, 2013, at 6:29 PM that agents in his employ attempted to serve the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement

upon the within-named:

Occupants

at the address of:

2444 Pillsbury Avenue, Minneapolis, County of Hennepin, State of Minnesota, and was unable to effect personal service of process for the following reasons:

- The above mentioned address is a halfway house. There is no security system and no way into the building without a key. There appears to be approximately 17 units within. It is unclear who if anyone occupies any of the units. It is the experience of Metro Legal Services, Inc. that occupants and staff of halfway houses are very protective and unwilling to provide names of those residing in such a facility.

**FURTHER YOUR AFFIANT SAITH NOT**

Rick Sinner

Subscribed and sworn to before me on

_8/2_____, 2013

DAVID CHARLES HANSEN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

RE: 13-092027

**STATE OF MINNESOTA**

**AFFIDAVIT OF NON SERVICE**

**COUNTY OF HENNEPIN**

**METRO LEGAL SERVICES**

Rick Sinner, agent for Metro Legal Services, Inc., being first duly sworn on oath, deposes and states on July 17, 2013, at 6:29 PM that agents in his employ attempted to serve the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement

upon the within-named:

Occupants

at the address of:

2444 Pillsbury Avenue, Minneapolis, County of Hennepin, State of Minnesota, and was unable to effect personal service of process for the following reasons:

- The above mentioned address is a halfway house. There is no security system and no way into the building without a key. There appears to be approximately 17 units within. It is unclear who if anyone occupies any of the units. It is the experience of Metro Legal Services, Inc. that occupants and staff of halfway houses are very protective and unwilling to provide names of those residing in such a facility.

**FURTHER YOUR AFFIANT SAITH NOT**

_____
Rick Sinner

Subscribed and sworn to before me on

_____8/2_____, 2013

_____

DAVID CHARLES HANSEN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

"1784644 - 10"

RE: 13-092027

Exhibit 8

STATE OF MINNESOTA                                  DISTRICT COURT

COUNTY OF HENNEPIN                                  TENTH JUDICIAL DISTRICT
                                                    MORTGAGE FORECLOSURE
                                                    Court File No. 27-CV-13086
                                                    Assigned to: Judge Laurie J. Miller

---

M & T BANK,

              Plaintiff,                          **ORDER**

vs.

Kurtis K. Krueger, Mattie M. Krueger,
Alternative Homes Investments, LLC,
Alternative Homes of Minneapolis, Inc.,
BankCherokee,
David J. Bates, Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota,
United States of America,
John Doe and Mary Roe,

              Defendants.

---

The above-entitled matter came on for a conference call before the undersigned on

August 13, 2013 to hear arguments on Plaintiff's request for an expedited, informal non-

dispositive motion pursuant to Minn. R. Gen. Prac. 115.04(d). Wendy Oien Sanchez appeared as

counsel for the Plaintiff. Daniel C. Beck appeared as counsel for Defendants Alternative Homes

Investments, LLC, Alternative Homes of Minneapolis, Inc., David J. Bates, Lorrie A. Bates,

BankCherokee and Minnesota Business Finance Corporation. All other appearances were noted

on the record.

NOW THEREFORE, the Court, having carefully considered all of the files, records and

proceedings herein, together with the arguments of counsel, makes the following:

1

Exhibit 9

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.      On or about July 16, 2013, Plaintiff commenced a foreclosure by action upon the real estate commonly known as: 2444 Pillsbury Avenue, Minneapolis, MN (the "Property").

2.      On or about July 17, 2013, Plaintiff, through its agent, served Alternative Homes Investments, LLC by handing to and leaving with Lorrie Bates, Manager of Alternative Homes Investments, LLC, a copy of the Summons and Complaint.

3.      On or about August 8, 2013, Plaintiff, through its agent, served Alternative Homes of Minneapolis, Inc. by handing to and leaving with a managing agent authorized to accept service on behalf of Alternative Homes of Minneapolis, Inc., a copy of the Summons and Complaint.

4.      That service of process could not be effectuated upon the individual occupants of the subject Property.

5.      That the subject property is a secured halfway house managed and cared for by individuals David Bates and Lorrie Bates.

6.      That service upon Alternative Homes Investments, LLC and Alternative Homes of Minneapolis, Inc., by and through their respective officers, registered or managing agents is deemed sufficient for service of process upon any and all occupants of the Property and will satisfy service of process requirements for both the Summons under Minn. R. Civ. P. 4 and the Notice of Sale pursuant to Minn. Stat. §580.03.

7.      That the foreclosure notice requirements under Minn. Stat. §§ 580.021, 580.041 and 580.042 are not applicable to this foreclosure by action as the Property does not consist of one to four family dwelling units and therefore Plaintiff need not provide proof of service thereof.

2

## **ORDER**

1.     For purposes of this foreclosure by action, any requirement to serve the occupants of the Property located at 2444 Pillsbury Avenue, Minneapolis, MN are deemed satisfied upon service of process upon Alternative Homes Investments, LLC and Alternative Homes of Minneapolis, Inc., by and through their respective officers, registered or managing agents.


Dated:_____          _____
                                     Laurie J. Miller
                                     Judge of District Court

3

**STATE OF MINNESOTA**                                    **DISTRICT COURT**

**COUNTY OF HENNEPIN**                          **FOURTH JUDICIAL DISTRICT**
                                                **CASE TYPE 14:  OTHER CIVIL**
                                                **Court File No. 27-CV-13-13086**

---

M & T Bank,

        Plaintiff,

vs.                                             **AMENDED**
                                                **CERTIFICATE OF REPRESENTATION**
Kurtis K. Krueger, Mattie M. Krueger,           **AND PARTIES**
Alternative Homes Investments, LLC,
Alternative Homes of Minneapolis, Inc.,
Bank Cherokee,
David J. Bates, Lorrie A. Bates,
U.S. Small Business Administration,
Minnesota Business Finance Corporation,
State of Minnesota,
United States of America,
John Doe and Mary Roe,

        Defendants.

---

This Certificate must be filed pursuant to Rule 104(a) of the General Rules of Practice for the District Courts if the case is a family case or a civil case listed in Minn. Gen. R. Prac. 111.01. **If information is not then known to the filing party at the time of filing, it shall be provided to the Court Administrator in writing within seven (7) days of learning the information.** Any party impleading additional parties shall provide the same information to the Court Administrator. The Court Administrator shall, upon receipt of the completed certificate, notify all parties or their lawyers, if represented by counsel, of the date of filing the action and the file number assigned.

**ATTORNEYS FOR PLAINTIFF**

Wendy Oien Sanchez, #0391586          John G. Westrick, #206581
wsanchez@logs.com                     westrick@westmaclaw.com
Kalli L. Ostlie, #329678              Westrick & McDowall-Nix, PLLP
kostlie@logs.com                      325 Cedar Street
Shapiro & Zielke, L.L.P.              St. Paul, MN 55101
12550 West Frontage Road, Suite 200   (651) 292-9603
Burnsville, MN 55337
(952) 831-4060

Exhibit 10

**ATTORNEYS FOR DEFENDANTS**

Daniel C. Beck, #192053
dbeck@winthrop.com
Jacob B. Sellers, #348879
Winthrop & Weinstine, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
(612) 604-6400

*Attorneys for Defendants:*
*Alternative Homes Investments, LLC,*
*Alternative Homes of Minneapolis, Inc.,*
*David J. and Lorrie A. Bates,*
*Minnesota Business Finance Corporation,*
*BankCherokee*

Kurtis K. Krueger, *Pro-Se*
1119 – 1st Avenue North, Unit 10
Sauk Rapids, MN 56379

Mattie M. Krueger, *Pro-Se*
1119 – 1st Avenue North, Unit 10
Sauk Rapids, MN 56379

U.S. Small Business Administration, *Pro-Se*
210-C Butler Square
100 North Sixth Street
Minneapolis, MN 55403

State of Minnesota
Office of the Attorney General
445 Minnesota Street
St. Paul, MN 55101

Minnesota Department of Revenue
Attn: Seizure Program
P.O. Box 64447
St. Paul, MN 55164-0447

United States Attorney's Office
District of Minnesota
600 United States Courthouse
300 South 4th Street, Suite 600
Minneapolis, MN 55415

John Doe, *Pro-Se*
2444 Pillsbury Avenue
Minneapolis, MN 55404

Mary Roe, *Pro-Se*
2444 Pillsbury Avenue
Minneapolis, MN 55404

2

**STATE OF MINNESOTA**
**COUNTY OF HENNEPIN**

**DISTRICT COURT**
**FOURTH JUDICIAL DISTRICT**

M&T Bank
      Plaintiff,

Court File Number

vs.

**AFFIDAVIT OF SERVICE**

Kurtis K. Krueger, et al.
      Defendant(s),

State of Minnesota } SS
County of Benton }

_KATHLEEN M. LANGE_ , being duly sworn, on oath says that on
(Name of Server)

_7_ / _30_ /2013 at _10:50_ _A_ M
(Date of Service)     (Time of Service)

s(he) served the attached: Summons; Complaint with Exhibits; Certificate of Representation;
      Plaintiff's Informational Statement

upon: Kurtis K. Krueger

therein named, personally at: _1119 1ST AVE NORTH #10_

      _SANK RAPIDS MN 56379_

by handling to and leaving with:

[X] Kurtis K. Krueger
[ ] a person of suitable age and discretion then and there residing at the usual abode
    of said, Kurtis K. Krueger

_____
(Name of the Person with whom the documents were left)    (Title or Relationship)

a true and correct copy thereof.

Subscribed and Sworn to before me

_7_ / _31_ /2013.

**KEVIN G LANGE**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2015

_____
(Signature of Server)

_____
(Signature of Notary)

Serial # SHANO 120810 3160
Re: 13-092027
* Service was completed by an independent contractor retained by Metro Legal Services, Inc.

Metro Legal Services, Inc.
330 2nd Avenue South, Suite 150, Minneapolis, MN 55401
T (612) 332-0202 or (800) 488-8994   F (612) 332-5215

*Exhibit 11*



**STATE OF MINNESOTA**
**COUNTY OF HENNEPIN**

**DISTRICT COURT**
**FOURTH JUDICIAL DISTRICT**

M&T Bank

Plaintiff,

Court File Number

vs.

**AFFIDAVIT OF SERVICE**

Kurtis K. Krueger, et al.
Defendant(s),

State of Minnesota } SS
County of Benton }

_KATHLEEN M. LANGE_ , being duly sworn, on oath says that on
(Name of Server)

_7_ / _30_ /2013 at _10_ : _50_ _A_ M
(Date of Service)      (Time of Service)

s(he) served the attached: Summons; Complaint with Exhibits; Certificate of Representation;
Plaintiff's Informational Statement

upon: Mattie M. Krueger

therein named, personally at: _1119 1ST AVE NORTH #10_

_SANK RAPIDS MN 56379_

by handling to and leaving with:

[X] Mattie M. Krueger
[  ] a person of suitable age and discretion then and there residing at the usual abode
of said, Mattie M. Krueger

_____
(Name of the Person with whom the documents were left)      (Title or Relationship)

a true and correct copy thereof.

Subscribed and Sworn to before me

_7_ / _31_ /2013.

**KEVIN G LANGE**
**NOTARY PUBLIC**
**MINNESOTA**
My Commission Expires Jan. 31, 2015

_____
(Signature of Server)

_____
(Signature of Notary)


Serial # SHANO 120811 3161
Re: 13-092027
* Service was completed by an independent contractor retained by Metro Legal Services, Inc.

Metro Legal Services, Inc.
330 2nd Avenue South, Suite 150, Minneapolis, MN 55401
T (612) 332-0202 or (800) 488-8994   F (612) 332-5215

Exhibit 12

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

_METRO LEGAL SERVICES_

Neil Hanson, being duly sworn, on oath says:

that on July 17, 2013, at 12:44 PM he served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

Alternative Homes Investments, LLC, therein named, personally at:

2446 Portland Avenue, Minneapolis, County of Hennepin, State of Minnesota, by handing to and leaving with Lorrie Bates, Manager, a true and correct copy thereof.

_____
Neil Hanson

Subscribed and sworn to before me on

_____ , 2013

ROBERT D. YATES
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2017


"1784644 - 1"

RE: 13-092027

Exhibit 13

**STATE OF MINNESOTA**

**AFFIDAVIT OF NON SERVICE**

**COUNTY OF HENNEPIN**

**METRO LEGAL SERVICES**

Rick Sinner, agent for Metro Legal Services, Inc., being first duly sworn on oath, deposes and states on July 17, 2013, at 6:29 PM that agents in his employ attempted to serve the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement

upon the within-named:

Occupants

at the address of:

2444 Pillsbury Avenue, Minneapolis, County of Hennepin, State of Minnesota, and was unable to effect personal service of process for the following reasons:

- The above mentioned address is a halfway house. There is no security system and no way into the building without a key. There appears to be approximately 17 units within. It is unclear who if anyone occupies any of the units. It is the experience of Metro Legal Services, Inc. that occupants and staff of halfway houses are very protective and unwilling to provide names of those residing in such a facility.

**FURTHER YOUR AFFIANT SAITH NOT**

_____
Rick Sinner

Subscribed and sworn to before me on
_____8/2_____ , 2013

_____

DAVID CHARLES HANSEN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

"1784644 - 10"

RE: 13-092027

Exhibit 14

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

*METRO LEGAL SERVICES*

Wanda Raymond, being duly sworn, on oath says:

that on July 17, 2013, at 1:20 PM she served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

Bank Cherokee, therein named, personally at:

607 South Smith Avenue, St. Paul, County of Ramsey, State of Minnesota, by handing to and leaving with Heidi Gesell, Chief Executive Officer, a true and correct copy thereof.

_____
Wanda Raymond

Subscribed and sworn to before me on

__JULY 17ᵗʰ__ , 2013

RICHARD H. HARDEN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

RE: 13-092027

*1784644 - 2*

Exhibit 15

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

*METRO LEGAL SERVICES*

Clyde A. Smith, being duly sworn, on oath says:

that on July 19, 2013, at 2:21 PM he served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

Lorrie A. Bates, therein named, personally at:

10636 Juniper Street NW, Coon Rapids, County of Anoka, State of Minnesota, by handing to and leaving with Lorrie A. Bates, a true and correct copy thereof.



_____
Clyde A. Smith

Subscribed and sworn to before me on

_____ 7-19 , 2013



TODD J. ESSLER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

RE: 13-092027

*1784644 - 9*

Exhibit 16

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

*METRO LEGAL SERVICES*

Clyde A. Smith, being duly sworn, on oath says:

that on July 19, 2013, at 2:21 PM he served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

David J. Bates, therein named, personally at:

10636 Juniper Street NW, Coon Rapids, County of Anoka, State of Minnesota, the usual abode of said David J. Bates, by handing to and leaving with Lorrie A. Bates, wife, a person of suitable age and discretion residing therein, a true and correct copy thereof.



_____
Clyde A. Smith

Subscribed and sworn to before me on

_____7-19____, 2013

TODD J. ESSLER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

_____



"1784644 - 8"

RE: 13-092027

Exhibit 17

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

**METRO LEGAL SERVICES**

Nick Gibbons, being duly sworn, on oath says:

that on July 17, 2013, at 3:00 PM he served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

U.S. Small Business Administration, therein named, personally at:

100 North 6th Street, Suite 210-C, Minneapolis, County of Hennepin, State of Minnesota, by handing to and leaving with Royce Nelligan, District Counsel, a true and correct copy thereof.

Nick Gibbons

Subscribed and sworn to before me on

7-17 , 2013

GEOFFREY M. EGERMAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2015

"1784644 - 5"

RE: 13-092027

Exhibit 18

STATE OF MINNESOTA                                        DISTRICT COURT
COUNTY OF HENNEPIN                                  FOURTH JUDICIAL DISTRICT

M&T Bank                                              Court File Number
              Plaintiff,
                                                    _____

vs.
                                                    **AFFIDAVIT OF SERVICE**

Kurtis K. Krueger, et al.
              Defendant(s),

State of Minnesota } SS
County of Benton   }

KATHLEEN M. LANGE _____, being duly sworn, on oath says that on
        (Name of Server)

7 / 19 /2013 at   8:05   P M
(Date of Service)   (Time of Service)

s(he) served the attached: Summons; Complaint with Exhibits A-K; Certificate of
                           Representation; Plaintiff's Informational Statement

upon: Minnesota Business Finance Corporation

therein named, personally at:   616 Roosevelt Road
                                Suite 200
                                St. Cloud, MN 56301

by handling to and leaving with:

[  ]  the Registered Agent of Minnesota Business Finance Corporation
[X]  an Officer of Minnesota Business Finance Corporation
[  ]  a Managing Agent, someone within Minnesota Business Finance Corporation whose
      management capacity is such that (s)he exercises independent judgment and discretion

    TOM SAEHR                                    PRESIDENT
(Name of the Person with whom the documents were left)      (Title or Relationship)

a true and correct copy thereof.

Subscribed and Sworn to before me

7 / 20 /2013.

_____
(Signature of Notary)

KEVIN G LANGE
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2015

_____
(Signature of Server)

Serial # SHANO 120384 1131
Re: 13-092027
* Service was completed by an independent contractor retained by Metro Legal Services, Inc.

Metro Legal Services, Inc.
330 2nd Avenue South, Suite 150, Minneapolis, MN 55401
T (612) 332-0202 or (800) 488-8994   F (612) 332-5215

Exhibit 19

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

**METRO LEGAL SERVICES**

William R. Jensen, being duly sworn, on oath says:

that on July 17, 2013, at 11:46 AM he served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

State of Minnesota, therein named, personally at:

445 Minnesota Street, #1100, St. Paul, County of Ramsey, State of Minnesota, by handing to and leaving with John Garry, Assistant Attorney General, an expressly authorized agent for said State of Minnesota, a true and correct copy thereof.

William R. Jensen

Subscribed and sworn to before me on

_____7/18_____ , 2013

DAVE L. HOLPER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015



"1784644 - 3"

RE: 13-092027

Exhibit 20

**STATE OF MINNESOTA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF HENNEPIN**

**METRO LEGAL SERVICES**

Jeremy M. Fuchs, being duly sworn, on oath says:

that on July 17, 2013, at 11:50 AM he served the attached:

Summons; Complaint with Exhibits A-K; Certificate of Representation; and Plaintiff's Informational Statement upon:

United States of America, therein named, personally at:

300 South 4th Street, Suite 600, Minneapolis, County of Hennepin, State of Minnesota, by handing to and leaving with Kim Svendsen, Assistant United States Attorney, an expressly authorized agent for said United States of America, a true and correct copy thereof.

_____
Jeremy M. Fuchs

Subscribed and sworn to before me on

7-17, 2013

GEOFFREY M. EGERMAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires
January 31, 2015

"1784644 - 4"

RE: 13-092027

Exhibit 21



WINTHROP WEINSTINE

ATTORNEYS AND COUNSELORS AT LAW

August 13, 2013

Daniel C. Beck
Direct Dial: (612) 604-6738
Direct Fax: (612) 604-6938
dbeck@winthrop.com

The Honorable Laurie J. Miller
Judge of District Court
Hennepin County Courthouse
350 South Fifth Street
Minneapolis, MN 55415

Re:   M & T Bank v. Kurtis K. Krueger, et al.
      Court File No. 27-CV-13-13086

Dear Honorable Judge:

This case is in its infancy. Although we understand they were recently served, the Answer for at least four of the defendants (Kurtis K. Krueger, Mattie M. Krueger, U.S. Small Business Administration, and the United States of America) has not yet even come due. At this early stage, we do not know whether the defendants Kurtis K. Krueger and Mattie M. Krueger have been able to retain legal counsel.

Our firm was retained by the defendants Alternative Homes Investments, LLC, Alternative Homes of Minneapolis, Inc., BankCherokee, David J. Bates, Lorrie A. Bates and Minnesota Business Finance Corporation, for the limited purpose of filing an Answer, which was completed, served and filed last Tuesday, August 6, 2013. Just yesterday, James Lockhart of the Lindquist & Vennum law firm was retained to represent defendants Alternative Homes Investments, LLC and BankCherokee. Our firm signed a Notice of Substitution of Counsel with respect to these two defendants yesterday and we understand that Notice has been or will be filed with the Court very soon. We also understand the Lindquist firm's engagement may be expanded soon to include the representation of defendant Minnesota Business Finance Corporation.

The basic defense to the claims asserted in this action are pretty straightforward: This action should be dismissed because the Plaintiff was paid in full in accordance with the terms of the Plaintiff's Payoff Statement which was relied upon by the parties. Having received payment in accordance with the terms of its Payoff Statement, the Plaintiff now seeks to recover what amounts to a double recovery by attempting to recover exorbitant amounts (including so-called "prepayment consideration") which are about twice the sum it initially loaned to defendants Mattie and Kurtis Krueger. This defense is summarized in part in the attached Affidavit of Kurtis Krueger. The defendants may also assert counter-claims against the Plaintiff, including potential claims for usury, predatory lending and slander of title.

Exhibit 22

The Honorable Laurie J. Miller
August 13, 2013
Page 2

Although our firm's engagement was limited to the preparation and service of an Answer, under the circumstances, we will appear on the conference call scheduled for 10:00 a.m. this morning to oppose the Plaintiff's request for expedited relief on behalf of Defendants David Bates, Lorrie Bates, Alternative Homes of Minneapolis and Minnesota Business Finance Corporation.

By way of background, the property in question is operated as a transitional housing program for adult men coping with mental illness, chemical dependency, or other challenges that may create barriers to complete independent living. The defendants oppose any attempt by the Plaintiff to serve or harass these vulnerable individuals. As noted above, the Plaintiff has been paid in full in accordance with the terms of Payoff Statements which it provided. As a result, there is no basis for pursing this action or serving the occupants of the property in question.

Under the circumstances, we feel there is no need for expedited relief. At this stage, we have not had an opportunity to fully evaluate the Plaintiff's request. To our knowledge, at least two of the defendants have not yet retained counsel. In a general sense, however, we are supportive of any resolution which prohibits the Plaintiff from serving the occupants of the property in question, which we feel will only promote confusion, disruption and instability for the occupants.

If the Court entertains or enters the relief requested by the Plaintiff, then we respectfully request that the Court specifically provide that any order entered will not prejudice any defense or claim held or asserted by any of the defendants in this action, other than defenses associated with the service of the occupants.

Finally, given the circumstances of this case and the multiple defendants, we feel this case is suitable for early mediation. Accordingly, we respectfully request that the Court order the parties to select a mediator within thirty days and to participate and complete a mediation session with the selected mediator within six weeks.

Thank you for your consideration.

Very truly yours,

WINTHROP & WEINSTINE, P.A.

Daniel C. Beck

DCB/msw

cc:   James M. Lockhart, Esq., via e-mail: jlockhart@lindquist.com
      Kurtis Krueger and Mattie Krueger, via e-mail: wkrueger4@yahoo.com
      Wendy Oien Sanchez, Esq., via e-mail: wsanchez@LOGS.com
      Roylene Champeaux, United States Attorney, via e-mail: Roylene.Champeaux@usdoj.gov

8201316v1
14329.4

### AFFIDAVIT OF KURTIS K. KRUEGER

STATE OF ARIZONA     )
                       )ss.
COUNTY OF MARICOPA  )

      I, Kurtis K. Krueger, being first duly sworn upon oath, state that:

      1.     I am a 66-year old retired individual. I am married to Mattie M. Krueger, who is also retired. Mattie and I reside at 2550 South Ellsworth Road, No. 31, Mesa, Arizona 85209.

      2.     Before we retired in May of 2012, Mattie and I owned and operated two board and lodge facilities known as the Medallion Manor in Minneapolis, Minnesota which provided food and housing for mentally-ill and chemically-dependent individuals. One of the facilities was located at 2444 Pillsbury Avenue South (the "2444 Property"). The second facility was located at 2430 Pillsbury Avenue South (the "2430 Property") (the 2444 Property and the 2430 Property are collectively referred to as the "Properties").

      3.     Mattie and I lived in private living quarters in the 2444 Property.

      4.     On or about March 15, 2012, Mattie and I entered into a Property Sale Agreement with Alternative Homes Investments, LLC ("Alternative Homes") for the sale of the 2444 Property for $475,000. A true and correct copy of the Property Sale Agreement relating to this sale is attached hereto as Exhibit A. On or about March 15, 2012, Mattie and I entered into a Property Sale Agreement with Alternative Homes for the sale of the 2430 Property for $380,000. A true and correct copy of the Property Sale Agreement relating to the 2430 Property is attached hereto as Exhibit B.

      5.     On or about March 15, 2012, Mattie and I entered into a Business Asset Sale Agreement with Alternative Homes for the sale of the business assets related to the Properties for

Exhibit 23

$625,000. A true and correct copy of this Business Asset Sale Agreement is attached hereto as Exhibit C.

6.     On or about August 31, 2007, Mattie and I obtained two loans from Inter Bay Funding, LLC in connection with the Properties. The loan relating to the 2444 Property (Loan No. 0070121860) was in the original principal amount of $450,000 and was secured by a mortgage against the 2444 Property in the amount of $450,000 the ("2444 Mortgage"). The loan relating to the 2430 Property (Loan No. 0070121850) was in the original principal amount of $599,000 and was secured by a mortgage against the 2430 Property in the amount of $599,000 (the "2430 Mortgage"). At some point, the 2444 Mortgage and the 2430 Mortgage were assigned to M&T Bank. At times, I understand the 2444 Mortgage and the 2430 Mortgage were also serviced by Bayview Loan Servicing, LLC (Bayview Loan Servicing, LLC, Inter Bay Funding, LLC and M&T Bank are at times hereinafter collectively referred to as "M&T").

7.     In connection with the sale of the Properties, I knew that I needed to pay off both the 2430 Mortgage and the 2444 Mortgage (collectively, the "Mortgages"). Because we had made all of the scheduled payments on the Mortgages, I believed the sale proceeds from the Properties and the business assets relating to the Properties (totaling $1,480,000) would be more than sufficient to pay the Mortgages in full.

8.     Before the three purchase agreements with Alternative Homes were signed, I began working on efforts to obtain payoff information from M&T regarding both of the Mortgages. In connection with these ongoing efforts, I always had M&T's loan numbers for both of the Mortgages at hand, because I knew M&T used these loan numbers to identify the Mortgages and the related loans on their computer system.

2

9.      Communicating with M&T was incredibly difficult. I contacted M&T by phone to request a payoff for both Mortgages. I was told that I needed to send a separate written payoff request for each of the Mortgages, which I did. In each of these written payoff requests, I separately noted the different loan numbers for the two Mortgages. In response to my written payoff requests, I received a single payoff statement from M&T dated March 7, 2012, a true and correct copy of which is attached hereto as Exhibit D (the "March 7 Payoff Statement").

10.      I reviewed the March 7 Payoff Statement and saw that it only identified Loan No. 0070121850, which is the loan relating to the 2430 Mortgage and the 2430 Property. Despite the fact that the March 7 Payoff Statement listed only one of the loan numbers, it appeared to me that the statement referred to both the 2444 Mortgage and the 2430 Mortgage because the total amount listed as being owed ($1,027,854.32) was less than the principal amount of $1,049,000 which was originally owed on the two Mortgages. But I was puzzled why the March 7 Payoff Statement contained a $455,093.41 line item which was labeled "Prepay Consideration." I had not heard the term "Prepay Consideration" before. I had heard the term "Prepayment Penalty" before, but I knew the $455,093.41 figure could not be a prepayment penalty relating to the 2430 Mortgage because that was approximately 75% of the original principal amount of the 2430 Mortgage.

11.      After reviewing the March 7 Payoff Statement, I then contacted M&T's 1-800 number to confirm that the statement related to both the 2430 Mortgage and the 2444 Mortgage. I spoke to a female representative of M&T whom I provided the loan numbers for both the 2430 Mortgage and the 2444 Mortgage. During our call, she confirmed that the $455,093.41 figure could not have been a prepayment penalty and that that number must have instead related to amounts owed on the 2444 Mortgage (Loan No. 0070121860).

3

12.     Land Title worked on the closing on our sale of the Properties.   In connection
with preparations for the closing, I sent Land Title a copy of the March 7 Payoff Statement.   At
some point, I had a discussion with Jeff Christian of Land Title regarding the March 7 Payoff
Statement.     During that discussion, I told Mr. Christian about my discussion with the
representative of M&T.   I told Mr. Christian that the $565,260.28 figure in the March 7 Payoff
Statement related to the 2430 Property (Loan No. 0070121850) and the $455,093.41 figure
related to the 2444 Property (Loan No. 0070121860).   I also told Mr. Christian that, despite the
fact that the March 7 payoff letter only referred to "Loan No. 0070121850," I had confirmed
with M&T that the March 7 Payoff Statement related to Loan No. 0070121860 as well.

13.     I understand that Land Title separately contacted M&T and requested a payoff
statement for both the 2430 Mortgage and the 2444 Mortgage.   In response to that payoff
request, I understand that M&T sent Land Title a Payoff Statement dated April 30, 2012, a copy
of which is attached as Exhibit E.

14.     After closing, Mattie and I immediately moved our personal effects from the
Properties into a storage locker in Minnesota.   We then moved to Mesa, Arizona where we now
reside.

15.     Several weeks after the closing, I received a call from M&T asserting that the
2444 Mortgage was past due.   I explained that was impossible because the 2444 Mortgage had
been paid in full.     I continued to receive multiple and frequent calls from different
representatives of M&T.   I repeatedly explained to each of them that the 2444 Mortgage was not
delinquent and that we had paid the 2444 Mortgage in full.   At one point, I spoke to Sylvester
Harris who said he was in M&T's loan modification department.   I again explained to Mr. Harris

4

that there was no loan to pay off   that we sold the Properties, paid off both the 2430 Mortgage and the 2444 Mortgage and retired to Arizona.

     16.    I learned that M&T is attempting to foreclose the 2444 Mortgage.  I do not understand how M&T can foreclose the 2444 Mortgage when that mortgage was paid in full on May 1, 2012.  M&T's actions have caused significant stress for both Mattie and me.  M&T's actions have also hurt our credit score.

     17.    If I had thought that the payoff statements provided by M&T related to only the 2430 Property, I never would have closed on the sale of the Properties.

     FURTHER YOUR AFFIANT SAYETH NOT.



Kurtis K. Krueger

Subscribed and sworn to before me
this   4   day of March, 2013.

_____
Notary Public

CHARBEL TOUMA
Notary Public - Arizona
Maricopa County
My Comm. Expires Jun 15, 2015

773441vv1

5

# Exhibit A

### Property Sale Agreement

THIS AGREEMENT is made on March 15, 2012, between Kurtis Krueger and Mattie Krueger, hereinafter Seller, of 2430 Pillsbury ave S, Minneapolis, Minnesota 55404, and Alternative Homes Investments LLC hereinafter Buyer, of 2446 Portland ave S Minneapolis, Minnesota 55404 for the sale of the below described property pursuant to the following terms and conditions:

### Legal Description and Address

The real property located at 2444 Pillsbury ave S., Minneapolis, Minnesota 55404, together with all buildings, improvements and fixtures constructed or located on the Land (Buildings) and all easements and rights benefiting or appurtenant to the Land (collectively the Real Property). The Real Property is legally described as: block 009, metes and bounds lots 12 and 13. Personal property is also to be included in the sale as listed in Exhibit A.

### Purchase Price

Subject to the following conditions the Buyer shall make final payment for the property at closing in the total amount of $475,000.00.

### Closing Costs

In closing this transaction, the Seller shall be charged with the following:

(a) the amount of real estate taxes and assessments prorated up to and including the date of transfer of title;

(b) the cost of any transfer tax;

(c) the cost of a title report, title search, and title guaranty policy in the amount of the purchase price;

(d) the cost of paying off and satisfying any mortgage indebtedness for which Seller is liable, together with the cost of any mortgage cancellation, recording fee or other costs incident to the satisfaction of any such indebtedness;

(e) the cost of any required brokerage commission;
(f) all other charges properly borne by Seller consistent with the terms of this Agreement;

and immediately thereafter shall deliver to Seller the balance of the funds in its hands due, and all documents due Seller.

On closing, the Buyer shall be charged with the following:

(a) Any cost of financing this transaction which Buyer arranges for;

(b) The cost of filing the deed for record;

(c) all other charges properly borne by Buyer consistent with the terms of this Agreement;

and immediately thereafter, the title agent shall deliver to Buyer the title guaranty or title insurance, as the case may be, the record deed or Recorders' receipt, any prorations to which Buyer is entitled, and all other funds or documents due Buyer.

**Title Requirements**

Seller shall convey to Buyer good and marketable title to the property, by good and sufficient general warranty deed with all dower rights released. The deed shall be deposited into escrow on or before the closing date.

Seller shall accompany Seller's deed with a title guaranty policy in the amount of the purchase price issued by a general title Company ("title company") in its customary form, guaranteeing record title to the Property to be good in Buyer subject only to the exceptions to be contained in the deed. However, Buyer may elect to be furnished with an Owner's Fee Policy of title insurance ("title insurance"), in the amount of the purchase price, insuring marketable title to be good in Buyer, subject only to the exceptions to be contained in the deed. In such event, in lieu of a title guaranty policy, Seller shall furnish Buyer with title insurance. Seller shall pay that portion of the costs which would have been incurred had a title guaranty policy been issued, and Buyer shall pay the remaining costs.

Immediately upon the execution hereof, Seller shall order from the title company a preliminary title report, with a special tax search included, in the form of a commitment to issue the required title policy requested by Buyer ("title report"). A copy of the title report shall be delivered to Buyer. Within 10 days after Buyer receives the title report, he shall notify Seller and the title company of all restrictions, reservations, limitations, easements, and conditions of record ("title defects") disclosed in the title report that are objectionable to Buyer. If Buyer notifies Seller of title defects, Seller shall cure or remove the same by the closing date. Seller shall remove all objectionable title defects that may be removed by the payment of money, and shall take reasonable steps necessary to remove all other title defects.

On the closing date, escrow agent shall notify the parties whether the title company can issue its title guaranty or title insurance, showing as exceptions only those items in the title report to which Buyer did not object. If the escrow agent notifies the parties that (a) the title company will issue such title guaranty or title insurance, this transaction shall be consummated in accordance with the terms and provisions of this Agreement, or (b) the title company will not issue such title guaranty or title insurance, and if Buyer does not immediately waive the title defects claimed by the escrow agent to prevent such issuance or Seller does not cure the defects within the permitted period, this Agreement shall be null and void, the escrow agent shall return to the parties all funds and documents previously deposited by them into escrow, and the parties shall be fully released from any liability or obligation hereunder, except that Seller shall pay the full cost of the escrow and the title company's charges.

If Buyer waives the title defects preventing issuance of the title guaranty or title insurance by notifying the title company and the escrow agent, or if Seller has cured the title defects, the obligations of the parties shall not be affected by them.

**Warranties**

Seller warrants and represents to Buyer as follows:

(a) Encroachments. All improvements now on the Property are entirely within the boundary lines of the land described as the Real Property, and no other adjoining property encroaches upon the land;

(b) Mechanic's liens. All work and labor performed and all materials furnished with respect to any improvements or repairs to the Real Property have been paid in full, and there will be no mechanic's liens or the possibility of any in connection with any such work, labor and materials performed on or furnished to the Real Property;

(c) Violations. Seller has no knowledge of any outstanding notices or orders from any governmental authority with respect to the condition of the Property or its repair, or with respect to any claim of a violation of any laws, ordinances, zoning codes, building codes or orders;

(d) Structural soundness. To Seller's best knowledge and belief, the personal property included as a part of this transaction and the improvements on the Property are structurally sound and in good condition and repair, including, without limitation, the roof, foundation, walls, heating and cooling system, plumbing, water and electrical systems; and

(e) Assessments. All improvements made by the local government that now benefit or will benefit the Property upon completion have been assessed against it as of the execution date of this Agreement.

All of Seller's foregoing warranties and representations shall be continuing in nature, shall be effective on the closing date, and shall survive Seller's delivery of the deed to Buyer and the consummation of all matters and things at the closing.

**Inspection and Acceptance**

Prior to the closing date, Seller agrees to correct, at Seller's expense, any violations found in connection with the inspection done to comply with the point-of-sale or similar ordinance required by the local governmental authority, if any. Evidence in writing that the corrections were made to the satisfaction of the local governing authority shall be given to Buyer prior to the closing date.

## Prorations

All general and special real estate taxes and assessments shall be prorated by the escrow agent as of the date the deed is filed for record, using the rate and valuation shown on the last available tax duplicate. If the proration does not fully reimburse Buyer for all real estate taxes and assessments accrued and unpaid with respect to the Property as of the record date of transfer of title, Seller shall promptly reimburse Buyer that amount accrued in excess of the proration credit upon the official certification of the real estate tax duplicate for the year in which transfer of title occurs. The escrow agent shall prorate any rents as of the date the deed is filed for record.

There shall be no proration of utilities. Seller shall cause the meters to be read for water, electricity, gas and other utilities, if any, as of the date of delivery of possession, and shall pay all utility charges to the date of the readings, after which the charges shall accrue to Buyer. The sum of $200 shall be held in escrow as security for the payment of utilities until Seller deposits into escrow receipts evidencing such payment.

## Financing

The Buyer must obtain a commitment from a financial institution at least 15 days prior to April 02, 2012, according to the terms acceptable to the financial institution with interest at 5.5 percent or less. If Buyer is unable to obtain such a commitment by the aforesaid date, this Agreement shall be null and void, all funds and documents shall be returned to the respective parties, and neither party shall have any rights against the other.

## Closing

Closing is the date on which the Seller executed deed is released to the Buyer. The closing date is designated as April 02, 2012, provided there are no unforeseen delays such as clearing title. Time is of the essences, and in no event shall closing be later than 30 calendar days after designated closing date, unless an extension is agreed upon in writing between the Buyer and Seller.

## Escrow Agent

This transaction shall be closed in escrow with an escrow agent of Buyer's choice ("escrow agent"). Buyer shall deposit with the escrow agent an executed counterpart of this Agreement, which shall serve as the escrow instructions. The escrow agent may attach its standard conditions of acceptance, but if they are inconsistent or conflict with the terms of this Agreement, this Agreement shall control.

## Closing documents and Funds

If on the closing date (1) the escrow agent then has on hand all necessary funds and documents to complete the transaction, and (2) the title company has stated that it shall be in a position to and will issue and deliver, upon the filing of the deed for record, the required title guaranty policy or

title insurance, the escrow agent shall thereupon file for record the deed and all other required instruments and shall deliver to each party the funds and documents to which it is entitled, together with the agent's escrow statement.

Both the buyer and seller have to submit all documentation and other information requested by title company/escrow agent needed to close the transaction. The parties may have to fix a date and time with the title company/escrow agent to close the transaction.

**Possession**

Seller shall deliver possession of the Property as of the closing date, in the condition as warranted by Seller and in no event in any worse condition than the condition as of the date of execution of this Agreement, less reasonable wear and tear.

**Risk of Loss**

Risk of loss or damage to the property by fire or other casualty occurring up to time of closing is assumed by the Seller. If the building or buildings or any other improvements on the Property are damaged or destroyed before transfer of record title, and the damages are $3,000 or less, this Agreement shall continue in full force and effect and Seller shall immediately assign to Buyer all of Seller's rights to the resulting insurance proceeds. If the damages are greater than $3,000, Buyer may either (a) continue this Agreement in full force and effect, and Seller shall immediately assign to Buyer all of Seller's rights to the insurance proceeds, or (b) rescind this Agreement, and all money, papers, or documents deposited by the parties shall be returned to them. Buyer shall assume risk of loss after record title to the Property is transferred to him. There shall be no proration of insurance. Seller shall retain his insurance until record title is transferred to Buyer, and Buyer shall procure his own policies of insurance to be effective from and after the date title to the Property is transferred to Buyer or his nominee.

**Release of dower**

Seller's spouse (if Seller is married), if not already a party, joins in the signing of this Agreement to evidence his or her consent to the terms and provisions hereof, including the obligation to release of all dower and other marital rights in the Property upon its conveyance to Buyer.

**Notice**

All notices under this Agreement shall be deemed to be sufficiently given if personally delivered or sent by certified or registered mail, postage prepaid, return receipt requested, and addressed to the parties abovementioned addresses.

**Miscellaneous Provisions**

(a) Governing Law: The laws of the State of Minnesota shall govern the Agreement.

(b) Parties Bound: This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns as permitted by this Agreement.

(c) Severability: In the event, any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability shall not affect any other provision. This Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

(d) Merger Clause: This Agreement, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between the Buyer and Seller and Agent, if any, with respect to the matters referred to herein and shall supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters.

(e) Force Majeure: In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service, or other act required under this Agreement to be performed by the party (other than monetary obligations) and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, unavoidable fire or other casualty, or other causes of a like nature beyond the reasonable control of the party so delayed or hindered (a "Force Majeure Event"), then performance of such work, service, or other act shall be excused for the period of such delay and the period for the performance of such work, service, or other act shall be extended for a period equivalent to the period of such delay. Lack of financial resources on the part of either party shall not be a Force Majeure Event.

(f) Amendments. This Agreement may be amended by the parties only by a written agreement.

(g) Attorneys' Fees: If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled.

(h) Headings: Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

(i) Contract: The Group Residential Housing Agreement associated with the property must be transferable to buyer.

(j) License: The Board and Lodge License associated with the property must be transferable to buyer.

In witness of the mutual promises made above, Seller and Buyer have executed this contract..

SELLER:

_Kurtis Krueger_          _3·15·12_
Kurtis Krueger                Date

_Mattie Krueger_          _3-15-2012_
Mattie Krueger                Date

BUYER:

_David Bates_          _3/15/12_

David Bates               Date
President

# Exhibit B

*1001*

## Property Sale Agreement

THIS AGREEMENT is made on March 15, 2012, between Kurtis Krueger and Mattie Krueger , hereinafter Seller, of 2430 Pillsbury ave S, Minneapolis, Minnesota 55404, and Alternative Homes Investments, LLC. hereinafter Buyer, of 2446 Portland ave S, Minneapolis, Minnesota 55404 for the sale of the below described property pursuant to the following terms and conditions:

### Legal Description and Address

The real property located at 2430 Pillsbury ave S., Minneapolis, Minnesota 55404, together with all buildings, improvements and fixtures constructed or located on the Land (Buildings) and all easements and rights benefiting or appurtenant to the Land (collectively the Real Property). The Real Property is legally described as: lot 009, block 009. Personal property is to also be included into the sale as listed in Exhibit A

### Purchase Price

Subject to the following conditions the Buyer shall make final payment for the buildings and land at closing for the amount of $380,000.00.

### Closing Costs

In closing this transaction, the Seller shall be charged with the following:

(a) the amount of real estate taxes and assessments prorated up to and including the date of transfer of title;

(b) the cost of any transfer tax;

(c) the cost of a title report, title search, and title guaranty policy in the amount of the purchase price;

(d) the cost of paying off and satisfying any mortgage indebtedness for which Seller is liable, together with the cost of any mortgage cancellation, recording fee or other costs incident to the satisfaction of any such indebtedness;

(e) the cost of any required brokerage commission;
(f) all other charges properly borne by Seller consistent with the terms of this Agreement;

and immediately thereafter shall deliver to Seller the balance of the funds in its hands due, and all documents due Seller.

On closing, the Buyer shall be charged with the following:

(a) any cost of financing this transaction up towhich Buyer arranges for;

(b) the cost of filing the deed for record;

(c) all other charges properly borne by Buyer consistent with the terms of this Agreement;

and immediately thereafter, the title agent shall deliver to Buyer the title guaranty or title insurance, as the case may be, the record deed or Recorders' receipt, any prorations to which Buyer is entitled, and all other funds or documents due Buyer.

**Title Requirements**

Seller shall convey to Buyer good and marketable title to the property, by good and sufficient general warranty deed with all dower rights released. The deed shall be deposited into escrow on or before the closing date.

Seller shall accompany Seller's deed with a title guaranty policy in the amount of the purchase price issued by a general title Company ("title company") in its customary form, guaranteeing record title to the Property to be good in Buyer subject only to the exceptions to be contained in the deed. However, Buyer may elect to be furnished with an Owner's Fee Policy of title insurance ("title insurance"), in the amount of the purchase price, insuring marketable title to be good in Buyer, subject only to the exceptions to be contained in the deed. In such event, in lieu of a title guaranty policy, Seller shall furnish Buyer with title insurance. Seller shall pay that portion of the costs which would have been incurred had a title guaranty policy been issued, and Buyer shall pay the remaining costs.

Immediately upon the execution hereof, Seller shall order from the title company a preliminary title report, with a special tax search included, in the form of a commitment to issue the required title policy requested by Buyer ("title report"). A copy of the title report shall be delivered to Buyer. Within 10 days after Buyer receives the title report, he shall notify Seller and the title company of all restrictions, reservations, limitations, easements, and conditions of record ("title defects") disclosed in the title report that are objectionable to Buyer  If Buyer notifies Seller of title defects, Seller shall cure or remove the same by the closing date. Seller shall remove all objectionable title defects that may be removed by the payment of money, and shall take reasonable steps necessary to remove all other title defects.

On the closing date, escrow agent shall notify the parties whether the title company can issue its title guaranty or title insurance, showing as exceptions only those items in the title report to which Buyer did not object. If the escrow agent notifies the parties that (a) the title company will issue such title guaranty or title insurance, this transaction shall be consummated in accordance with the terms and provisions of this Agreement, or (b) the title company will not issue such title guaranty or title insurance, and if Buyer does not immediately waive the title defects claimed by the escrow agent to prevent such issuance or Seller does not cure the defects within the permitted period, this Agreement shall be null and void, the escrow agent shall return to the parties all funds and documents previously deposited by them into escrow, and the parties shall be fully released from any liability or obligation hereunder, except that Seller shall pay the full cost of the escrow and the title company's charges.

If Buyer waives the title defects preventing issuance of the title guaranty or title insurance by notifying the title company and the escrow agent, or if Seller has cured the title defects, the obligations of the parties shall not be affected by them.

**Warranties**

Seller warrants and represents to Buyer as follows:

(a) Encroachments. All improvements now on the Property are entirely within the boundary lines of the land described as the Real Property, and no other adjoining property encroaches upon the land;

(b) Mechanic's liens. All work and labor performed and all materials furnished with respect to any improvements or repairs to the Real Property have been paid in full, and there will be no mechanic's liens or the possibility of any in connection with any such work, labor and materials performed on or furnished to the Real Property;

(c) Violations. Seller has no knowledge of any outstanding notices or orders from any governmental authority with respect to the condition of the Property or its repair, or with respect to any claim of a violation of any laws, ordinances, zoning codes, building codes or orders;

(d) Structural soundness. To Seller's best knowledge and belief, the personal property included as a part of this transaction and the improvements on the Property are structurally sound and in good condition and repair, including, without limitation, the roof, foundation, walls, heating and cooling system, plumbing, water and electrical systems; and

(e) Assessments. All improvements made by the local government that now benefit or will benefit the Property upon completion have been assessed against it as of the execution date of this Agreement.

All of Seller's foregoing warranties and representations shall be continuing in nature, shall be effective on the closing date, and shall survive Seller's delivery of the deed to Buyer and the consummation of all matters and things at the closing.

**Inspection and Acceptance**

Prior to the closing date, Seller agrees to correct, at Seller's expense, any violations found in connection with the inspection done to comply with the point-of-sale or similar ordinance required by the local governmental authority, if any. Evidence in writing that the corrections were made to the satisfaction of the local governing authority shall be given to Buyer prior to the closing date.

**Prorations**

All general and special real estate taxes and assessments shall be prorated by the escrow agent as of the date the deed is filed for record, using the rate and valuation shown on the last available tax duplicate. If the proration does not fully reimburse Buyer for all real estate taxes and assessments accrued and unpaid with respect to the Property as of the record date of transfer of title, Seller shall promptly reimburse Buyer that amount accrued in excess of the proration credit upon the official

certification of the real estate tax duplicate for the year in which transfer of title occurs. The escrow agent shall prorate any rents as of the date the deed is filed for record.

There shall be no proration of utilities. Seller shall cause the meters to be read for water, electricity, gas and other utilities, if any, as of the date of delivery of possession, and shall pay all utility charges to the date of the readings, after which the charges shall accrue to Buyer. The sum of $200 shall be held in escrow as security for the payment of utilities until Seller deposits into escrow receipts evidencing such payment.

**Financing**

The Buyer must obtain a commitment from a financial institution at least 15 days prior to April 02, 2012, according to the terms acceptable to the financial institution with interest at 5.5 percent or less. If Buyer is unable to obtain such a commitment by the aforesaid date, this Agreement shall be null and void, all funds and documents shall be returned to the respective parties, and neither party shall have any rights against the other.

**Closing**

Closing is the date on which the Seller executed deed is released to the Buyer. The closing date is designated as April 02, 2012, provided there are no unforeseen delays such as clearing title. Time is of the essences, and in no event shall closing be later than 30 calendar days after designated closing date, unless an extension is agreed upon in writing between the Buyer and Seller.

**Escrow Agent**

This transaction shall be closed in escrow with an escrow agent of Buyer's choice ("escrow agent"). Buyer shall deposit with the escrow agent an executed counterpart of this Agreement, which shall serve as the escrow instructions. The escrow agent may attach its standard conditions of acceptance, but if they are inconsistent or conflict with the terms of this Agreement, this Agreement shall control.

**Closing documents and Funds**

If on the closing date (1) the escrow agent then has on hand all necessary funds and documents to complete the transaction, and (2) the title company has stated that it shall be in a position to and will issue and deliver, upon the filing of the deed for record, the required title guaranty policy or title insurance, the escrow agent shall thereupon file for record the deed and all other required instruments and shall deliver to each party the funds and documents to which it is entitled, together with the agent's escrow statement.

Both the buyer and seller have to submit all documentation and other information requested by title company/escrow agent needed to close the transaction. The parties may have to fix a date and time with the title company/escrow agent to close the transaction.

**Possession**

Seller shall deliver possession of the Property as of the closing date, in the condition as warranted by Seller and in no event in any worse condition than the condition as of the date of execution of this Agreement, less reasonable wear and tear.

**Risk of Loss**

Risk of loss or damage to the property by fire or other casualty occurring up to time of closing is assumed by the Seller. If the building or buildings or any other improvements on the Property are damaged or destroyed before transfer of record title, and the damages are $3,000 or less, this Agreement shall continue in full force and effect and Seller shall immediately assign to Buyer all of Seller's rights to the resulting insurance proceeds. If the damages are greater than $3,000, Buyer may either (a) continue this Agreement in full force and effect, and Seller shall immediately assign to Buyer all of Seller's rights to the insurance proceeds, or (b) rescind this Agreement, and all money, papers, or documents deposited by the parties shall be returned to them. Buyer shall assume risk of loss after record title to the Property is transferred to him. There shall be no proration of insurance. Seller shall retain his insurance until record title is transferred to Buyer, and Buyer shall procure his own policies of insurance to be effective from and after the date title to the Property is transferred to Buyer or his nominee.

**Release of dower**

Seller's spouse (if Seller is married), if not already a party, joins in the signing of this Agreement to evidence his or her consent to the terms and provisions hereof, including the obligation to release of all dower and other marital rights in the Property upon its conveyance to Buyer.

**Notice**
All notices under this Agreement shall be deemed to be sufficiently given if personally delivered or sent by certified or registered mail, postage prepaid, return receipt requested, and addressed to the parties abovementioned addresses.

**Miscellaneous Provisions**

(a) Governing Law: The laws of the State of Minnesota shall govern the Agreement.

(b) Parties Bound: This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns as permitted by this Agreement.

(c) Severability: In the event, any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability shall not affect any other provision. This Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

(d) Merger Clause: This Agreement, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between the Buyer and Seller and Agent, if any, with respect to the matters referred to herein and shall supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters.

(e) Force Majeure: In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service, or other act required under this Agreement to be performed by the party (other than monetary obligations) and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, unavoidable fire or other casualty, or other causes of a like nature beyond the reasonable control of the party so delayed or hindered (a "Force Majeure Event"), then performance of such work, service, or other act shall be excused for the period of such delay and the period for the performance of such work, service, or other act shall be extended for a period equivalent to the period of such delay. Lack of financial resources on the part of either party shall not be a Force Majeure Event.

(f) Amendments. This Agreement may be amended by the parties only by a written agreement.

(g) Attorneys' Fees: If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled.

(h) Headings: Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

(i) Contract: The Group Residential Housing Agreement associated with the property must be transferable to buyer.
(j) License: The Board and Lodge License associated with the property must be transferable to buyer.

In witness of the mutual promises made above, Seller and Buyer have executed this contract..

SELLER:

_Kurtis Krueger_      3-15-12

Kurtis Krueger        Date

_Mattie Krueger_    3-15-2012

Mattie Krueger        Date

BUYER:

            3/15/12

David Bates        Date
 President

# Exhibit C

## Business Asset Sale Agreement

THIS AGREEMENT is made on March 15, 2012, between Kurtis Krueger and Mattie Krueger , hereinafter Seller, of 2430 Pillsbury ave S, Minneapolis, Minnesota 55404, and Alternative Homes of Minneapolis Inc. hereinafter Buyer, of 2446 Portland ave S, Minneapolis, Minnesota 55404 for the sale of the below described business pursuant to the following terms and conditions:

### Legal Description and Address

The business and assets located at 2430/2444 Pillsbury ave S., Minneapolis, Minnesota 55404, together which includes all furniture, equipment and business capital benefiting or appurtenant to the operating business of Medallion Manor.

### Purchase Price

Subject to the following conditions the Buyer shall make, at closing, payment to the Seller, in the amount of $625,000.00. To be calculated as follows:

a) 2430 Business - $175,360.00
b) 2430 Furniture and equipment - $74,640.00
c) 2444 Business - $294,535.00
d) 2444 Furniture and equipment - $80,465.00

accumulating a total amount of 625,000.00.

### Closing Costs

On closing, the Buyer shall be charged with the following:

(a) any cost of financing this transaction up to which Buyer arranges for;

(b) all other charges properly borne by Buyer consi·      ·th the terms of this Agreement;

### Warranties

Buyer acknowledges to buying all furniture.

### Financing

The Buyer must obtain a commitmer            ril 02,
2012, according to the terms accept            nt or less.
If Buyer is unable to obtain such ?            d be null and
void, all funds and documents sh            .y shall have
any rights against the other.

**Closing**

Closing is the date on which the Seller executed deed is released to the Buyer. The closing date is designated as April 02, 2012. Time is of the essences, and in no event shall closing be later than 30 calendar days after designated closing date, unless an extension is agreed upon in writing between the Buyer and Seller.

**Possession**

Seller shall deliver possession of the business assets and equipment, as of the closing date, in the condition as warranted by Seller and in no event in any worse condition than the condition as of the date of execution of this Agreement, less reasonable wear and tear.

**Risk of Loss**

Risk of loss or damage to the property by fire or other casualty occurring up to time of closing is assumed by the Seller. If the building or buildings or any other improvements on the Property are damaged or destroyed before transfer of record title, and the damages are $3,000 or less, this Agreement shall continue in full force and effect and Seller shall immediately assign to Buyer all of Seller's rights to the resulting insurance proceeds. If the damages are greater than $3,000, Buyer may either (a) continue this Agreement in full force and effect, and Seller shall immediately assign to Buyer all of Seller's rights to the insurance proceeds, or (b) rescind this Agreement, and all money, papers, or documents deposited by the parties shall be returned to them. Buyer shall assume risk of loss after record title to the Property is transferred to him. There shall be no proration of insurance. Seller shall retain his insurance until record title is transferred to Buyer, and Buyer shall procure his own policies of insurance to be effective from and after the date title to the Property is transferred to Buyer or his nominee.

**Release of dower**

Seller's spouse (if Seller is married), if not already a party, joins in the signing of this Agreement to evidence his or her consent to the terms and provisions hereof, including the obligation to release of all dower and other marital rights of the business upon its conveyance to Buyer.

**Notice**
All notices under this Agreement shall be deemed to be sufficiently given if personally delivered or sent by certified or registered mail, postage prepaid, return receipt requested, and addressed to the parties abovementioned addresses.

**Miscellaneous Provisions**

(a) Governing Law: The laws of the State of Minnesota shall govern the Agreement.

(b) Parties Bound: This Agreement shall be binding on and inure to the benefit of the parties to this Agreement and their respective heirs, executors, administrators, legal representatives, successors and assigns as permitted by this Agreement.

(c) Severability: In the event, any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability shall not affect any other provision. This Agreement shall be construed as if the invalid, illegal, or unenforceable provision had never been contained in it.

(d) Merger Clause: This Agreement, when executed by both Buyer and Seller, shall contain the entire understanding and agreement between the Buyer and Seller and Agent, if any, with respect to the matters referred to herein and shall supersede all prior or contemporaneous agreements, representations and understanding with respect to such matters.

(e) Force Majeure: In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service, or other act required under this Agreement to be performed by the party (other than monetary obligations) and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, unavoidable fire or other casualty, or other causes of a like nature beyond the reasonable control of the party so delayed or hindered (a "Force Majeure Event"), then performance of such work, service, or other act shall be excused for the period of such delay and the period for the performance of such work, service, or other act shall be extended for a period equivalent to the period of such delay. Lack of financial resources on the part of either party shall not be a Force Majeure Event.

(f) Amendments. This Agreement may be amended by the parties only by a written agreement.

(g) Attorneys' Fees: If any action at law or in equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party will be entitled to reasonable attorneys' fees in addition to any other relief to which that party may be entitled.

(h) Headings: Headings used in this Agreement are provided for convenience only and shall not be used to construe meaning or intent.

(i) Contract: The Group Residential Housing Agreement associated with the property must be transferable to buyer.
(j) License: The Board and Lodge License associated with the property must be transferable to buyer.

In witness of the mutual promises made above, Seller and Buyer have executed this contract..

SELLER:

_Kurtis Krueger_     3-15-12

Kurtis Krueger                    Date

_Mattie Krueger_     3-15-2012

Mattie Krueger                    Date

BUYER:

_David J. Bates_     3/15/12

David Bates                        Date
President

## Purchase Agreement

## Addendum II

## 2444 & 2430 Pillsbury Ave S Mpls, MN 55404

The value of the items mentioned in Exhibit A:

| | |
|---|---|
| 2444 Pillsbury: | $80,465 |
| 2430 Pillsbury: | $74,640 |
| **Total Value:** | **$155,105** |

Seller          Date
Kurt Krueger

Seller          Date
Mattie Krueger

EXHIBIT A

Included inventory for 2444 Pillsbury Ave. S Minneapolis, MN 55404

- 10 room A/C units
- 1 dining room A/C unit
- 2 kitchen A/C units
- 1 living room A/C unit
- 1 2nd floor hallway A/C unit
- 24 box spring and mattress sets with linens, pillows and bed frames
- 24 bedside stands with lamp or floor lamp
- 24 chest of drawers/dressers
- 24 bedside chairs
- Curtains/valances/mini blinds in each room
- Misc. pictures on bedroom and common area walls throughout
- 2 loveseats and one wing back chair in living room
- 1 TV with wooden stand in living room
- 2 end tables with lamps plus one floor lamp in living room
- 9 two person dinning room tables
- 5 four person dining room tables
- 26 fabric covered chairs in dinging room plus 24 in storage
- 1 three hole steam table with misc. size inserts and covers
- 1 imperial six burner gas stove with built in exhaust hood
- 2 arctic air commercial refrigerators
- 3 arctic air commercial freezers
- 2 stainless steel food prep tables

- 1 side by side refrigerator
- 1 regular refrigerator in pantry
- 1 washer and dryer set with built in laundry tub
- 1 wooden desk with chair and lamp
- 1 loveseat
- 1 8 foot billiards table
- Misc. linens and pillows in storage
- 2 box spring and mattress set in storage
- Misc. tools in basement shop plus paint and supplies
- Pop machine
- Microwave
- Pots and pans, dishes and kitchen items
- Exterior cooking station

EXHIBIT A

Included inventory for 2430 Pillsbury Ave. Minneapolis, MN

- 24 A/C units
- 25 box spring and mattress sets with linens, pillows and bed frames
- 25 bedside stands with lamp or floor lamp
- 25 dressers
- 25 bedside chairs
- Curtains/valances/mini blinds in each room
- Wooden queen sleigh bed with mattress and box spring
- Large wing back chair and ottoman with floor lamp

- Large wooden wardrobe

- Large wooden dresser

- Wooden desk and chair

- 2 twin bed mattress sets with headboards and linens

- Large wooden entertainment center with TV

- Leather couch in living room

- Old upright piano

- Main office desk

- 4 file cabinets

- 1 washer and dryer set

# PURCHASE AGREEMENT

## ADDENDUMM

## 2444 & 2430 Pillsbury Ave. S. Mpls. MN, 55404

In addition to the items mentioned in exhibit A of the purchase agreement the seller agrees to include the following items.

- 1 Lawn Mower
- 1 Snow Blower
- 1 Fertilizer spreader
- 2 Pop Machines
- 1 Radial Arm Saw
- 1 Table Saw
- 1 Coin Changer

The seller also agrees to transfer the gross income received for April 2012 less a per diem of $1768.67 up to Midnight of the date of closing.

Seller   Kurt Krueger

Date     11 - 28 - 11

Date     11-28-2011

Seller   Mattie Krueger

# Exhibit D

Apr.23.2012  12:53   MEDALLIONMANOR            6128131331         PAGE.  2/  3

M&T Bank                                        (800)724-2224
                                                     OEM
                     PAYOFF STATEMENT

March 07, 2012                    Re: Loan No.      1850

Attn: Kurtis Krueper              Kurtis K Krueger

                                  2430 Pillsbury Avenu
                                  Minneapolis MN 55404

Interest Due To: April 02, 2012
Next Payment Due: April 01, 2012

Principal Balance:                          $   865,260.28
Total Interest                                    7,124.63
Unpaid NSF Charges                                   20.00
Unpaid Other Fees                                    10.00
Recording Fees                                       46.00
Prepay Consideration                            455,093.41
Federal Express                                       .00
Release Fee                                         200.00
Subsequent Payoff Lt                                  .00
Letter Fee                                          100.00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $  1,027,854.32

The current escrow balance is:                    6,483.31

All figures are subject to change.  Figures must be updated if
the payoff is not received by the Interest Due To Date. In addition,
figures will be adjusted if any transactions such as an escrow
advance, payment reversal, or fee assessment take place.
Funds must be received in our office no later than 5:00pm(EST)
to be credited that same day.

PAYMENTS DUE

Issuance of this statement does not suspend the requirement to make
the mortgage payment when due.  A late charge in the amount of $  371.41
will be due if the current payment or payoff is received after the
grace period.

If a payoff is received within 4 business days of a scheduled
automatic deduction draft date, a draft may occur.  Any overpayment
will be refunded within ten business days.  If you wish to cancel
the drafting service, a written request must be received by this
office ten days prior to the payoff.

                   (IMPORTANT INFORMATION ON PAGE 2)
<TONAME:1850 KRUEGER        ><TOFAXNUM:612-813-1331       ><WHO:FIDAP

PAYMENT METHOD, Page 2      Loan No.:███████850               DEM

If the amount received does not fully repay the current debt, including all fees and advances, interest will continue to accrue until the full amount is received.

WE SUGGEST PAYING BY WIRE TRANSFER TO ENSURE TIMELY RECEIPT OF FUNDS AND TO AVOID ADDITIONAL INTEREST.

- Funds should be wired to M&T Bank at ABA No. 022000046 (M&T Bank MFRSBUF). For further credit to Account No. 02684050, Cost Center 858. Attention of Ann Smith, Payoff Department, extension 3282. Please be sure to reference in the details of payment field the suffix "MTG" followed by the ten digit Mortgage Account Number and the Customer Name.

- We must be notified the day that the wire transfer is sent. Please call us at 1(800) 724-2224. We may be unable to payoff the account as specified if we are not properly notified. All wire transfers must be received in our office no later than 3pm to be processed the same day.

Certified or Attorney Escrow Checks are also accepted for payoff. Funds should be made payable to M&T Bank. Please include the mortgage account number on all correspondence, including the payoff check, and mail to:

                    M&T Bank
                    1 Fountain Plaza,  7th Floor
                    Buffalo, NY 14203-1495
                    Attn: Ann Smith

DISCHARGE OF MORTGAGE
A properly executed, recordable release of lien will be provided by M&T Bank. When remitting payoff funds, please include written mailing instructions for the discharge, release, or reconveyance.

ESCROW
According to our records, listed below are your next tax and/or insurance items due to be paid:

      $ 4050.25 05-12 Hennepin County
      $ 4050.25 10-12 Hennepin County
      $ 5206.50 11-12 Davies & Rendall Company

Scheduled tax and insurance payments on escrowed loans will continue to be made until the date M&T receives your payoff funds, unless we are instructed otherwise. If funds are remaining in your escrow account after your loan has been paid in full, a refund will be mailed within 30 days of the date of payoff.

# Exhibit E

M&T Bank                                                    (800)724-2224
                                                                      DEM
                        PAYOFF STATEMENT

April 30, 2012                     Re:  Loan No.  ▓▓▓▓▓▓1850


Attn: Carol Holleran                     Kurtis K Krueger

                                         2430 Pillsbury Avenu
                    ,                    Minneapolis MN 55404

Interest Due To: May 02, 2012            At: 13.75000%
Next Payment Due: May 01, 2012

Principal Balance:                       $      564,524.86
Total Interest                                    6,899.75
Late Charges Due:                                   371.41
Unpaid NSF Charges                                   20.00
Unpaid Other Fees                                    10.00
Recording Fees                                       46.00
Prepay Consideration                            448,032.80
Federal Express                                        .00
Release Fee                                         200.00
Subsequent Payoff Lt                                   .00
Letter Fee                                          100.00
 * * * * TOTAL AMOUNT TO PAY LOAN IN FULL * * * * * $   1,020,204.82

The current escrow balance is:              3,338.17

All figures are subject to change.  Figures must be updated if
the payoff is not received by the Interest Due To Date. In addition,
figures will be adjusted if any transactions such as an escrow
advance, payment reversal, or fee assessment take place.
Funds must be received in our office no later than 3:00pm(EST)
to be credited that same day.

PAYMENTS DUE

Issuance of this statement does not suspend the requirement to make
the mortgage payment when due.  A late charge in the amount of $  371.41
will be due if the current payment or payoff is received after the
grace period.

If you have already mailed your current month's mortgage payment,
DO NOT stop payment on the check.  Any excess funds will be refunded
to you after payoff.


                    (IMPORTANT INFORMATION ON PAGE 2)

PAYMENT METHOD, Page 2        Loan No. ████850                    DEM

If the amount received does not fully repay the current debt, including
all fees and advances, interest will continue to accrue until the full
amount is received.

WE SUGGEST PAYING BY WIRE TRANSFER TO ENSURE TIMELY RECEIPT OF FUNDS
AND TO AVOID ADDITIONAL INTEREST.

  - Funds should be wired to M&T Bank at ABA No.
    ████0046 (M&T Bank MFRSBUF). For further credit to Account
    No. ████4050, Cost Center 858. Attention of Ann Smith,
    Payoff Department, extension 3282. Please be sure to reference
    in the details of payment field the suffix "MTG" followed by
    the ten digit Mortgage Account Number and the Customer Name.

  - We must be notified the day that the wire transfer is sent. Please
    call us at 1(800) 724-2224. We may be unable to payoff the account
    as specified if we are not properly notified. All wire transfers
    must be received in our office no later than 3pm to be processed the
    same day.

Certified or Attorney Escrow Checks are also accepted for payoff.
Funds should be made payable to M&T Bank.
Please include the mortgage account number on all correspondence,
including the payoff check, and mail to:

                    M&T Bank
                    1 Fountain Plaza,  7th Floor
                    Buffalo, NY 14203-1495
                    Attn: Ann Smith

DISCHARGE OF MORTGAGE
A properly executed, recordable release of lien will be provided by
M&T Bank. When remitting payoff funds, please include
written mailing instructions for the discharge, release, or reconveyance.

ESCROW
According to our records, listed below are your next tax and/or
insurance items due to be paid:

        $ 4244.60 05-13 Hennepin County
        $ 4244.60 10-12 Hennepin County
        $ 5206.50 11-12 Davies & Rendall Company

Scheduled tax and insurance payments on escrowed loans will continue
to be made until the date M&T receives your payoff funds, unless we are
instructed otherwise.  If funds are remaining in your escrow account
after your loan has been paid in full, a refund will be mailed within
30 days of the date of payoff.